UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REBOTIX REPAIR LLC,

    Plaintiff,

v.

INTUITIVE SURGICAL, INC.,

    Defendant.

Civil Case No. 8:20-cv-2274-T-33TGW

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Pursuant to this Court's Order (ECF No. 45), Intuitive files this reply memorandum of law in support of its Motion to Dismiss for Failure to State a Claim.

**I.  ALL OF THE CLAIMS SHOULD BE DISMISSED BECAUSE REBOTIX FAILS TO PLAUSIBLY ALLEGE A RELEVANT PRODUCT MARKET**

Intuitive's moving brief demonstrated that Rebotix's claims should be dismissed in their entirety for failure to plausibly allege a relevant product market.  (ECF No. 40, Mem. at 11-15.)  Rebotix's opposition fails to adequately refute Intuitive's arguments because: (i) *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992) and the other cases Rebotix relies on are inapposite; (ii) Rebotix fails to distinguish the case law holding that an allegedly excluded supplier must define the relevant market from its own perspective; and (iii) it futilely attempts to redefine the market from its own perspective.

*First*, in *Kodak*, the Supreme Court held that an "aftermarket" (i.e., a market for replacement components that must be used in order for a primary product to function) can be

1

the relevant antitrust market when the defendant *changes* its policies in a way that "locks in" customers to purchasing aftermarket goods from the defendant.  See *Kodak*, 504 U.S. at 457-58, 476.  There, after initially selling replacement parts to all its copier customers, Kodak changed its policy and only sold replacement parts to those copier customers that also purchased its repair services.  See *id.* at 476.  As a result, customers that purchased copiers prior to this change in policy—and did so with the understanding that they could purchase repair services from another provider—were "locked in" to purchasing Kodak's repair services, even as Kodak increased its prices for those services.  See *id.* at 457-58, 476.

Courts have repeatedly held that *Kodak* does not apply unless there has been a change in a defendant's distribution policies because, absent such a change, the "lock-in" concern that animated *Kodak* cannot exist.  See, e.g., *PSI Repair Servs., Inc. v. Honeywell, Inc.,* 104 F.3d 811, 820 (6th Cir. 1997) ("[A]n antitrust plaintiff cannot succeed on a *Kodak*-type theory when the defendant has not changed its policy after locking-in some of its customers, and the defendant has been otherwise forthcoming about its pricing structure and service policies."); *Metzler v. Bear Auto. Serv. Equip. Co*., 19 F. Supp. 2d 1345, 1358 (S.D. Fla. 1998) (*Kodak* does not apply "[w]ithout a showing of a change in business policy, or other coercive practice which concealed the true cost of parts and repairs.").[1]  Similarly, here, *Kodak* and its market definition framework cannot apply because Rebotix does not allege a change in Intuitive's policies, let alone a change that "locked in" customers.

---

[1] See also *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 440 (3d Cir. 1997) ("The *Kodak* case arose out of concerns about unilateral changes in Kodak's parts and repairs policies."); *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 763 (7th Cir. 1996) ("The material dispute that called for a trial was whether the change in policy enabled Kodak to extract supra-competitive prices from customers who had already purchased its machines.").

***Second***, Rebotix fails to distinguish the cases cited in Intuitive's moving brief: *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591 (8th Cir. 2009); *Campfield v. State Farm Mutual Automobile Insurance Co.*, 532 F.3d 1111 (10th Cir. 2008); and *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 373 F.3d 57 (1st Cir. 2004). In a case like this one involving vertical foreclosure claims (e.g., exclusive dealing and tying), Intuitive's moving brief demonstrated that the relevant market consists of the supplier's potential customers. (Mem. at 11-15.)[2] The decisions Rebotix cites (Opp. at 7-9) cannot salvage its claims because those cases concern alleged relevant markets in the context of theories not pleaded here, or that were otherwise rejected.[3] Moreover, despite the fact that *Little Rock Cardiology*, *Campfield* and *Stop & Shop* were decided ***after*** *Kodak*, Rebotix erroneously argues that the decisions are "contrary to Supreme Court" law. (*Id.* at 6.) But

---

[2] *See also* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 570a, 570b1 (4th & 5th eds. 2020) ("[V]ertical arrangements might prejudice competition by foreclosing an outlet to competitors of the selling firm . . . . The relevant market for this purpose includes the full range of selling opportunities reasonably open to rivals . . .").

[3] *See, e.g.*, *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246-47 (11th Cir. 2002) (affirming summary judgment for defendant in Robinson-Patman Act case alleging predatory pricing because plaintiff failed to provide sufficient evidence of relevant market); *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1345-46 (11th Cir. 1987) (rejecting Sherman Act claims because parties were not competitors, while distinguishing "vertical restraint cases"); *KLS Martin, Inc. v. Med. Modeling, Inc.*, No. 3:18-cv-233-J-20JBT, 2018 WL 8139133, at *6 (M.D. Fla. Dec. 17, 2018) ("[Plaintiff's] allegations suggest no vertical restraint on trade to be analyzed under the rule of reason, because the facts fail to indicate a unique product market."); *Clark Mem'ls of Alabama Inc. v. SCI Alabama Funeral Servs. LLC*, 991 F. Supp. 2d 1151, 1165 (N.D. Ala. 2014) (dismissing plaintiff's *Kodak*-theory claim because "the facts indicate that potential ***consumers*** were told in advance of the changes"); *Cal Distrib. Co. v. Bay Distribs., Inc.*, 337 F. Supp. 1154, 1158 (M.D. Fla. 1971) (summary judgment for defendant where plaintiff failed to produce evidence that product market should be limited to one brand of wine); *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 851, 853-54 (1st Cir. 2016) (affirming summary judgment because plaintiff failed to offer sufficient evidence to restrict market to limited set of customers); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 551-52 (1st Cir. 1974) (same). In *Cobb Theatres III, LLC v. AMC Entertainment Holdings, Inc.*, 101 F. Supp. 3d 1319 (N.D. Ga. 2015), the alleged market "to exhibit films to the public" in the area proximate to plaintiff's theatre is consistent with Intuitive's argument that the relevant market encompasses an allegedly excluded supplier's potential customers. *See id.* at 1336, 1338.

