**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

REBOTIX REPAIR LLC,

                Plaintiff,

vs.

                      Case No.:  8:20-cv-02274

INTUITIVE SURGICAL, INC.,

                Defendant.

**<u>Rebotix's Answer and Affirmative Defenses to Intuitive's Counterclaims</u>**

## Rebotix's Answer and Affirmative Defenses

Plaintiff Rebotix Repair LLC ("Rebotix") hereby sets forth the following Answer and Affirmative Defenses to Defendant Intuitive Surgical, Inc.'s ("Intuitive") Affirmative Defenses and Counterclaims.  Except as otherwise expressly set forth below, Rebotix denies knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation contained in the Counterclaims.  Any allegation, averment, contention or statement in the Counterclaims not specifically and unequivocally admitted is denied, including any statement in a heading or subheading.  Rebotix preserves all objections regarding the admissibility of any allegations or statements made in the Counterclaims or in this Answer and Affirmative Defense. Rebotix responds to each of the paragraphs of the Counterclaims as follows:

## Response to "Introduction"

**Paragraph 1**: This lawsuit concerns a widespread campaign of misinformation by Rebotix to deceive Intuitive customers into believing that its unauthorized modification and remanufacturing of Intuitive's EndoWrist instruments are consistent with the instruments' design and is cost-effective and safe. In reality, the so-called "repair" service offered by Rebotix is none of those things. To the contrary, Rebotix's services compromise Intuitive's technology to circumvent usage limits that ensure the surgical instruments are dependable, safe and conform to labeling cleared by the U.S. Food and Drug Administration ("FDA"). Intuitive customers' current and continuous use of Rebotix's services induce tremendous risk both to Intuitive customers and the patients on whom they operate.

1. Rebotix denies the allegations in Paragraph 1.

**Paragraph 2**: The result of decades of investment and innovation, Intuitive offers surgical systems that utilize minimally invasive procedures, including the highly touted da Vinci Surgical System and its related instruments and accessories. Intuitive's multi-functional instruments with EndoWrist technology feature wristed joints for natural dexterity, giving surgeons an expanded range of motion and increased precision.

2. Rebotix admits that Intuitive offers surgical systems that utilize minimally invasive

1

procedures, including the da Vinci Surgical System and its related instruments and accessories.  Rebotix admits that the EndoWrists include wristed joints.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 2 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 3**: Consistent with industry standards and best practices, and as required by the FDA, Intuitive has conducted rigorous testing and identified a maximum use limit for EndoWrist instruments. The maximum use limit, built into the EndoWrist instruments, ensures that instruments perform safely and reliably. Once the limit is reached, the instrument will no longer be operational, and should be replaced to avoid putting surgical patients at risk.

3. Rebotix admits that Intuitive builds a maximum use limit into EndoWrist instruments and that, once the limit is reached, the EndoWrists are rendered no longer operational.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 3.

**Paragraph 4**: In light of safety and reliability concerns, among others, customers agree in their contracts with Intuitive that (i) they will not use Intuitive instruments after the maximum use limit is reached, and (ii) unauthorized parties are prohibited from modifying or altering the instruments.

4. Rebotix admits that Intuitive includes terms in its contracts with customers that prohibit use of Intuitive instruments after the maximum use limit is reached and prohibit alterations or modifications of the instruments.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 4.

**Paragraph 5**: Despite being well aware of Intuitive's contracts with its customers and the express prohibitions therein, Rebotix solicits Intuitive customers to use Rebotix's so-called "repair" services for EndoWrist instruments.  Once retained, Rebotix adulterates those instruments.

5. Rebotix admits that it is aware of certain Intuitive contracts with its customers and the terms therein.  Rebotix further admits that it offers its repair services to customers who wish to implement such services.  Except as expressly admitted, Rebotix denies

2

the allegations in Paragraph 5.

**Paragraph 6**: More specifically, Rebotix breaks into EndoWrist instruments and installs unauthorized technology that allows instruments to be used beyond their validated number of useful and safe lives. This unauthorized remanufacturing process results in modified instruments that include new materials inconsistent with the instruments' design and functional requirements. These added materials have never been tested or validated by Intuitive and, upon information and belief, have not been properly tested or validated by Rebotix in accordance with regulatory requirements.

6.   Rebotix admits that it installs an Interceptor as part of the repair process so that

customers' EndoWrist instruments can continue to be used for their intended purpose

after they reach the maximum use limit imposed by Intuitive.  Rebotix denies that

Intuitive has not tested or validated an EndoWrist instrument that has been repaired

by Rebotix because it is without knowledge or information sufficient to form a belief

as to the truth of these allegations.  Except as expressly admitted, Rebotix denies the

allegations in Paragraph 6.

**Paragraph 7**: Rebotix does not inform Intuitive customers of the true nature of Rebotix's wholly unauthorized operations, let alone the substantial medical, financial and legal risks that customers face if they use Rebotix's services.

7.   Rebotix denies the allegations in Paragraph 7.

**Paragraph 8**: Rebotix's success thus depends on its ability to deceive Intuitive customers. To that end, Rebotix's marketing materials and communications are rife with false and misleading statements, all as part of a coordinated effort to bolster and legitimize its remanufacturing operations that, upon information and belief, have not received FDA 510(k) premarket clearance and have not been properly certified.

8.   Rebotix denies the allegations in Paragraph 8.

**Paragraph 9**: Rebotix's deceptive marketing claims are of several stripes. Many specifically concern the purported nature of the company's operations, conveying a false message to Intuitive customers that what Rebotix does to EndoWrist instruments is safe, effective, reliable and conforms to regulatory requirements. For example:

a.   Rebotix markets itself as "Rebotix Repair" and states that it is merely "repairing"
     EndoWrist instruments (*see, e.g.*, Exs. A-B), but these representations do not describe the

3

substantial modifications that are actually made by Rebotix. Rebotix does not merely tune up or calibrate the instruments; Rebotix *changes* those instruments in significant (and risky) ways.

b. Rebotix compounds its deception by offering a "complete repair" of EndoWrist instruments—further conveying a false message that the instruments are broken or defective when they reach their usage limit. *See, e.g.*, Ex. C. But Rebotix knows that the usage limits are a *feature*, not a bug, of EndoWrist instruments, because they ensure proper and safe operation.

c. Rebotix similarly claims that, once serviced by Rebotix, the now-altered EndoWrist instruments are not replacement instruments, but rather "da Vinci manufactured instrument[s] that ha[ve] been repaired to original specifications." *See, e.g.*, Ex. B. Rebotix claims that serviced EndoWrist instruments will "meet the quality and functional requirements of a new device." *See, e.g.*, Ex. C. These claims are untrue. Moreover, Rebotix falsely asserts that the foregoing claims have been sufficiently validated even though (among other problems) Rebotix would have needed access to Intuitive's design history and other internal files to identify the "quality and functional requirements" of new EndoWrist instruments. *Id.*

d. Rebotix has further disseminated statements, including talking points for contacts with customers, that misrepresent Intuitive's testing and safety protocols, as well as the safety of Rebotix's services. *See, e.g.*, Ex. D.

