## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

REBOTIX REPAIR LLC,

               Plaintiff,

vs.

INTUITIVE SURGICAL, INC.,

               Defendant.

Case No.:  8:20-cv-02274

## **Rebotix's Motion for Summary Judgment and Incorporated Supporting Memorandum of Law**

Plaintiff Rebotix Repair respectfully requests the Court to enter an Order granting summary judgment on: (1) Intuitive's Lanham Act, unfair competition, and FDUTPA counterclaims to the extent they are based on Intuitive's allegations that Rebotix does not comply with FDA regulations; (2) Intuitive's unclean hands affirmative defense, and (3) Intuitive's FDUTPA counterclaim.

## I.    Questions Presented.

1.    A party cannot prevail in district court on a claim or affirmative defense that requires a determination that a service or product fails to comply with FDA regulations.  The FDA has exclusive authority to enforce its regulations and make such determinations.  Intuitive asserts counterclaims and an affirmative defense based on its allegation that Rebotix's services are not compliant with FDA regulations.  The FDA has not exercised its enforcement authority to make that determination.  Should Intuitive's claims and affirmative defense based on non-compliance with FDA regulations be allowed to proceed in district court?

2.    The Florida Deceptive and Unfair Trade Practices Act requires a showing that a consumer was actually injured by a deceptive or unfair trade practice.  Intuitive has no evidence that any consumer suffered actual injury as a result of Rebotix's practices.  Is Rebotix entitled to summary judgment on Intuitive's FDUTPA claim?

3.    Proof of actual damages is a requirement of a FDUTPA claim.  Actual

damages under FDUTPA do not include disgorgement or past lost profits.

Intuitive only presents damages theories of disgorgement and past lost profits.  Is

Rebotix entitled to summary judgment on Intuitive's FDUTPA claim?

## II.   Introduction.

Intuitive asserts three counterclaims—a Lanham Act claim, an unfair

competition claim, and a Florida Deceptive and Unfair Trade Practices Act

(FDUTPA) claim—based on an allegation that Rebotix's communications to

customers are false or misleading.  Dkt. #60 (Intuitive's Answer and

Counterclaims), ¶¶77-85, ¶¶86-88, ¶¶93-96.  Rebotix's communications state that

its services do not require clearance from the FDA under the applicable FDA

regulations.  *Id*., ¶10, ¶47, ¶62, ¶78.  Intuitive alleges that this statement is false.

*Id*.  Intuitive relies on this same allegation as an affirmative defense to Rebotix's

antitrust claims, alleging that "Plaintiff's claims are barred … by the doctrine of

unclean hands because Plaintiff has acted contrary to applicable FDA regulations."

*Id*. at 24.

Whether Rebotix's services require FDA clearance under the controlling

FDA regulations—and thus the truth of Rebotix's statements that clearance is not

required—is not something that this Court or a jury can decide.  Deciding this issue

would require the Court to "circumvent the FDA's exclusive enforcement

authority" with a "determination[] that the FDA … did not themselves make."  *Hi-*

2

*Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1199 (11th Cir. 2018) (internal quotations and citations omitted).

When confronted with the same issue and the same asserted counterclaims in the related *Restore* case, Judge Wetherell held:

> "[D]eciding this issue would require the Court to 'make determinations . . . more properly within the exclusive purview of the FDA' and to 'substitute its own judgment . . . for the FDA's judgment' such that Defendant's counterclaims would be impermissibly 'premised on enforcement determinations that the FDA and other regulatory agencies did not themselves make.'"

*Restore Robotics, LLC v. Intuitive Surgical, Inc*., No. 5:19cv55-TKW-MJF, 2019 U.S. Dist. LEXIS 228086, at *2-3, *6 (N.D. Fla. Nov. 14, 2019), *quoting Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1199 (11th Cir. 2018).  Judge Wetherell dismissed Intuitive's counterclaims relating to FDA clearance.  *Id*. *6. For the reasons set forth in Section IV(A) below, this Court should do the same.

Additionally, as detailed in Section IV(B) below, Intuitive has not developed the requisite evidence for two necessary elements of its FDUTPA claim.

<u>First</u>, "[w]ithout a consumer who was actually aggrieved by [the] alleged misconduct, [a claimant] fails to establish a deceptive act or unfair practice" for a FDUTPA claim.  *Hill Dermaceuticals, Inc. v. Anthem, Inc*., 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017).  Intuitive has not even alleged, much less developed evidence demonstrating, that a consumer was aggrieved by Rebotix's conduct.

3

Second, "[p]roof of actual damages is necessary to sustain a FDUTPA claim. The statute does not allow the recovery of other damages, such as consequential damages." *Dorestin v. Hollywood Imps., Inc.*, 45 So. 3d 819, 824-25 (Fla. Dist. Ct. App. 2010) (internal citations omitted). Intuitive has "failed to provide any evidence of its actual damages—an essential element under FDUTPA" and "[s]ummary judgment is therefore mandated." *HRCC, Ltd. v. Hard Rock Cafe Int'l USA, Inc.*, 302 F. Supp. 3d 1319, 1324 (M.D. Fla. 2016).