the Supreme Court *denied* plaintiffs' certiorari petition in *Little Rock Cardiology*, illustrating that *Kodak* is not controlling in the supplier foreclosure context.  *See Little Rock Cardiology Clinic P.A. v. Baptist Health*, 561 U.S. 1026 (2010) (mem.).  Rebotix also argues that these cases "disregard the perspective of consumers" (Opp. at 8), but it misapprehends *which* consumers are relevant to this inquiry.  Here, because Rebotix alleges that it has been foreclosed from competing, the relevant market is all customers to which Rebotix could sell its services, not the customers to which Intuitive sells its product.

*Third*, Rebotix's threadbare argument that it properly pled the EndoWrist repair and replacement market from the supplier perspective fails.  Tellingly, the Complaint directly *contradicts* such a narrow market definition with allegations that "EndoWrists and the traditional instruments are essentially the same" (Compl. ¶ 39; *see also id*. ¶¶ 2, 11), signifying that Rebotix's repair services could be sold to customers seeking repairs of *any* instrument used in minimally invasive surgery.  Rebotix's new assertions in its opposition that EndoWrist instruments are unique should be disregarded, as they are inconsistent with the Complaint.  (*Compare* Opp. at 9-10 *with* Compl. ¶¶ 2, 11, 38-39.)

## II.   REBOTIX CANNOT STATE A CLAIM BASED ON THE DESIGN OF THE ENDOWRIST INSTRUMENT USAGE COUNTER

Intuitive's moving brief established that Rebotix fails to state a "refusal to deal" claim based on Intuitive's incorporation of the usage counter in its EndoWrist instruments.  (Mem. at 15-21.)  Apparently recognizing the deficiencies in this theory, Rebotix attempts to pivot, asserting that Intuitive "technological[ly] tied" EndoWrist instruments to the da Vinci system through the usage counter.  (Opp. at 14-16).  This new claim fails for multiple reasons.

*First*, "[i]t is axiomatic that a plaintiff cannot amend the complaint by arguments of

counsel made in opposition to a motion to dismiss." *Eddie v. Bank of Am., N.A.*, No. 8:17-cv-1534-T-26TBM, 2018 WL 573406, at *3 (M.D. Fla. Jan. 26, 2018) (citation omitted). Here, Rebotix did not plead technological tying (which is never mentioned in the Complaint) or that the usage counter effectuates such a tie. Rather, Rebotix's alleged grievance with the usage counter is that it "force[s] . . . customers to discard EndoWrists and purchase new ones" (Compl. ¶ 42), not that it "ties" the instruments to the da Vinci system. Tellingly, the Complaint does not reference the usage counter in its tying count. (*See id*. ¶¶ 63-64.)

*Second*, Rebotix does not—and cannot—allege that Intuitive changed its product in order to impede any competitor, including Rebotix. *See* Areeda, *supra*, ¶ 1757a (technological tying claim viable only if "the defendant changes the design of the primary product in a way that makes it incompatible with rival complementary products"). Indeed, the technological tying cases that Rebotix cites (Opp. at 14-15) hinged on allegations that defendants implemented design changes to thwart competitors. *See United States v. Microsoft Corp.*, 253 F.3d 34, 65 (D.C. Cir. 2001) (defendant's redesign of operating system was response to emerging competitor); *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 998 (N.D. Cal. 2010) (denying motion to dismiss technological tying claim alleging defendant changed Xbox 360 system to preclude use of plaintiff's accessories). Here, Rebotix does not and cannot make similar allegations because, as alleged, usage counters were included on the first versions of FDA-approved EndoWrist instruments (Compl. ¶ 45), years before Rebotix or any other third party began adulterating those instruments.

## CONCLUSION

Thus, Intuitive respectfully requests that the Court dismiss the Complaint.

5

Dated: January 12, 2021

Respectfully submitted,

/s/ David L. McGee
DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

ALLEN RUBY
CA Bar No. 47109 (*Pro Hac Vice*)
ALLEN RUBY, ATTORNEY AT LAW
*Change in Address Filing Forthcoming*

LANCE A. ETCHEVERRY
CA Bar No. 199916 (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4500
lance.etcheverry@skadden.com

KAREN HOFFMAN LENT
NY Reg. No. 3058021 (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com

Counsel for Defendant
Intuitive Surgical, Inc.

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been filed via CM/ECF for electronic distribution to the following counsel of record on January 12, 2021:

David L. Luikart
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida, 33601
Tel: (813) 221-3900
dave.luikart@hwhlaw.com

Richard Lyon
Gregory Dovel
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
rick@dovellaw.com
greg@dovellaw.com

/s/ David L. McGee
DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

Counsel for Defendant
Intuitive Surgical, Inc.