9. Rebotix admits that its full name is Rebotix Repair LLC and that it refers to its name as "Rebotix Repair" in certain marketing materials.  Rebotix admits that its repairs include installation of an Interceptor so that customers' EndoWrist instruments can continue to be used for their intended purpose after they reach the maximum use limit imposed by Intuitive.  Rebotix admits that, in certain marketing materials, Rebotix states that it offers "repairs" and "complete repairs" of EndoWrist instruments, that a repaired EndoWrist is "not an alternative or replacement instrument" but is a "da Vinci manufactured instrument that has been repaired to original specifications," and that a repaired EndoWrist "meet[s] the quality and functional requirements of a new device."  Except as expressly admitted, Rebotix denies the allegations in Paragraph 9.

**Paragraph 10:** Rebotix also conveys false and misleading messages concerning the purported legitimacy and legality of the "repair" services it offers, including the following:

a. Rebotix fails to adequately convey to customers that its services are neither authorized

nor approved by, nor otherwise affiliated with, Intuitive.

b. Rebotix informs customers that it has reasonably determined that its services do not require 510(k) premarket review and clearance by the FDA, when in fact Rebotix has not conducted a proper analysis of whether that was the case, nor, upon information and belief, consulted with the FDA to validate its assertion.

10. Rebotix denies the allegations in Paragraph 10.

**Paragraph 11:** Additionally, Rebotix misrepresents its qualifications. Indeed, by the very acts of marketing and offering its services to Intuitive customers, Rebotix necessarily conveys that it is qualified and/or has the specialized training to work on highly technical EndoWrist instruments. That, too, is not the case.

11. Rebotix denies the allegations in Paragraph 11.

**Paragraph 12:** Yet another category of false advertising is Rebotix's touting and purported validation of alleged cost savings for customers who turn to Rebotix to bypass usage limits instead of purchasing new EndoWrist instruments. Lacking any legitimate basis to make such claims, Rebotix's advertising fails to inform customers and/or affirmatively misrepresents the consequences for customers who use Rebotix's unauthorized services, such as the voiding of customers' warranties and jeopardizing of their service contracts with Intuitive.

12. Rebotix admits that certain of Rebotix's marketing materials and statements do not reference customers' service contracts with Intuitive or customers' warranties.

Except as expressly admitted, Rebotix denies the allegations in Paragraph 12.

**Paragraph 13:** Finally, Rebotix has leveled false accusations against Intuitive, including a baseless and inflammatory charge that the usage limits built into EndoWrist instruments are "arbitrary" and included solely for Intuitive's financial gain. Rebotix knows, however, that the usage limits are critical for patient safety, designed in compliance with FDA regulations, requirements and publications, consistent with applicable industry standards and amply supported and validated by scientific testing.

13. Rebotix admits that it has stated that the number of maximum uses set by Intuitive for its EndoWrists is arbitrary (for example, different types of EndoWrists wear at different rates and yet have the same maximum use limit) and motivated by financial gain. Except as expressly admitted, Rebotix denies the allegations in Paragraph 13.

5

**Paragraph 14:** Making matters worse, upon information and belief, Rebotix has collaborated with other third parties, including Restore Robotics, LLC ("Restore"), to offer unauthorized services and expand the misinformation campaign about those services and about Intuitive. These third parties, referred to as "distributors," are believed to be working with Rebotix to perpetuate a larger misinformation campaign, which has resulted in widespread deception and confusion.

14. Rebotix admits that it has worked with Restore and distributors.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 14.

**Paragraph 15:** All of the foregoing deceptive messages are part and parcel of Rebotix's false pitch that: (i) it can service EndoWrist instruments in a manner that saves large sums of money without any downside—more specifically, without compromising efficacy, dependability or safety; and (ii) Intuitive's safety and other requirements need not be adhered to or trusted.  The dangers of such an inaccurate campaign to customers and their patients are self-evident, and the damages to Intuitive's business and reputation are ongoing.

15. Rebotix denies the allegations in Paragraph 15.

**Paragraph 16:** Intuitive has raised its concerns with Rebotix.  But rather than address those concerns or cease its deceptive marketing and unlawful operations, Rebotix filed a meritless lawsuit. Rebotix has thus left Intuitive with no choice but to seek judicial intervention.

16. Rebotix admits that Intuitive has raised certain of the allegations included in these counterclaims with Rebotix, and that Rebotix has filed this lawsuit.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 16.

### Response to "Parties"

**Paragraph 17:** Intuitive is a Delaware corporation with its principal place of business at 1266 Kifer Road, Sunnyvale, California. Among other services, Intuitive manufactures and sells surgical systems, along with related instruments and accessories, to hospitals and surgical centers world-wide.

17. Rebotix admits the allegations in Paragraph 17.

**Paragraph 18:** Rebotix Repair LLC is a Florida limited liability company with its principal address at 539 Pasadena Avenue South, St. Petersburg, Florida 33707. Rebotix purports to offer repair and replacement services for Intuitive's EndoWrist instruments.

18. Rebotix admits that Rebotix Repair LLC is a Florida limited liability company with

its principal address at 539 Pasadena Avenue South, St. Petersburg, Florida 33707.

Rebotix admits that it offers repair services for Intuitive's EndoWrist instruments that

allow customers to continue to use the EndoWrist instruments they already purchased

from Intuitive rather than purchase unnecessary replacement EndoWrist instruments

from Intuitive.  Except as expressly admitted, Rebotix denies the allegations in

Paragraph 18.

### **Response to "Jurisdiction and Venue"**

**Paragraph 19:** This Court has subject matter jurisdiction over Intuitive's federal claims under 28 U.S.C. § 1331 and § 1332.  The federal claims arise under the Lanham Act, 15 U.S.C. § 1125. This Court has supplemental subject matter jurisdiction over Intuitive's state-law claims under 28 U.S.C. § 1367(a).

19. Rebotix admits the allegations in Paragraph 19.

**Paragraph 20:** This Court has personal jurisdiction over Rebotix, and venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c), as Rebotix is located in the State of Florida, has appeared in this action and initiated this action by filing claims against Intuitive in this District.

20. Rebotix admits the allegations in Paragraph 20.

### **Response to "General Allegations"**

**Paragraph 21:** Intuitive designs, manufactures and markets da Vinci Surgical Systems and related instruments and accessories, which have become widely known as an advanced generation of surgery.  Da Vinci systems combine the benefits of minimally-invasive surgery for patients with the ease of use, precision and dexterity of open surgery for surgeons.

21. Rebotix admits that Intuitive markets da Vinci Surgical Systems and related

instruments and accessories.  Rebotix denies the remaining allegations in Paragraph

21 because it is without knowledge or information sufficient to form a belief as to the

truth of the allegations therein.