## III.   Statement of material facts.

### A.   Intuitive's counterclaims and affirmative defense based on FDA regulations.

1.      It is undisputed that the parties take contrary positions on whether the Federal Food, Drug, and Cosmetic Act ("FDCA") and FDA regulations required Rebotix to seek premarket FDA clearance for its services.

a.      Intuitive alleges that Rebotix's services "have not been properly certified" by the FDA because they "have not received FDA 510(k) premarket clearance" as required by "21 C.F.R. § 807.81(a)(3)." Dkt. #60 (Counterclaims) ¶8, ¶35, ¶46. Intuitive served expert reports from FDA expert Heather Rosecrans in support of these allegations. Exhibits 1 and 2

(Rosecrans expert report, Rosecrans rebuttal expert report).[1]

   b. "Rebotix denies that its services require a 510(k) clearance" because FDA regulations, including 21 C.F.R. § 807.81(a)(3) exclude services like those provided by Rebotix.  Dkt. #61 (Rebotix Answer to Counterclaims) ¶35, ¶46.  Rebotix and its head of regulatory Stan Hamilton, who has extensive experience with 510(k)s, determined that Rebotix's services do not require FDA clearance.  Ex. 3 (Hamilton deposition) 24:4-25:7; 89:3-91:8; Ex. 4 (Papit deposition) 96:20-97:22.  This is also the consensus view held by FDA experts.  An independent Deutsche Bank report produced by Intuitive in this case reported findings based on interviews of "regulatory consultants" with extensive 510(k) experience.  Ex. 5 (Deutsche Bank report).  The report concluded that "510(k) clearance is not [] required for independent service organizations (ISOs) such as [Rebotix] in repairing limited-use da Vinci instruments for hospitals and returning them to the hospital for continued usage."  Ex. 5 at Intuitive-00566059.  Rebotix also served an expert report from FDA expert Larry Stevens, which sets forth several reasons why Intuitive's FDA allegations

---

[1]  Because the subject matter addressed by Ms. Rosecrans is not properly before this Court, Rebotix has separately moved to exclude the testimony of Ms. Rosecrans under *Daubert* as irrelevant to this case.

are false and why Rebotix's services do not require FDA clearance.  Ex. 6

(Stevens expert report).[2]

2.      It is undisputed that Intuitive asserts counterclaims and an affirmative

defense that require a determination of whether FDA regulations require Rebotix to

obtain clearance from the FDA.

a.      Intuitive alleges that "Rebotix's marketing materials and

communications" include "false and misleading statements" including its

statements that Rebotix "determined that its services do not require 510(k)

premarket review and clearance by the FDA."  Dkt. #60 (Counterclaims) ¶8,

¶10.

b.      Intuitive's Lanham Act, unfair competition, and FDUTPA

claims rely upon this allegation.  *Id.*, ¶77, ¶86, ¶93.

c.      Intuitive's unclean hands defense relies on the same allegation.

*Id.*, page 24 ("Plaintiff's claims are barred, in whole or in part, by the

doctrine of unclean hands because Plaintiff has acted contrary to applicable

FDA regulations.")

3.      It is undisputed that the FDA has not made a determination that

---

[2]      Although the FDA issue is not properly before this Court, Rebotix
offered the opinions from Mr. Stevens in an abundance of caution.  If this motion
and the Rosecrans *Daubert* are granted, Rebotix will withdraw the corresponding
opinions from Mr. Stevens.

Rebotix's services require FDA clearance.

      a.      On January 29, 2020, Intuitive wrote to the FDA, setting forth Intuitive's position that it believed Rebotix's services were not compliant with FDA regulations.  Ex. 7 (Curet letter).

      b.      After receiving Intuitive's letter, the FDA reached out to Rebotix on February 28, 2020, to request information about Rebotix's services.  Ex. 8 (emails between FDA and Rebotix).  Rebotix responded on March 6, 2020 with an overview "description of [its] current activities."  Ex. 8 at REBOTIX171224.

      c.      On March 9, 2020, an FDA representative followed up with additional questions about Rebotix's activities "to better understand the activities Rebotix Repair performs" so that it can "make sure the repair activities" do not constitute remanufacturing "as described in "21 CFR 820.3(w)," which could "require a 510(k)."  Ex. 9 (Follow up emails between FDA and Rebotix) at REBOTIX174753.  On March 19, 2020, Rebotix answered the FDA's questions and informed the FDA that they "would be glad to make [them]selves available for a follow-up phone call to discuss" if the FDA had any additional questions.  *Id*. at REBOTIX174749-REBOTIX174752.

      d.      Just yesterday, on November 16, 2021, the FDA wrote to

Rebotix and confirmed that it had not made a determination of whether

Rebotix is a "remanufacturer" as defined in the FDCA.  Ex. 18 (FDA letter).

The FDA requested that Rebotix "provide … [t]he basis for [its]

determination of whether or not [it] is] required to obtain FDA clearance or

approval."  *Id*.  The FDA requested that Rebotix provide this information by

December 16, 2022.

### B.  Intuitive's FDUTPA counterclaim.

1.     It is undisputed that Rebotix "market[s] its services" to hospitals, and

thus the consumers of Rebotix's services are hospitals.  Ex. 4 (Papit deposition)

165:20-24; 166:6-15.

2.     There is no evidence demonstrating harm to a consumer resulting

from Rebotix's trade or marketing practices.  For example, Intuitive's response to

Rebotix's interrogatory concerning Intuitive's FDUTPA claim cites no evidence of

consumer harm.   Ex. 10 (Intuitive's Responses & Objections to Rebotix's Third

Set of Interrogatories), Response to Interrogatory No. 16.  Nor did either hospital

deposed in this case (Pullman Regional and Evergreen Health) identify any harm.

Exs. 11 and 12 (Pullman deposition, Evergreen deposition).  To the contrary,

Pullman testified that "[i]f it weren't for Intuitive's contractual limitations,"

Pullman would "use Rebotix's services to the full extent that Rebotix was willing

to provide them."  Ex. 11 (Pullman deposition) 62:6-10.  And Evergreen likewise

"was not aware of any reason why it would have stopped using Rebotix Repair's services if Intuitive never reached out to Evergreen telling them to do so."  Ex. 12 (Evergreen deposition) 55:5-24.