**Paragraph 22:** A da Vinci Surgical System consists of a surgeon's console, a patient-side cart and a high-performance vision system. Da Vinci technology translates a surgeon's natural hand

7

movements, which are performed on instrument controls at the console, into corresponding micro-movements of instruments positioned inside the patient through small incisions or ports. In short, the da Vinci Surgical System provides operating surgeons with intuitive control, range of motion, fine tissue manipulation capability and three-dimensional, high-definition vision, while simultaneously allowing surgeons to work through small ports.

22. Rebotix admits the allegations in Paragraph 22.

**Paragraph 23:** Through its extensive efforts and investments in research and development, as well as through strategic alliances with other medical and technology companies, Intuitive has developed and commercialized four generational platforms of da Vinci Surgical Systems and continues to innovate in order to improve surgical outcomes. All of the da Vinci platforms as well as Intuitive's other surgical technologies have been designed with the company's core vision top-of-mind:  minimally invasive care is life-enhancing care.

23. Rebotix denies the allegations in Paragraph 23 because it is without knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 24:** In addition to the primary surgical platforms, Intuitive develops, manufactures and sells compatible instruments and accessories customized for various surgical procedures, such as forceps, scissors, electrocautery tools and scalpels.

24. Rebotix admits that, in addition to the primary surgical platforms, Intuitive sells

compatible instruments and accessories customized for various surgical procedures,

such as forceps, scissors, electrocautery tools and scalpels.  Except as expressly

admitted, Rebotix denies the allegations in Paragraph 24 because it is without

knowledge or information sufficient to form a belief as to the truth of the allegations

therein.

**Paragraph 25:** Most of these instruments incorporate EndoWrist technology, which feature wristed joints for natural dexterity.  Inspired by the human hand, EndoWrist enables surgeons to orient the instruments carefully relative to the tissue and suture with precision, just as they can in open surgery.  EndoWrist instruments' internal cables provide maximum responsiveness, allowing for rapid and precise suturing, dissection and tissue manipulation.

25. Rebotix denies the allegations in Paragraph 25 because it is without knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 26:** Because of the innovations and benefits that they provide, da Vinci Surgical Systems and EndoWrist instruments have successfully enabled surgeons to perform a wide range of surgical procedures across a variety of specialties. That success has made Intuitive's offerings a highly desirable, competitive alternative to other surgical modalities, such as open and laparoscopic surgery.

26. Rebotix admits that surgeons have used da Vinci Surgical Systems and EndoWrist

instruments to perform a variety of surgical procedures across a variety of specialties.

Except as expressly admitted, Rebotix denies the allegations in Paragraph 26.

**Paragraph 27:** Intuitive goes to great lengths to ensure that its various products are safe, effective and reliable. Through its dedicated engineers, Intuitive subjects its products to extensive testing to ensure its products are safe, reliable and efficacious.

27. Rebotix denies the allegations in Paragraph 27 because it is without knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 28:** Among other steps taken to ensure that EndoWrist instruments meet exacting performance specifications, most are designed with a usage life of a defined number of procedures.  A programmed memory chip inside each such instrument performs several functions that help determine how the da Vinci system and EndoWrist instruments work together, including by not allowing instruments to be used for more than the prescribed and appropriate number of procedures.

28. Rebotix admits that Intuitive imposes maximum use restrictions of a defined number

of procedures for its EndoWrists.  Rebotix admits that Intuitive includes a

programmed memory chip inside each such instrument that is intended to prevent the

instruments from being used for more than the defined number of procedures.  Except

as expressly admitted, Rebotix denies the allegations in Paragraph 28.

**Paragraph 29:** The usage limits for EndoWrist instruments are determined through a rigorous process involving substantial scientific testing and analysis.  For example, instruments are subject to testing protocols that:  (i) expose them to mechanical and electrical stress representative of intended use, taking into account procedure variances; and (ii) put them through typical installation, cleaning and sterilization cycles to simulate real-life uses in the surgical field as nearly as possible.  Analyzing the data from its various tests, Intuitive also applies complex statistical models to identify risks and confirm the number of times that each instrument can safely and reliably be used.

29. Rebotix denies the allegations in Paragraph 29 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 30:** Intuitive's incorporation of usage limits into EndoWrist instruments and other products is important as a best practice and critical to regulatory compliance.

30. Rebotix denies that Intuitive's incorporation of usage limits into EndoWrist instruments is important as a best practice and critical to the regulatory compliance allegations in Paragraph 30.  Rebotix denies the remaining allegations in Paragraph 30 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein

**Paragraph 31:** Many of Intuitive's products and operations are subject to regulation in each of the countries and regions where Intuitive markets and sells products.  Intuitive therefore is careful to stay up to date on the requirements of a large and growing body of international standards, which govern the design, manufacture, sourcing, testing, certification, packaging, installation and use and disposal of Intuitive products.  Indeed, Intuitive's regulatory compliance department consists of over 550 full-time personnel devoted to this task.

31. Rebotix denies the allegations in Paragraph 31 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 32:** In the United States, for example, Intuitive submits many of its systems, instruments and accessories to the FDA for premarket clearance.

32. Rebotix denies the allegations in Paragraph 32 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 33:** Under the Federal Food, Drug, and Cosmetic Act, medical devices are classified into one of three classes—Class I, Class II or Class III—depending on the degree of risk associated with each medical device and the extent of control needed to provide a reasonable assurance of safety and effectiveness.  Intuitive's current products (including EndoWrist instruments) are Class II medical devices, which are subject to general controls and typically require premarket demonstration of adherence to FDA performance standards or other special controls in order to obtain clearance. Premarket review and clearance are accomplished through the 510(k) premarket notification process.

33. Rebotix denies that Intuitive's current products are Class II medical devices because

it is without knowledge or information sufficient to form a belief as to the truth of that

allegation.  Rebotix admits the other allegations in Paragraph 33.

**Paragraph 34:** Critically, through its regulations, requirements and publications, the FDA mandates that in order for 510(k) clearance to be issued, the EndoWrist instrument's maximum use limits must be determined and disclosed. Accordingly, when Intuitive builds usage limits into EndoWrist instruments, it is both adhering to best practices and taking the steps necessary to comply with federal (and other) requirements.

34. Rebotix denies the allegations in Paragraph 34.

**Paragraph 35:** Even after a medical device like an EndoWrist instrument receives initial 510(k) clearance from the FDA, any modification to the device that could significantly affect its safety or effectiveness, or that would constitute a major change in its intended use, requires a new 510(k) clearance, or could even require a premarket application ("PMA") approval.  (See 21 C.F.R. § 807.81(a)(3).) The FDA requires each manufacturer to make the determination of whether a modification requires a new 510(k) clearance or PMA in the first instance, but the FDA may review any such determination.  If the FDA disagrees with a manufacturer's decision not to seek a new 510(k) clearance or PMA approval for a particular modification, the FDA may retroactively require the manufacturer to do so, and under certain circumstances may require the manufacturer to cease marketing and/or recall the modified device until clearance or approval is obtained.