3.     When hospitals used Rebotix's services, Intuitive would respond with an initial conversation telling the hospital to stop, followed by a letter that informed customers that using Rebotix's services "is a material breach of the [Service] Agreement" and that Intuitive could respond by "no longer accept[ing] your service calls" or "not provid[ing] service" for the hospital's system.  Ex. 13 (Vavoso deposition) 213:19-214:16; Ex. 14 (Letter to Pullman Regional).  The letters "include[d] an explanation of why Intuitive believes the hospital is in breach" of the sales contract and a warning that if hospitals used Rebotix-serviced EndoWrists, "Intuitive may not provide service."  Ex. 13 (Vavoso deposition) 215:9-15; 220:6-12; 221:13-23.  This statement was communicated "to each customer that [Intuitive] sent a letter to."  *Id*. at 221:24-222:7.  Every hospital that continued using Rebotix's services after the initial conversation received a letter from Intuitive containing this information.  *Id*. at 221:8-12.

4.     Intuitive has no evidence that any hospital continued using Rebotix's services after Intuitive sent a letter to the hospital warning them that Intuitive would consider terminating that hospital's sales agreement.  Ex. 13 (Vavoso deposition) 226:18-22; Ex. 11 (Pullman deposition) 82:3-8; Ex. 12 (Evergreen

deposition) 54:5-10.  To the contrary, hospitals stopped using Rebotix's services after receiving the warning letter from Intuitive.

5.    Rebotix prices its repaired EndoWrists 40-50% lower than Intuitive's list prices for its new EndoWrists.  Ex. 4 (Papit deposition) 179:10-180:5; Ex. 11 (Pullman deposition) 88:17-89:14.  One hospital, Pullman Regional, projected yearly savings of $62,400 from using Rebotix's services.  Ex. 11 (Pullman deposition) 68:8-69:4.

## IV.    Argument.

### A.    Intuitive's counterclaims and affirmative defense based on FDA clearance cannot proceed in this Court.

We demonstrate below that (1) Intuitive's counterclaims and affirmative defense concerning FDA clearance are preempted by the FDCA and cannot proceed in this Court, (2) Judge Wetherell decided this exact issue in the related *Restore* case and held that Intuitive's counterclaims are preempted and cannot proceed in district court, (3) Intuitive itself has taken the position in the related *SIS* case that claims concerning FDA clearance are preempted and cannot proceed in district court.  We also demonstrate that (4) Rebotix's statements concerning FDA clearance are non-actionable statements of opinion that, as a matter of law, cannot form the basis of Intuitive's asserted claims.

### 1. Intuitive's counterclaims and affirmative defense based on FDA clearance are preempted by the FDCA and cannot proceed in a district court.

Whether a device or service runs afoul of FDA regulations that govern when FDA clearance is required is a determination that can only be made by the FDA. The determination cannot be made by a judge or jury.

The "FDA is charged with the difficult task of regulating the marketing and distribution of medical devices" and private litigation of these regulations is "preempted by that scheme." *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 350 (2001). "The FDCA … imposes a comprehensive set of requirements upon medical devices"—including when an entity "must make a new 510(k) submission" for FDA clearance—and the "FDA is charged with investigating potential violations." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010).

Although "citizens may petition the FDA to take administrative action," "Section 337(a) of the FDCA bars private enforcement of the statute." *Id.* As the Supreme Court has stated: "The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions: 'All such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.'" *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349

11

n.4 (2001), *quoting* 21 U.S.C. § 337(a).

Claims alleging false statements (like a Lanham Act claim or the analogous state law claims asserted in this case) are preempted by the FDCA when determining the falsity of those statements would require the court, in the absence of a clear ruling from the FDA, to interpret FDA regulations concerning whether a device or service required FDA clearance.

When "resolving [a] claim under the Lanham Act would" "require a court to interpret or apply the FDCA to determine whether the marketing of [the product or service] was deceptive," this inquiry would necessarily "step on the FDCA's toes" and "circumvent the FDA's exclusive enforcement authority."  *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1199 (11th Cir. 2018) (internal quotations and citations omitted*); Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3rd Cir. 1990) (rejecting a false advertising claim because it required "interpretations of FDA regulations"); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (rejecting false advertising claim) (a private litigant "is not empowered to enforce independently the FDCA" by bringing false advertising claim); *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 305-07 (C.D. Cal. 1996) (deciding that failing "to disclose that [defendants'] … Laser Systems are not approved by the FDA" was not actionable under the Lanham Act when "the FDA has not yet determined whether or not the … devices need

12

further approval").

The *PhotoMedex* case is particularly instructive.  In that case, Plaintiff asserted claims alleging purportedly false marketing statements about the same type of FDA clearance at issue here, 510(k) clearance.  *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 926 (9th Cir. 2010).  Plaintiff asserted that Defendants' statement that their dermatological laser had been cleared by the FDA was false or misleading because there were "significant technological differences" between that laser and a previously FDA-cleared laser, "making a separate 510(k) submission necessary" under "21 C.F.R. § 807.81(a)(3)."  *Id*.  The Court dismissed the claims because it could not decide whether the statements are "false or misleading" without determining whether a "separate 510(k) was necessary," which would require the Court to "usurp the FDA's prerogative to enforce the FDCA and to decide [this issue] under the FDCA and its regulations."  *Id*.