35. Rebotix denies that its services requires a 510(k) clearance, and denies that it

performs any modification to EndoWrists that could significantly affect its safety or

effectiveness, or that would constitute a major change in its intended use.  Rebotix

otherwise admits the allegations in Paragraph 35.

**Paragraph 36:** In addition, any company that remanufactures devices or instruments as that term is defined by the FDA must obtain 510(k) clearance. (See 21 C.F.R. § 807.81(a)(3).) Per FDA regulations, a "remanufacturer" is "any person who processes, conditions, renovates, repackages, restores, or does any other act to a finished device that significantly changes the finished device's performance or safety specifications, or intended use." (See 21C.F.R. § 820.3(w).)

36. Rebotix denies any assertion or suggestion in the allegation that remanufacturing

includes the service or repair of medical devices that does not significantly change the

device's performance or safety specifications, including re-setting an instrument's

counter for further uses of the device beyond its original design and placing it back in

service with the customer.  Rebotix admits the remaining allegations of paragraph 36.

**Paragraph 37:** Given the surgical uses for which Intuitive's products are designed, proper maintenance of those products is essential.  Intuitive customers therefore have access to an expansive infrastructure of specialists and engineers around the world who can offer a full complement of round-the-clock support and service for the da Vinci Surgical Systems. That infrastructure includes a network of field service engineers across the United States, Europe and Asia, as well as distributors and service providers around the globe with whom Intuitive maintains relationships.

37. Rebotix admits that proper maintenance of medical devices, including Intuitive's products, is essential.  Rebotix admits that Intuitive provides customers with field service engineers to provide support and service for da Vinci Surgical Systems across the United States, Europe and Asia.  Rebotix denies the remainder of the allegations in Paragraph 37 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 38:** Intuitive ensures that any in-house technicians or authorized third party technicians that are part of Intuitive's service and support teams have the specialized training and experience necessary to safely and reliably work on the highly technical da Vinci systems.

38. Rebotix denies the allegations in Paragraph 38 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 39:** Maintenance or modification of Intuitive devices by unauthorized and/or unqualified individuals, however, could lead to adverse outcomes and carry additional risk to surgical patients and to Intuitive customers that Intuitive would be unable to mitigate. For example:  (i) non-validated reprocessing methods, and unknown handling and transit conditions have the potential to damage instruments; (ii) handling and product modification can impact traceability and monitoring of the device by Intuitive, including Intuitive's ability to update customers about important developments like recalls; and (iii) using unauthorized channels for acquisition or maintenance of products may violate a given hospital's or health care facility's internal policies and impact the validity of patient consents.

39. Rebotix denies that any repairs or services provided by Rebotix to Intuitive devices could lead to adverse outcomes or carry additional risk to surgical patients and to

Intuitive customers that Intuitive would be unable to mitigate, including the alleged examples (i), (ii), and (iii).  Rebotix admits that certain modifications of medical devices, including Intuitive devices, by anyone (including authorized or unauthorized and/or qualified or unqualified individuals) could lead to adverse outcomes or risks to surgical patients and customers.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 39.

**Paragraph 40:** For these reasons and others, Intuitive carefully restricts who is permitted to perform maintenance and support services on its products and prohibits unauthorized parties from doing so.

40. Rebotix admits that Intuitive imposes restrictions on who may perform maintenance and support services on its products and prohibits certain parties from doing so.

Except as expressly admitted, Rebotix denies the allegations in Paragraph 40.

**Paragraph 41:** In that regard, Intuitive customers enter into binding Sales, License, and Service Agreements ("SLSA") governing their acquisition and use of Intuitive devices.  In those Agreements, the customer unequivocally agrees that, *inter alia*, it "will not, **nor will Customer permit any third party to, modify**, disassemble, reverse engineer, *alter*, or misuse" the Da Vinci Surgical System or instruments (such as EndoWrist) and accessories. (SLSA § 3.4 (emphasis added).)

41. Rebotix admits that at least some Intuitive customers enter into a Sales, License, and Service Agreement ("SLSA") that purports to govern their acquisition and use of Intuitive devices and that includes the language that it "will not, nor will Customer permit any third party to, modify, disassemble, reverse engineer, alter, or misuse the System or Instruments and Accessories."  Rebotix denies that the anticompetitive terms of the SLSA, including this term, are binding or enforceable.  Rebotix denies the remainder of the allegations in Paragraph 41 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

13

**Paragraph 42:** If a third party does modify, alter, or otherwise manipulate Intuitive devices, thus violating the above contractual provision, "any warranties applicable to the System will become void" and Intuitive may terminate the SLSA immediately upon written notice. (Id.) Relatedly, if a customer "has used the System with surgical instruments or accessories that are not Instruments or Accessories [*i.e.*, those made or approved by Intuitive for use with the System]," then the system warranty "is void with respect to any claims." (SLSA §§ 2, 10.)

42. Rebotix admits that at least some Intuitive customers' SLSAs include the language that "any warranties applicable to the System will become void" if a customer does not adhere to the restrictions of Section 3.4, as quoted in the previous paragraph 41. Rebotix admits that at least some Intuitive customers' SLSAs include the language that if a customer "has used the System with surgical instruments or accessories that are not Instruments or Accessories [i.e., those made or approved by Intuitive for use with the System]," then the system warranty "is void with respect to any claims." Rebotix denies that the anticompetitive terms of the SLSA, including this term, are binding or enforceable.  Rebotix denies the remainder of the allegations in Paragraph 42 because it is without knowledge or information sufficient to form a belief as to the truth of the allegations therein.

**Paragraph 43:** The SLSA also includes an express acknowledgment by Intuitive customers that they may not use instruments after they have exceeded the usage limits, or if those instruments have been subject to any servicing or modification not authorized by Intuitive:

Instruments and Accessories are subject to a limited license to use those instruments and Accessories with, and prepare those Instruments and Accessories for use with, the System. ***Any other use is prohibited,*** whether before or after the Instrument or Accessory's license expiration, ***including repair, refurbishment, or reconditioning not approved by Intuitive.  This license expires once an instrument or Accessory is used up to its maximum number of uses*** specified in the Documentation accompanying the Instrument or Accessory.

(SLSA § 8 (emphasis added); see also id. § 3.4 (requiring proper use of the da Vinci Surgical System consistent with the attached documentation, including the user manual).)

43. Rebotix admits that at least some Intuitive customers' SLSAs include terms

(including the quoted paragraph SLSA § 8) preventing them from using instruments

after they have exceeded the usage limits, or if those instruments have been subject to

any servicing or modification not authorized by Intuitive.  Rebotix denies that the

anticompetitive terms of the SLSA, including this term, are binding or enforceable.