The facts before this Court mirror the facts in *PhotoMedex*.  Intuitive asserts claims alleging that Rebotix's statement that its services do not require "clearance by the FDA" is "false or misleading" because Rebotix allegedly "change[s] [EndoWrists'] intended use and their performance and safety specifications," which "requires a new 510(k) clearance" under "21 C.F.R. § 807.81(a)(3)."  Dkt. #60 (Counterclaims) ¶78, ¶35, ¶46; Ex. 1 (Rosecrans report) ("Rebotix engaged in remanufacturing under 21 C.F.R. Part 807" because "Rebotix causes a significant

change in the intended use of EndoWrist instruments."). Just as in *PhotoMedex*, determining whether Rebotix's statements were "false or misleading" requires a determination of whether a separate 510(k) was necessary "under the FDCA and its regulations," which is the prerogative of the FDA, not this Court. Accordingly, as in *PhotoMedex*, Intuitive's counterclaims based on FDA clearance cannot proceed in this Court.

Intuitive also seeks to introduce this same issue as a defense to Rebotix's antitrust claims. Intuitive alleges that "Plaintiff's claims are barred . . . by the doctrine of unclean hands because Plaintiff has acted contrary to applicable FDA regulations." Dkt. #60 (Intuitive's Answer and Counterclaims), page 24.

Affirmative defenses premised on purported violations of FDA regulations likewise fail as a matter of law when the FDA has not itself decided that issue. In such cases, a claim "for false advertising under the Lanham Act is similar to the unclean hands defense," and both "fail as a matter of law because no private right of action exists to redress alleged violations of the FDCA." *Inmuno Vital, Inc. v. Golden Sun, Inc*., 49 F. Supp. 2d 1344, 1358-59 (S.D. Fla. 1997). Instead, redress of an allegation that a party "acted contrary to applicable FDA regulations" as alleged in Intuitive's unclean hands defense, Dkt. #60 at page 24, "lies exclusively within the federal government's domain, by way of either the FDA or the Department of Justice." *Inmuno Vital, Inc. v. Golden Sun, Inc*., 49 F. Supp. 2d

1344, 1359 (S.D. Fla. 1997).

### 2. Judge Wetherell addressed this exact issue and held that Intuitive's counterclaims are preempted by the FDCA and cannot proceed in a district court.

In the *Restore* case, Judge Wetherell addressed the exact same issue at the motion to dismiss stage, and ruled against Intuitive. *Restore Robotics, LLC v. Intuitive Surgical, Inc*., No. 5:19cv55-TKW-MJF, 2019 U.S. Dist. LEXIS 228086, at *2-3, *6 (N.D. Fla. Nov. 14, 2019). Intuitive asserted Lanham Act, unfair competition, and FDUTPA claims against Restore Robotics, another company that serviced Intuitive's EndoWrists. *Id*. at *2-3. Like here, Intuitive alleged that Restore's activities required 510(k) clearance from the FDA and that Restore's statements to the contrary were false. *Id*. at *6.

Judge Wetherell "agree[d] with" Restore that "any allegation that the 510(k) statement [to the FDA] is false is preempted by the Food, Drug, and Cosmetic Act (FDCA) because [t]he Lanham Act claim cannot require the court to interpret or apply the FDCA to determine whether clearance was required." *Id*. at *6 (internal quotations and citations omitted). "The FDA may decide that this statement is false, but the Court will not do so because it agrees with Plaintiffs that determining the truth or falsity of the statement would require it to 'make determinations . . . more properly within the exclusive purview of the FDA' and to 'substitute its own judgment . . . for the FDA's judgment' such that Defendant's counterclaims would

15

be impermissibly 'premised on enforcement determinations that the FDA and other regulatory agencies did not themselves make.'" *Id*. at *6 (*quoting Hi-Tech Pharm., Inc. v. HBS Int'l Corp.,* 910 F.3d 1186, 1199 (11th Cir. 2018)).

Judge Wetherell therefore granted Restore's motion to dismiss Intuitive's Lanham Act claim, unfair competition, and FDUTPA claims to the extent those claims are based on Restore's statements that its services do not require 510(k) clearance from the FDA.  *Id*. at 19.

### 3. Intuitive agreed with, and adopted, Judge Wetherell's reasoning and holding that claims based on FDA clearance are preempted by the FDCA and cannot proceed in a district court.

In another related case, Intuitive itself argued that false advertising claims, like those asserted here, must be dismissed to the extent they would require the Court "to interpret FDA regulation concerning whether [a] device … required a new FDA clearance" because that is a "role reserved for the FDA under the FDCA."  *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc*., No. 3:21-cv-03496-VC (N.D. Cal.) (Docket No. 37) (Ex. 15), *12.  In Intuitive's own words, "no false advertising claim may lie where '[t]esting the truth of [defendant's] claim would … require a court to usurp the FDA's prerogative to enforce the FDCA and decide whether, under the FDCA and its regulations,' a product or modification therefor would require additional [FDA] clearance*.*" Id.,*

*quoting PhotoMedex, Inc. v. Irwin*, 601 F.3d 919 (9th Cir. 2010).[3]

What Intuitive told the California court it cannot do is precisely what Intuitive asks this Court to do: to test the truth of Rebotix's claim that, under the FDCA and its regulations, its EndoWrist services do not require additional FDA clearance.