Rebotix denies the remainder of the allegations in Paragraph 43 because it is without

knowledge or information sufficient to form a belief as to the truth of the allegations

therein

**Paragraph 44:** Seeking to piggyback on Intuitive's innovation and success, Rebotix has created a business model based on the unauthorized remanufacturing of EndoWrist instruments.  Rebotix has done so despite its awareness both of Intuitive's design of EndoWrist instruments not to be used for more than the prescribed and appropriate number of procedures and the fact that Intuitive's customer agreements prohibit unauthorized parties from servicing or modifying instruments (for very significant reasons).

44. Rebotix admits that it was aware that Intuitive's EndoWrists have built-in

anticompetitive maximum use restrictions.  Rebotix admits that it was aware of the

terms of at least some customer SLSA agreements, including the terms quoted in the

preceding paragraphs of the counterclaims.  Except as expressly admitted, Rebotix

denies the allegations in Paragraph 44.

**Paragraph 45:** Unconcerned with either the serious safety implications, or the legal or financial consequences for customers, Rebotix's principal "service" is not merely to calibrate or adjust EndoWrist instruments, but rather to make significant qualitative changes to those instruments to get them to work past their pre-programmed usage limits.

45. Rebotix admits that EndoWrists serviced by Rebotix can be used for their intended

use beyond the pre-programmed maximum use restriction imposed by Intuitive.

Except as expressly admitted, Rebotix denies the allegations in Paragraph 45.

**Paragraph 46:** Upon information and belief, the service Rebotix performs involves *disabling* the existing memory chip in EndoWrist instruments, which functions as the usage counter and would generally not allow the instruments to be used for more than the prescribed number of

15

procedures.  Among other steps, upon information and belief, Rebotix solders the Intuitive memory chip onto its own circuit board, which includes a Rebotix chip called the "Interceptor" that bypasses and changes the prescribed number of procedures. Rebotix then *installs* its own adulterated circuit board (containing the "Interceptor" chip) in the instruments.  In short, Rebotix inserts its own technology to override a fundamental feature of EndoWrist instruments, changing their intended use and their performance and safety specifications.

46. Rebotix admits that it provides a service to allow EndoWrists to be used beyond the usage limit imposed by Intuitive that involves soldering the Intuitive memory chip in EndoWrists into a circuit board that includes components used for counting uses, and installing the circuit board into the instruments.  Rebotix admits that the overall assembly is sometimes referred as an Interceptor.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 46.

**Paragraph 47:** Notwithstanding the fact that Rebotix's modifications of EndoWrist instruments are substantial, and that its activity renders Rebotix a "remanufacturer" within the context of applicable FDA regulations (*see supra* ¶ 36), upon information and belief, Rebotix has not received 501(k) [1] clearance from the FDA for its operations.

47. Rebotix denies that Rebotix's EndoWrists services are a substantial modification.  Rebotix denies that its activity renders Rebotix a "remanufacturer" within the context of applicable FDA regulations referenced by the allegations in Paragraph 47.  Rebotix denies that a 510(k) clearance from the FDA is required or appropriate for its operations.  Accordingly, that Rebotix has not received a 510(k) clearance from the FDA for its operations is admitted.  Except as expressly admitted, Rebotix denies the allegations in Paragraph 47.

**Paragraph 48:** As a result, Rebotix's services—offered to hospitals and other purchasers of Intuitive's surgical equipment—are not only unauthorized, but wholly unregulated.

48. Rebotix admits that its services are offered to hospitals and other purchasers of

---

[1] Rebotix assumes this is a typographical error and was intended to be 510(k) clearance.

Intuitive's surgical equipment.  Rebotix admits that Intuitive has not authorized

Rebotix's services, but denies that such authorization is required.  Rebotix admits that

the FDA has not regulated Rebotix's services, but denies that such regulation is

required.  Except as expressly admitted, Rebotix denies the allegations in Paragraph

48.

**Paragraph 49:** Rebotix's business model is supported by a widespread and coordinated misinformation campaign targeted at Intuitive customers.  The overarching goal of the campaign is to persuade EndoWrist instrument purchasers into believing that Rebotix's service is legitimate, safe and without any real downside. Rebotix's service is none of those things.

49. Rebotix denies the allegations in Paragraph 49.

**Paragraph 50:** This campaign of deception spans several different kinds of false and misleading marketing claims.

50. Rebotix denies the allegations in Paragraph 50.

**Paragraph 51:** Much of Rebotix's efforts at deception concern misrepresenting the nature, efficacy and safety of Rebotix's services.  As set forth above, Rebotix's modification of EndoWrist instruments is substantial, using the "Interceptor" chip to force the instruments to operate beyond their safe and reliable usage lives.  Yet Rebotix falsely markets its service as safe, effective and reliable, and conceals from the public that it is breaking into Intuitive instruments to add its own circuit board and electrical chip.

51. Rebotix admits that its services include installation of an Interceptor that allows the

EndoWrists to be used for their intended purpose beyond the limit imposed by

Intuitive. Except as expressly admitted, Rebotix denies the allegations in Paragraph

51.

**Paragraph 52:** For example, Rebotix holds itself out as "Rebotix Repair"—misrepresenting through its very name that its services result in the "repair" of EndoWrist instruments. *See, e.g.*, Ex. A.  Rebotix compounds its misrepresentation by routinely referring to its remanufacturing process as simply "repairing" EndoWrist instruments, inaccurately conveying to customers that what Rebotix is doing is simply a tune up or other routine step to bring the instruments back to their intended condition. *See, e.g.,* Exs. A-D.

52. Rebotix admits that its full name is Rebotix Repair LLC and that it refers to its name

17

as "Rebotix Repair" in certain marketing materials.  Rebotix admits that its services

result in a repaired EndoWrist, and that it has stated this.  Except as expressly

admitted, Rebotix denies the allegations in Paragraph 52.

**Paragraph 53:** Rebotix further presses its deception in materials that purport to offer a "complete repair" of EndoWrist instruments. *See, e.g.,* Ex. C.

53. Rebotix admits that, in certain marketing materials, Rebotix states that it offers a

"complete repair" of EndoWrist instruments.  Except as expressly admitted, Rebotix

denies the allegations in Paragraph 53.

**Paragraph 54:** Suggesting that Rebotix "repairs" EndoWrist instruments not only mischaracterizes the nature of Rebotix's actual operations, but further conveys the false and misleading message that instruments that have reached their usage limits are broken, defective or otherwise in need of fixing. Rebotix knows, however, that there is nothing broken about an EndoWrist instrument that cannot exceed its predetermined usage limit; to the contrary, that the instrument can no longer be used is a fully intended—and critically important—safety feature.

54. Rebotix denies the allegations in Paragraph 54.

**Paragraph 55:** Rebotix also touts that "[a] repaired EndoWrist is not an alternative or replacement instrument," but instead a "da Vinci manufactured instrument that has been repaired to original specifications." *See, e.g.,* Ex. B.  Rebotix similarly claims that its services ensure that EndoWrist instruments will "meet the quality and functional requirements of a new device." *See, e.g.,* Ex. C.