Moreover, in making this argument, Inutuive agreed with and adopted the holding of Judge Wetherell from the *Restore* case, the same holding that is dispositive of the claims Intuitive asserts here. As Intuitive itself explained, "the same rationale [that] led to the dismissal of Intuitive's Lanham Act claim against Restore" applies because "the claim turns on establishing that it 'is incorrect' to inform customers' that certain … services require new FDA clearances," and therefore the claim "must be dismissed." *Surgical Instrument Service Company,*

---

[3]     After Rebotix filed this case, several hospitals filed lawsuits against Intuitive with allegations almost identical to those asserted in this case, in what is now a consolidated class action pending in the Northern District of California: *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.*, No. 3:21-cv-03496-VC (N.D. Cal.). In addition to the antitrust claims asserted by Rebotix in this case, the hospitals in the class action alleged Lanham Act claims based on Intuitive's false assertion that "use of EndoWrists beyond the counter limit is a violation of Intuitive's FDA clearances." *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.,* No. 3:21-cv-03496-VC (N.D. Cal.) (Ex. 16), *12. When faced with the flip-side of the false advertising claims Intuitive asserts in this claim, Intuitive correctly acknowledged that the "claim based in alleged misstatements concerning FDA clearance must be dismissed." *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.*, No. 3:21-cv-03496-VC (N.D. Cal.) (Docket No. 57) (Ex. 17) at *9-10.

*Inc. v. Intuitive Surgical, Inc.*, No. 3:21-cv-03496-VC (N.D. Cal.) (Docket No. 57)

(Ex. 17) at *9; *Surgical Instrument Service Company, Inc. v. Intuitive Surgical,*

*Inc.*, No. 3:21-cv-03496-VC (N.D. Cal.) (Docket No. 37) (Ex. 15) at *12.

Similarly here, Intuitive's claims turn on whether it was incorrect for

Rebotix to inform customers that its "services do not require certification and

clearance by the FDA." Dkt. #60 (Counterclaims), ¶78. Accordingly, Intuitive's

claims cannot proceed before this Court.

### 4. Rebotix's statements concerning FDA clearance are non-actionable statements of opinion.

Rebotix's statements that it did not require FDA clearance cannot be the

basis for Intuitive's counterclaims for another, independent reason. "The Lanham

Act [and analogous state law claims] regulate[] only representations of fact —

statements that are capable of being proven false." *Ameritox, Ltd. v. Millennium*

*Labs., Inc.*, 889 F. Supp. 2d 1304, 1317 (M.D. Fla. 2012) (internal citations and

quotations omitted). They do not regulate "statements of opinion." *Id.* And

"[s]tatements by laypersons that purport to interpret the meaning of a statute or

regulation are opinion statements, and not statements of fact, unless a court or

agency of competent jurisdiction' has clearly and unambiguously ruled on the

matter." *Id.* (internal citations and quotations omitted).

As set forth above, the agency of competent jurisdiction here, the FDA, has

not clearly and unambiguously ruled on whether Rebotix's services require FDA

clearance.  Quite the opposite, just yesterday, on November 16, 2021, the FDA

wrote to Rebotix and confirmed that it has <u>not</u> yet made a determination.  Ex. 18

(FDA letter).  The FDA informed Rebotix that it "may" require clearance and

requested information from Rebotix so that it could make that determination.  *Id*.

### B. The Court should grant summary judgment on Intuitive's FDUTPA counterclaim because Intuitive lacks evidence of two critical elements: actual consumer injury and actual damages.

Intuitive asserts a counterclaim against Rebotix alleging that Rebotix acted

in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

Dkt. #60 (Counterclaims), ¶¶ 93-96.  But Intuitive lacks any evidence for two

critical elements of a FDUTPA claim.  Each failure of evidence provides an

independent basis to grant summary judgment.

<u>First</u>, Intuitive lacks evidence that a consumer of the service (i.e. a hospital)

was actually injured by Rebotix.  Intuitive cannot support a FDUTPA claim with

evidence that Intuitive (a competitor of Rebotix) was harmed by Rebotix.

"FDUTPA is designed to protect <u>consumers</u>." *Martorella v. Deutsche Bank Nat'l*

*Tr. Co*., 161 F. Supp. 3d 1209, 1215 (S.D. Fla. 2015) (emphasis added).  "Without

a consumer who was actually aggrieved by [the] alleged misconduct, [a claimant]

fails to establish a deceptive act or unfair practice" for a FDUTPA claim.  *Hill*

*Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla.

2017).  As detailed in Section IV(B)(1) below, Intuitive has not even alleged, much

less developed the requisite evidence demonstrating, that a consumer was

aggrieved by Rebotix's conduct.

Second, "[p]roof of actual damages is necessary to sustain a FDUTPA claim.

The statute does not allow the recovery of other damages, such as consequential

damages." *Dorestin v. Hollywood Imps., Inc*., 45 So. 3d 819, 824-25 (Fla. Dist. Ct.

App. 2010) (internal citations omitted).  As detailed in Section IV(B)(2) below,

Intuitive lacks the requisite evidence of actual damages.

### 1. Intuitive has no evidence that any consumer was actually injured by Rebotix's practices.

Intuitive itself is not a consumer of Rebotix's services.  It has not alleged or

provided any evidence that it is a purchaser of Rebotix's products or that it makes

any purchasing decisions on the basis of Rebotix's advertising.

Where (as here) the plaintiff is not itself a consumer, the plaintiff must

"prove that there was an injury or detriment to consumers."  *Caribbean Cruise

Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc*., 169 So. 3d 164, 169 (Fla.