55. Rebotix admits that, in certain marketing materials, Rebotix has stated that a repaired

EndoWrist is "not an alternative or replacement instrument" but is a "da Vinci

manufactured instrument that has been repaired to original specifications," and that a

repaired EndoWrist "meet[s] the quality and functional requirements of a new

device."  Except as expressly admitted, Rebotix denies the allegations in Paragraph

55.

**Paragraph 56:** Through these claims, however, Rebotix deceives customers in at least two ways. *First*, it is not true that the adulterated EndoWrist instruments retain "original specifications" or "meet the quality and functional requirements of a new device." Upon

information and belief, Rebotix does not have the capability to provide customers with adulterated EndoWrist instruments equivalent to the quality and functional requirements of new, out of the box, EndoWrist instruments manufactured by Intuitive.  At its core, Rebotix's remanufactured product is qualitatively different from—and does not maintain the original specifications of—an out of the box EndoWrist instrument (*e.g.*, it incorporates the unauthorized "Interceptor" chip). *Second*, Rebotix misrepresents that it has taken the steps necessary to sufficiently validate its claim that the "requirements" of a "new device" have been met—*e.g.*, conducting or relying on reliable scientific testing and analysis. Rebotix plainly has not done so, nor does Rebotix have access to the Intuitive internal files that would specify the "quality and functional requirements" of new EndoWrist instruments.

56. Rebotix denies the allegations in Paragraph 56.

**Paragraph 57:** In addition, Rebotix compounds the damage from the foregoing mischaracterizations of its service by making blatantly false representations about Intuitive's testing and safety protocols, and why Rebotix's services purportedly are safe. *See* Ex. E.

57. Rebotix denies the allegations in Paragraph 57.

**Paragraph 58:** Rebotix also misrepresents its qualifications.  By the very acts of marketing and offering its services to Intuitive customers, Rebotix necessarily conveys that, despite its lack of authorization and being outside the Intuitive global support and service infrastructure, it has the specialized training and knowledge to safely work on highly technical EndoWrist instruments.

58. Rebotix denies the allegations in Paragraph 58.

**Paragraph 59:** A number of other deceptive marketing claims by Rebotix concern the legitimacy and/or legality of its remanufacturing services.

59. Rebotix denies the allegations in Paragraph 59.

**Paragraph 60:** Rebotix is well aware that its service is not authorized by Intuitive—in fact, it is prohibited by the contracts binding Intuitive's customers—and that its modifications to EndoWrist instruments are not being regulated. Rebotix therefore seeks to obscure these dubious distinctions in the company's marketing and communications.

60. Rebotix admits that Intuitive has not authorized Rebotix's services, but denies that such authorization is required.  Rebotix admits that the FDA has not regulated Rebotix's services, but denies that such regulation is required.  Rebotix admits that certain Intuitive customer contracts include anticompetitive terms intending to foreclose Rebotix's services, but denies that these terms are binding or enforceable.

19

Except as expressly admitted, Rebotix denies the allegations in Paragraph 60.

**Paragraph 61:** In that regard, Rebotix fails to convey that its services are neither authorized nor approved by, nor otherwise associated or affiliated with, Intuitive.

61. Rebotix denies the allegations in Paragraph 61.

**Paragraph 62:** To mollify concerns that customers would have about subjecting surgical instruments to unauthorized "repair" services, and further underscore the false message that its service is safe, effective and reliable, Rebotix informs customers that it has reasonably determined that its services do not require FDA certification or clearance. *See, e.g.*, Ex. C. But Rebotix has not conducted a proper analysis of whether such certification or clearance is necessary.

62. Rebotix admits that it has informed customers that it has reasonably determined that

its services do not require FDA certification or clearance. Except as expressly

admitted, Rebotix denies the allegations in Paragraph 62.

**Paragraph 63:** Yet another category of Rebotix's false advertising is its claims that using Rebotix's services will result in substantial cost-savings and financial benefits for Intuitive customers. Indeed, Rebotix conveys to customers that it has conducted a financial analysis to confirm this is the case. For example, Rebotix describes itself in its marketing materials as "an economic and ecological answer for your hospital" and claims that it can provide Intuitive customers with "[a]n average savings of 45% or more compared to OEM product." *See, e.g.,* Ex. A. This, too, is deceptive on at least two counts.

63. Rebotix admits it has stated that Rebotix's services will result in substantial cost-

savings and financial benefits for Intuitive customers. Rebotix admits that it has

conveyed to customers that it has conducted a financial analysis to confirm this is the

case. Rebotix admits that certain marketing materials describe its services as "an

economic and ecological answer for your hospital" that can provide Intuitive

customers with "[a]n average savings of 45% or more compared to OEM product."

Except as expressly admitted, Rebotix denies the allegations in Paragraph 63.

**Paragraph 64:** *First*, Rebotix has no legitimate basis to make such claims. Certainly it has not provided any sufficient support to suggest that its purported financial analysis is accurate.

*Second*, the claim—and Rebotix's marketing and communications more generally— intentionally obscures and omits the negative consequences for customers who retain Rebotix, including that Rebotix's unauthorized alterations void their warranties (which, in turn, may result in additional expenditures for customers).  Notably, Rebotix fails to inform customers that its unauthorized services could subject customers to contract and warranty ramifications under their SLSAs with Intuitive by virtue of using unauthorized service technicians.

64. Rebotix denies the allegations in Paragraph 64.

**Paragraph 65:** For example, Rebotix deceptively advertises on its website that it "provide[s] service replacement components that help hospitals get back in control of their robotic surgical instruments, as for similar surgical instruments. This allows service centers to inspect and repair instruments as they do for the non-robotic equivalents, continuing use in a safe and responsible manner as the hospital chooses." (Rebotix Website: https://rebotixrepair.com/.)

65. Rebotix admits that it states on its website that it "provide[s] service replacement

components that help hospitals get back in control of their robotic surgical

instruments, as for similar surgical instruments. This allows service centers to inspect

and repair instruments as they do for the non-robotic equivalents, continuing use in a

safe and responsible manner as the hospital chooses."  Except as expressly admitted,

Rebotix denies the allegations in Paragraph 65.

**Paragraph 66:** Rebotix also has leveled false accusations against Intuitive and attacked Intuitive's credibility and trustworthiness. For example, Rebotix has baselessly asserted that the EndoWrist instruments' usage limits are "arbitrary" and/or motivated only by financial concerns. *See, e.g.,* Ex. D.  As detailed above (*supra* at ¶¶ 27-34), nothing could be further from the truth. In fact, the usage limits were set after rigorous analysis, are determined pursuant to FDA law and regulations and industry standards and are an essential component of ensuring patient health and safety.