Dist. Ct. App. 2015) (emphasis in original); *Stewart Agency, Inc. v. Arrigo Enters*.,

266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) ("While an entity does not have to

be a consumer to bring a FDUTPA claim, it still must prove the elements of the

claim, including an injury to a consumer.").  That is because "[t]he FDUTPA is

designed to protect <u>consumers</u> from unconscionable, deceptive, or unfair acts or practices in trade and commerce." *Martorella v. Deutsche Bank Nat'l Tr. Co*., 161 F. Supp. 3d 1209, 1215 (S.D. Fla. 2015) (quotes omitted) (emphasis added).

The consumers of Rebotix's services are hospitals. *See, e.g.*, Ex. 4 (Papit deposition) 166:6-15. Accordingly, Intuitive must show that Rebotix's practices actually caused injury to those consumers. Speculation about injuries that Rebotix's practices *may* cause to consumers is insufficient to carry Intuitive's burden. *See Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) ("[A]n act is not deceptive and a practice is not unfair unless a consumer was actually aggrieved by the act or practice"). And the link between allegedly deceptive marketing and injury must be causally linked by "direct, rather than remote or speculative" evidence. *Lombardo v. Johnson & Johnson Consumer Cos*., 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (internal citation omitted).

Intuitive failed to plead actual injury to any hospital or consumer as part of its FDUTPA claim. *See* Dkt. #60 (Counterclaims) ¶¶93-96. And Intuitive did not provide any evidence of actual consumer injury in its answers to Rebotix's interrogatory seeking this information. Ex. 10 (Intuitive's Responses & Objections to Rebotix's Third Set of Interrogatories), pages 18-20.

Intuitive has entirely failed to develop any evidence that would support the proposition that any of Rebotix's marketing practices actually caused harm to a

hospital.  Instead, Intuitive's sole basis for actual consumer injury is speculation about four harms that hospitals "may" suffer:

> (1)   that hospitals may choose to breach their service agreements, Dkt. #60 (Counterclaims) ¶69;
>
> (2)   that voided warranties may result in additional expenditures, *id*., ¶64;
>
> (3)   that Rebotix's services may have impacts on Intuitive customers that Intuitive would be "unable to mitigate," *id*., ¶39; and,
>
> (4)   that hospitals purportedly face "substantial medical, financial, and legal risks." *Id*., ¶7.

Intuitive cannot survive summary judgment based on these speculative harms for five reasons.

First, there is no evidence that hospitals suffered harm from a breach of a service agreement.  Instead, the record demonstrates that Intuitive would send each customer of Rebotix a warning letter informing them of Intuitive's position that the hospital's use of Rebotix's services was a breach of their agreement with Intuitive.  And each time, the hospitals would capitulate and stop using Rebotix's services after receiving warning letters from Intuitive.  Glenn Vavoso, Intuitive's 30(b)(6) witness on the topic of Intuitive's communications with hospitals, could not identify "any instance…where a hospital continued using Rebotix's services after receiving these letters from Intuitive."  Ex. 13 (Vavoso deposition) 226:18-22.

Thus, according to Intuitive itself, there is no evidence that Rebotix's actions caused hospitals to terminate their sales agreements with Intuitive, or Intuitive to terminate sales agreements with customers.  *See, e.g., Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1353 (S.D. Fla. 2017) (granting summary judgment when there was no evidence that a party caused another to terminate an agreement).

Second, there is no evidence that any hospital had its warranty voided by Intuitive as a result of Rebotix's advertising, or incurred additional expenses due to a warranty being voided by Intuitive.  To the contrary, Intuitive's 30(b)(6) witness testified that Intuitive would "go through a resolution process" with hospitals and that although Intuitive's response "could ultimately escalate to" "say[ing] they're in violation" of the service contract, there was no instance where "hospital[s] continued using Rebotix's services" after receiving letters from Intuitive.  Ex. 13 (Vavoso deposition) 204:24-205:5; 213:19-214:16.  Moreover, both of the hospitals deposed in this case confirmed that they stopped using Rebotix's services after receiving a formal letter from Intuitive, and did not have their warranty voided.  Ex. 11 (Pullman deposition) 82:3-8; Ex. 12 (Evergreen deposition) 54:5-10.

Third, if a hospital continued to use Rebotix's services (and had its contract or warranty cancelled as a result), this would not be the result of Rebotix's

marketing.  It would be the result of a decision made by the hospital after being made aware by Intuitive that Intuitive may decide to cancel the hospital's contract. When an entity continues to make a decision after learning of additional information clarifying purportedly misleading statements, they "cannot claim to have suffered any damage from the allegedly misleading statements."  *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007).  For example, the court in *Prohias* found that individuals that continued to pay for a drug after learning of additional information beyond the initial purportedly misleading advertisement could not "claim to have suffered any damage from the allegedly misleading statements" under FDUTPA.  *Id.*

As discussed above, Intuitive always had conversations with hospital customers followed by a formal letter informing the customer that Intuitive "may not provide service" if the customer continues using Rebotix's repaired EndoWrists. Ex. 13 (Vavoso deposition) 221:13-23.  If a hospital continued using Rebotix's services after receiving this additional information, and Intuitive then terminated that hospital's sales contract or warranty, the injury would not be causally connected to Rebotix's marketing materials.  In that instance, the hospital would have been made aware of Intuitive's position with respect to whether Rebotix's repairs violate agreements between the hospital and Intuitive.  And the hospital would be making its own decision, separate and apart from Rebotix's

24

marketing materials, to continue using Rebotix's repair services.  An injury "under FDUTPA must directly flow from the alleged deceptive act of unfair practice." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (internal citation omitted).  A hospital choosing to continue using Rebotix's services after being made aware of the risk that Intuitive may cancel a service contract would not be damaged as a result of Rebotix's marketing practices.  Rather, that hospital would have made its own determination not to capitulate to Intuitive after receiving additional information.  Any harm resulting from that determination is therefore "too remote and speculative to satisfy the causation element" under FDUTPA.  *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