66. Rebotix admits that it has stated that the number of maximum uses set by Intuitive for

its EndoWrists is arbitrary (for example, different types of EndoWrists wear at

different rates and yet have the same maximum use limit) and/or motivated by

financial concerns.  Except as expressly admitted, Rebotix denies the allegations in

Paragraph 66.

**Paragraph 67:** As noted above (*supra* at ¶¶ 39-43), Intuitive customers' SLSAs expressly prohibit both (i) engaging unauthorized third parties to modify, alter, or otherwise service EndoWrist instruments, and (ii) utilizing instruments beyond the maximum number of uses set by Intuitive.

> 67. Rebotix admits that at least certain Intuitive customers' SLSAs expressly prohibit
>
> both (i) engaging unauthorized third parties to modify, alter, or otherwise service
>
> EndoWrist instruments, and (ii) utilizing instruments beyond the maximum number
>
> of uses set by Intuitive.  Rebotix denies that the anticompetitive terms of the SLSAs,
>
> including this term, are binding, enforceable, or unequivocal.  Except as expressly
>
> admitted, Rebotix denies the remaining allegations in Paragraph 67 because it is
>
> without knowledge or information sufficient to form a belief as to the truth of the
>
> allegations.

**Paragraph 68:** Rebotix has knowledge of the SLSAs and the terms thereof, including the prohibitions that bar customers from retaining Rebotix to service EndoWrist instruments.

> 68. Rebotix admits that it has knowledge of at least certain Intuitive customers' SLSAs
>
> and the terms thereof, including the terms intended to bar customers from retaining
>
> Rebotix to service EndoWrist instruments.  Except as expressly admitted, Rebotix
>
> denies the remaining allegations in Paragraph 68.

**Paragraph 69:** Notwithstanding such knowledge, Rebotix has sought to induce—and has induced—Intuitive customers to breach the SLSAs (to their detriment) and utilize Rebotix's services, resulting in EndoWrist instrument use past their intended usage limits.

> 69. Rebotix denies the allegations in Paragraph 69.

**Paragraph 70:** But Rebotix's interference with the relationship between Intuitive and its customers goes beyond facilitating the breach of the SLSA.  In fact, upon information and belief, Rebotix has engaged in a series of suspect business practices to disrupt that relationship, including, *inter alia*: (i) misinforming customers that Intuitive is dishonest and itself engages in illegal practices (*supra* at ¶ 66); (ii) pressing customers to participate in or support litigation against Intuitive, or otherwise accuse Intuitive of intimidation; and (iii) providing draft language to customers to send to Intuitive to challenge usage limits and the terms of the customers' SLSAs

with Intuitive.

70. Rebotix admits that it has stated to customers that the number of maximum uses set by Intuitive for its EndoWrists is arbitrary (for example, different types of EndoWrists wear at different rates and yet have the same maximum use limit) and/or motivated by financial concerns (*supra* at ¶ 66). Rebotix admits that it has had discussions with customers concerning their participation in or support of litigation against Intuitive to curb Intuitive's anticompetitive practices. Rebotix admits that, at the request of customers, it has provided language for customers to provide to Intuitive to challenge the anticompetitive usage limits and the anticompetitive terms of the customers' SLSAs with Intuitive. Except as expressly admitted, Rebotix denies the remaining allegations in Paragraph 70.

**Paragraph 71:** Rebotix's false advertising, interference with Intuitive's contractual relationships and other illicit business practices have harmed (and are continuing to harm) Intuitive in a number of ways, including but not limited to the following:

71. Rebotix denies the allegations in Paragraph 71.

**Paragraph 72:** *First*, Rebotix's deception and other unfair practices deprive Intuitive of business. For example, customers who should be ordering replacement EndoWrist instruments when it is time to do so are instead turning to Rebotix's so-called "repair" services.

72. Rebotix denies the allegations in Paragraph 72.

**Paragraph 73:** *Second*, Intuitive's reputation and goodwill is damaged by Rebotix's direct attacks on Intuitive's honesty and integrity. By baselessly asserting that the EndoWrist instruments' usage limits are "arbitrary" and financially motivated, Rebotix tells customers that Intuitive should not be trusted, and that its important guidance on proper instrument usage need not be followed.

73. Rebotix denies the allegations in Paragraph 73.

**Paragraph 74:** *Third*, Intuitive's reputation and goodwill have been damaged when Rebotix's unauthorized and inadequate service have caused discord among Intuitive's customer base—with customers confused as to the truth behind Rebotix's offered services, products and promised

savings.  Moreover, to the extent that EndoWrist instruments manipulated by Rebotix do not function properly during surgery, it jeopardizes the public trust and confidence that Intuitive has inspired among its customers' patients.

74. Rebotix denies the allegations in Paragraph 74.

**Paragraph 75:** *Fourth*, Intuitive's relationship with its customers is further injured by Rebotix's misguided attempts to draw the customers into the dispute between the companies.

75. Rebotix denies the allegations in Paragraph 75.

**Paragraph 76:** While certain of the aforementioned categories of harm have injured Intuitive in a way that can be compensated in an amount to be determined at trial, much of it—such as the injury to Intuitive's reputation and customer relationships—is not readily calculable and may not be entirely redressed through monetary damages.  Such irreparable harm can only be fully remedied through injunctive relief.

76. Rebotix denies the allegations in Paragraph 76.

### Response to "COUNT ONE"

**(False Advertising and Unfair Competition – Lanham Act, 15 U.S.C. § 1125(a)(1))**

**Paragraph 77:** Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

77. Rebotix incorporates its answers to the allegations set forth in the corresponding

paragraphs.

**Paragraph 78:** In its marketing materials and commercial communications disseminated to potential and actual customers, Rebotix has made numerous false and misleading statements, including but not limited to the statements more specifically enumerated above that flagrantly misrepresent (or contain materially deceptive omissions concerning):  (i) the nature and/or efficacy of Rebotix's services (*e.g.*, by referring to those services as mere "repairs" or similar terms); (ii) the safety of Rebotix's services; (iii) that Rebotix is qualified to perform the services that it purports to offer; (iv) that devices serviced by Rebotix meet applicable quality and functional requirements (as well as that Rebotix conducted the testing and analysis necessary to determine such requirements were met); (v) that Rebotix reasonably determined that its unauthorized services do not require certification and clearance by the FDA; (vi) that use of Rebotix's services will result in substantial cost-savings for Intuitive customers (as well as that Rebotix conducted any analysis to determine whether there are any such cost- savings), (vii) that utilizing Rebotix's services do not carry any adverse financial, legal or other consequences (*e.g.*, voiding Intuitive customers' warranties); and (viii) that usage limits built into EndoWrist instruments are "arbitrary" and/or motivated only by financial concerns (as well as that Rebotix

conducted any analysis to back up that egregious attack on Intuitive's honesty).

78. Rebotix denies the allegations in Paragraph 78.

**Paragraph 79:** In its marketing materials and commercial communications disseminated to potential and actual customers, Rebotix has further confused customers by failing to convey that its unauthorized services are not associated or affiliated with, or sponsored or approved by, Intuitive and/or Intuitive products or services.