Fourth, Intuitive has not provided any evidence of purported "impacts that Intuitive would be unable to mitigate."  Dkt. #60 (Counterclaims) ¶39.  No evidence indicates that any hospital suffered any harm from any of Rebotix's services.  Intuitive has not identified a patient injury or complication that resulted from Rebotix's service procedure.  To the contrary, the evidence provided by the Rebotix customers deposed in this case demonstrates that "[t]here were no complaints" about Rebotix's EndoWrists and that there was "no difference" between the EndoWrists repaired by Rebotix and new EndoWrists sold by Intuitive.  Ex. 11 (Pullman deposition) 37:1-38:1; *see also* Ex. 12 (Evergreen

deposition) 55:16-24.

Fifth, Intuitive's general assertions about "medical, financial, and legal risks" are not sufficient to establish actual consumer harm. Intuitive has not identified a single instance of a hospital suffering medical, financial, or legal harm as a result of Rebotix's practices. Indeed, the hospitals deposed in the case testified that they had no issues with Rebotix's services, that they "would consider using Rebotix again" and that "if it weren't for Intuitive's contractual limitations" the hospitals would "use Rebotix's services to the full extent." Ex. 11 (Pullman deposition) 88:13-15; 62:6-10. There is no evidence that Rebotix's actions harmed the consumers of its services in any way. Indeed, both Pullman and Evergreen were clear that they did not "believe that Rebotix engaged in fraudulent or deceptive conduct" and that they were never "misled by anyone at Rebotix." Ex. 11 (Pullman deposition) 86:23-87:7; Ex. 12 (Evergreen deposition) 83:2-5.

There is no evidence that any hospital suffered harm from Rebotix's statements about Rebotix's services. There is no evidence that any hospital suffered harm from Rebotix's statements about Intuitive. And there is no evidence that any hospital suffered harm from the purchase or use of Rebotix's services.

Intuitive's assertions in its counterclaims amount to speculation that consumers may have been misled. But Intuitive "fails to plausibly suggest injury to consumers … rather, [Intuitive's] narration amounts to allegations of injury to

26

[Intuitive] as a competitor." *Jabil, Inc. v. Essentium, Inc*., No. 8:19-cv-1567-T-23SPF, 2020 U.S. Dist. LEXIS 258736, at *27 (M.D. Fla. May 29, 2020).

Because Intuitive has not presented any evidence of harm to any consumer, Intuitive's FDUTPA claim cannot survive summary judgment.

## 2.   Intuitive has no evidence of actual damages.

Proof of actual damages is necessary to sustain a FDUTPA claim. "The statute does not allow the recovery of other damages, such as consequential damages." *Dorestin v. Hollywood Imps., Inc*., 45 So. 3d 819, 824-25 (Fla. Dist. Ct. App. 2010) (internal citations omitted). "[D]ismissal of [a party's] FDUTPA claims is also warranted" when a party does not "state a plausible claim for actual damages under FDUTPA." *Marrache v. Bacardi U.S.A., Inc.*, No. 20-10677, 2021 U.S. App. LEXIS 33175, at *32 (11th Cir. Nov. 8, 2021); *Donoff v. Delta Air Lines, Inc*, No. 18-81258-CV-MIDDLEBROOKS/Bran, 2020 U.S. Dist. LEXIS 41408, at *27 (S.D. Fla. Mar. 6, 2020) ("Failure by a plaintiff to present evidence of actual damages entitles a defendant to summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l USA, Inc*., 302 F. Supp. 3d 1319, 1324 (M.D. Fla. 2016) ("Cases disposing of FDUTPA claims for failing to establish actual damages are numerous.").

"The standard for determining the actual damages recoverable under FDUTPA is well-defined in the case law: [T]he measure of actual damages is the

difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (internal citation omitted). "[T]here are only two possible ways to measure actual damages in a FDUTPA claim: (1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service." *HRCC, Ltd. v. Hard Rock Cafe Int'l USA, Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016). Intuitive has not identified actual damages under either measure, and therefore its FDUTPA claim cannot survive summary judgment.

Intuitive asserts in its counterclaims that it has suffered damages in three ways: (1) that Rebotix's repairs are "depriv[ing] Intuitive of business," (2) that "Intuitive's reputation and goodwill is damaged," (3) that "Intuitive's relationship with its customers" is injured." Dkt. #60 (Counterclaims) ¶¶71-75. To quantify these damages, Intuitive's damages expert presents an analysis only of disgorgement and past lost profits. Ex. 19 (Smith expert report) ¶¶12-14. Neither of these measures of damages constitute actual damages under the FDUTPA.

Disgorgement is not a measure of actual damages under the FDUTPA and is thus not recoverable. *See, e.g.*, *FTC v. Mylan Labs., Inc*., 62 F. Supp. 2d 25, 46 (D.D.C. 1999) ("Florida's contention that the Florida Antitrust Act or the

FDUTPA authorizes restitution or disgorgement will be dismissed.  Neither statute

expressly authorizes such monetary equitable relief").  Indeed, numerous cases

confirm that disgorgement is not a measure of actual damages for a FDUTPA

claim.  *See, e.g., Hard Candy, Ltd. Liab. Co. v. Anastasia Beverly Hills*, Inc., 921

F.3d 1343, 1348 (11th Cir. 2019) (distinguishing actual FDUTPA damages from

disgorgement); *Mystique, Inc. v. 138 Int'l, Inc*., No. 07-22937-Civ, 2009 U.S. Dist.