79. Rebotix denies the allegations in Paragraph 79.

**Paragraph 80:** Rebotix has further participated in a larger network of other third-party "distributors," including Restore, to offer unauthorized services of Intuitive products and spread disinformation using the same or similar false or misleading advertisements. By utilizing these third parties to disseminate false and misleading messages to potential and actual customers, Rebotix has compounded the deceptive and damaging effects of its misinformation campaign.

80. Rebotix admits that it has worked with Restore and distributors.  Except as expressly

admitted, Rebotix denies the allegations in Paragraph 80.

**Paragraph 81:** The false and misleading statements made and/or facilitated by Rebotix have deceived and/or have the capacity to deceive a substantial segment of Intuitive's current and potential consumers.

81. Rebotix denies the allegations in Paragraph 81.

**Paragraph 82:** The false and misleading statements made and/or facilitated by Rebotix are material and likely to influence consumer purchasing decisions.

82. Rebotix denies the allegations in Paragraph 82.

**Paragraph 83:** Both Intuitive's EndoWrist products and Rebotix's services are advertised, offered for sale and sold in interstate commerce.

83. Rebotix admits the allegations in Paragraph 83.

**Paragraph 84:** Rebotix's false and misleading statements were made and/or facilitated willfully and with the knowledge that the messages conveyed to the public were untruthful.

84. Rebotix denies the allegations in Paragraph 84.

**Paragraph 85:** Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Rebotix's actions, and will continue to suffer such substantial harm unless those actions are

restrained and enjoined by this Court.

85. Rebotix denies the allegations in Paragraph 85.

## Response to "COUNT TWO"

### (Common Law Unfair Competition)

**Paragraph 86:** Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

86. Rebotix incorporates its answers to the allegations set forth in the corresponding

paragraphs.

**Paragraph 87:** Rebotix is a competitor of Intuitive and has engaged in deceptive and fraudulent conduct in the marketing of its products and services that has caused a likelihood of confusion among consumers.

87. Rebotix admits that it is a competitor of Intuitive.  Except as expressly admitted,

Rebotix denies the allegations in Paragraph 87.

**Paragraph 88:** Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Rebotix's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

88. Rebotix denies the allegations in Paragraph 88.

## Response to "COUNT THREE"

### (Common Law Tortious Interference With Contract)

**Paragraph 89:** Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

89. Rebotix incorporates its answers to the allegations set forth in the corresponding

paragraphs.

**Paragraph 90:** At all relevant times, Intuitive had contractual relationships with its customers, including the SLSAs, which contain proscribed limitations concerning the modification or alteration of Intuitive EndoWrist instruments. Rebotix was at all times aware of these contractual relationships and undertook intentional acts to disrupt them and/or induce Intuitive customers to breach them.

90. Rebotix admits that Intuitive had contractual relationships with at least some customers that included SLSAs with limitations concerning the modification or alteration of Intuitive EndoWrist instruments.  Rebotix admits that at some point it became aware of the contractual relationships.  Except as expressly admitted, Rebotix denies the remaining allegations in Paragraph 90

**Paragraph 91:** There was no legal justification for Rebotix's actions, which were motivated purely by its own greed and subjected Intuitive patients, Intuitive customers and Intuitive itself to substantial harm.

91. Rebotix denies the allegations in Paragraph 91.

**Paragraph 92:** Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Rebotix's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

92. Rebotix denies the allegations in Paragraph 92.

## Response to "COUNT FOUR"

### (Florida Deceptive And Unfair Trade Practices Act – Fla. Stat. §§ 501.201 To 501.213 )

**Paragraph 93:** Intuitive incorporates by reference the allegations set forth in the previous and subsequent paragraphs of the Counterclaims.

93. Rebotix incorporates its answers to the allegations set forth in the corresponding

paragraphs.

**Paragraph 94:** Rebotix's actions specified in the paragraphs incorporated into this Count constitute unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute § 501.204.

94. Rebotix denies the allegations in Paragraph 94.

**Paragraph 95:** Rebotix willfully used or practiced these acts in violation of Section 501.204, and knew or should have known that its acts were unlawful and would damage Intuitive and injure consumers by its deception.

95. Rebotix denies the allegations in Paragraph 95.

27

**Paragraph 96:** Intuitive has suffered substantial harm, both monetary and irreparable, as a result of Rebotix's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

96. Rebotix denies the allegations in Paragraph 96.

### Response to "Jury trial"

**Paragraph 97:** Intuitive requests a jury trial as to all issues so triable.

97. Rebotix admits that Intuitive requests a jury trial as to all issues so triable.

### Response to "prayer for relief"

**Paragraph 98:** Intuitive respectfully requests this Court enter judgment in favor of Intuitive and against Rebotix including an Order granting Intuitive the following relief:

  a.  Compensatory damages on all applicable causes of action alleged herein;

  b.  Actual costs, expenses and attorneys' fees incurred in this lawsuit;

  c.  All exemplary, enhanced and punitive damages;

  d.  Pre-judgment and post-judgment interest;

  e.  Preliminary and permanent injunctive relief; and

  f.  Such other and further relief as the Court shall deem just and proper.

98. Rebotix admits that Intuitive requests, but denies that Intuitive is entitled to, any of

the relief requested in Paragraph 98.

### Affirmative Defenses

### First Affirmative Defense

The Counterclaims fail to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Counterclaims are barred in whole or in part by the defense of fair use.

## Third Affirmative Defense

The Counterclaims are barred in whole or in part by the doctrine of unclean hands.

## Fourth Affirmative Defense

The Counterclaims are barred in whole or in part by the illegality of Defendant's contracts.

## Fifth Affirmative Defense

The Counterclaims are barred in whole or in part by Defendant's restraints of trade.

## Sixth Affirmative Defense

The Counterclaims are barred in whole or in part because Defendant's contracts are contrary to public policy.

## Seventh Affirmative Defense

The Counterclaims are barred in whole or in part because Rebotix had justification for its actions under competitor's privilege.

## Eighth Affirmative Defense

The Counterclaims are barred in whole or in part by Defendant's failure to mitigate damages.

Date: April 23, 2021                                    Respectfully submitted,


                                                        */s/ Richard Lyon*
                                                        Richard Lyon
                                                        California Bar No. 229288 (*pro hac vice*)
                                                        rick@dovel.com
                                                        Gregory S. Dovel
                                                        California Bar No. 135387 (*pro hac vice*)

29

greg@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
David L. Luikart III
Florida Bar No.: 21079
dave.luikart@hwhlaw.com
HILL WARD & HENDERSON, P.A.
101 East Kennedy Blvd.
Tampa, Florida 33602
Telephone: (813) 227-8419
Facsimile: (813) 221-2900


ATTORNEYS FOR PLAINTIFF
REBOTIX REPAIR LLC