LEXIS 66106, at *17 (S.D. Fla. July 30, 2009) (concluding that plaintiff had not

sought recovery of "any actual damages" because plaintiff only sought

disgorgement); *Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*, No.

2:19-CV-07748-CAS-PLAx, 2021 U.S. Dist. LEXIS 130419, at *8-9 (C.D. Cal.

July 12, 2021) (concluding that disgorgement of profits is not actual damages

under FDUTPA).

Similarly, past lost profits also do not qualify as actual damages under

FDUTPA.  "[P]ast profits are not actual damages under FDUTPA.  Rather, they

are consequential damages and therefore cannot be included in a FDUTPA

recovery."  *Midway Labs USA, LLC v. S. Serv. Trading, S.A*., No. 19-24857-CIV-

GOODMAN, 2020 U.S. Dist. LEXIS 85321, at *18-19 (S.D. Fla. May 13, 2020);

see *Diversified Mgmt. Sols. v. Control Sys. Research*, No. 15-81062-CIV-

MIDDLEBROOKS, 2016 U.S. Dist. LEXIS 189771, at *15 (S.D. Fla. May 13,

2016) ("The substantive law of Florida, as it currently stands, leads to the

conclusion that lost profits are consequential damages, and, thus, not recoverable under FDUTPA."). That is because "there is no substantive distinction between past lost profits and future lost profits for purposes of determining whether past lost profits are actual damages. Both past lost profits and future lost profits inherently involve consequential-type damages, which are not authorized under FDUTPA." *Midway Labs*, 2020 U.S. Dist. LEXIS 85321, at *19-20. A past lost profit is "no less consequential merely because it is a past profit." *Id*. at *20.[4]

Intuitive made no attempt to measure damages according to the only two acceptable approaches laid out in *HRCC*. Intuitive has not made any attempt to analyze the "value between what was promised and what was delivered" to customers. *HRCC, Ltd. v. Hard Rock Cafe Int'l USA, Inc*., 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016). Nor can Intuitive claim that Rebotix's services are valueless and that the appropriate measure of damages is the "total price paid for a

---

[4] In coming to the conclusion that past profits are not actual damages, the court in *Midway* noted that "there are some nonbinding district court cases which have said that past lost profits are recoverable. But I do not find those cases convincing." See *Midway Labs USA, LLC v. S. Serv. Trading, S.A*., No. 19-24857-CIV-GOODMAN, 2020 U.S. Dist. LEXIS 85321, at *17-20 (S.D. Fla. May 13, 2020). In disposing of those cases, the *Midway* Court noted that each of those cases did not perform any analysis of why past lost profits were found to constitute actual damages. *See id*. at *20. Indeed, the Court described one of the cases as including only a "wholly conclusory statement about lost profits without any discussion whatsoever," and another case as using only "equivocal language [that] does not generate confidence in the conclusion." *Id*. at *20.

valueless good or service." *Id.* Indeed, each of these measures of damages would not reveal any actual damages. Using Rebotix to repair an EndoWrist instead of purchasing a new one can save hospitals between 40 and 50% of the list price of an EndoWrist. Ex. 4 (Papit deposition) 179:10-180:5; Ex. 11 (Pullman deposition) 88:17-89:14. And Rebotix's services were valuable to hospitals. By one calculation, Pullman Regional could have saved $62,400 from "using the Rebotix services…in a given year" instead of purchasing new EndoWrists from Intuitive. Ex. 11 (Pullman deposition) 68:23-69:4.

Because Intuitive has not alleged or provided any evidence of actual damages, summary judgment is appropriate. *See, e.g., HRCC, Ltd. v. Hard Rock Cafe Int'l USA, Inc.,* 302 F. Supp. 3d 1319, 1324 (M.D. Fla. 2016) ("HRCC has failed to provide any evidence of its actual damages—an essential element under FDUTPA. Summary judgment is therefore mandated.").

## V.   Conclusion.

For the foregoing reasons, the Court should grant Rebotix's motion in its entirety. Rebotix is entitled to (1) summary judgment on Intuitive's Lanham Act counterclaim, unfair competition counterclaim, and FDUTPA counterclaims to the extent they are based on Intuitive's FDA clearance allegations; (2) summary judgment on Intuitive's unclean hands defense, which depends on the same FDA clearance allegations, and (3) summary judgment on Intuitive's FDUTPA

counterclaim.

Date: November 17, 2021                    Respectfully submitted,


                                           */s/ Richard Lyon*
                                           Richard Lyon
                                           California Bar No. 229288 (*pro hac vice*)
                                           rick@dovel.com
                                           Gregory S. Dovel
                                           California Bar No. 135387 (*pro hac vice*)
                                           greg@dovel.com
                                           Alexander Erwig
                                           California Bar No. 334151 (*pro hac vice*)
                                           alexander@dovel.com
                                           DOVEL & LUNER, LLP
                                           201 Santa Monica Blvd., Suite 600
                                           Santa Monica, California 90401
                                           Telephone: (310) 656-7066
                                           Facsimile: (310) 656-7069
                                           David L. Luikart III
                                           Florida Bar No.: 21079
                                           dave.luikart@hwhlaw.com
                                           HILL WARD & HENDERSON, P.A.
                                           101 East Kennedy Blvd.
                                           Tampa, Florida 33602
                                           Telephone: (813) 227-8419
                                           Facsimile: (813) 221-2900

                                           ATTORNEYS FOR PLAINTIFF
                                           REBOTIX REPAIR LLC