**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| REBOTIX REPAIR LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>INTUITIVE SURGICAL, INC.,<br><br>        Defendant. | Case No.:  8:20-cv-02274 |

**<u>Rebotix's Motion to Exclude Opinions of Defendant's Expert, Dr. John
Bomalaski and Incorporated Supporting Memorandum of Law</u>**

Plaintiff Rebotix Repair respectfully requests the Court to enter an Order precluding Intuitive's expert Dr. John Bomalaski from testifying as to the opinions in section VII, paragraphs 44-57, of his report (as well as that portion of Dr. Bomalaski's "Summary of Opinions" that relates to section VII).  These opinions fail Rule 702's admissibility requirements of qualification and reliability.

I.   **Questions presented.**

1.  An expert's opinion must be excluded if the expert is not qualified to address the matter, or if the expert did not use a reliable methodology to support the opinion.  Dr. Bomalaski has opined about the safety of EndoWrist instruments repaired by Rebotix, but admitted that he is not qualified to evaluate the safety of instrument repairs, and that he cannot identify any methodology or objective support for these opinions.  Should these opinions be excluded?

2.  Dr. Bomalaski also offered opinions about what would be concerning to surgeons, patients, and payers about the repair of EndoWrist instruments.  But Dr. Bomalaski admitted that he has not used any methodology whatsoever to find out what surgeons, patients, and payers think of the repair of EndoWrist instruments, aside from his own speculation.  Should these opinions be excluded?

II.   **Introduction.**

Plaintiff Rebotix Repair moves to exclude the opinions of Intuitive's expert, Dr. Bomalaski, in section VII of his report, paragraphs 44-57, on the purported

1

risks and dangers of using an EndoWrist instrument after it has been repaired by Rebotix Repair and the perceptions of surgeons, payers, and patients on that repair process.

Intuitive makes and sells robots used in robot-assisted surgery. Intuitive also sells surgical instruments called EndoWrists that attach to the mechanical arms of the surgical robot. Intuitive includes a programmed memory chip in each EndoWrist that counts the number of uses and then renders the EndoWrist nonfunctional after ten uses. Hospitals have provided the EndoWrists to Rebotix Repair, which inspects and refurbishes the instruments to a like-new condition and resets the counter for another ten uses.

In a confidential internal analysis, Intuitive stated that U.S. regulatory agencies "do not place any significant restriction on the sale and use of refurbished medical devices." Ex. 7 (Long Tail Intuitive-00102938) at pdf 10. Intuitive further noted that third-party providers (like Rebotix) commonly repair and refurbish sensitive "operating room and critical care equipment." Ex. 7 (Long Tail Intuitive-00102938) at pdf 44. Intuitive concluded that many hospitals "choose refurbished medical equipment over the new equivalent" and that "[t]he demand for refurbished medical devices is growing." Ex. 7 (Long Tail Intuitive-00102938) at pdf 9.

While surgeons such as Dr. Bomalaski use surgical instruments, surgeons are not involved in the repair process for surgical instruments. Ex. 2 (Bomalaski Depo) 120:22-25 ("Q. Have you ever at any time conducted any inquiry or

investigation into how a hospital repair or services reusable instruments? A. I have not."). Instead, surgeons generally "depend on the hospital to maintain" instruments and to "supervise [the] process" of refurbishing instruments. Ex. 2 (Bomalaski Depo) 114:10-11; *id.* at 154:10-19.

Dr. Bomalaski is a surgeon with experience and training in both traditional and robot-assisted surgery. The first portion of Dr. Bomalaski's expert report presents opinions that are within the scope of his expertise and that are sufficiently supported. For example, Dr. Bomalaski opines on the advantages of robot-assisted surgery over other forms. Ex. 1 (Bomalaski Report) ¶¶16-28. But in section VII of the report, Dr. Bomalaski presents opinions that he is not qualified to present and that are unsupported by any reliable methodology. Ex. 1 (Bomalaski Report) ¶¶44-57.

In this section, Dr. Bomalaski offers opinions about the safety of EndoWrist instruments repaired by Rebotix. For example, he asserts that the Rebotix repair process does not have "any real measures of quality control," that a repaired instrument "may result in unexpected malfunction," and "would present undue risks." Ex. 1 (Bomalaski Report) ¶54, ¶52, ¶15.

In this section, Dr. Bomalaski also offers opinions about what would "concern" surgeons, patients, and payers and what they would find "important to know" about the repair of EndoWrists. Ex. 1 (Bomalaski Report) ¶¶54-57. For example, he opines "I believe patients would be quite concerned if they saw the Rebotix 'repair' process." Ex. 1 (Bomalaski Report) ¶54.

3

These opinions of Dr. Bomalaski do not satisfy the standard for admissible expert opinion and must be excluded.  Rule 702 and the *Daubert* standard require that expert opinions satisfy the requirements of "qualification, reliability, and helpfulness."  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); Fed. R. Evid. 702.

Dr. Bomalaski is not qualified to testify on the repair process or the safety of repaired EndoWrists, as he himself admits.  And these opinions are not reliable because Dr. Bomalaski does not offer any reliable principles or methodology for determining whether any part of the repair process would create safety issues.  And his opinions about what surgeons, patients, and payers would find concerning are unreliable because he offers no methodology—no basis whatsoever—for assessing what other surgeons, patients, and payers would conclude about the Rebotix repair process, except for his own speculation.

Plaintiff Rebotix Repair respectfully asks the Court to enter an order precluding Dr. Bomalaski from testifying as to the opinions in section VII, paragraphs 44-57, of his report (as well as that portion of Dr. Bomalaski's "Summary of Opinions" that relates to section VII).

### III. Dr. Bomalaski's opinion that Rebotix's repair of EndoWrist instruments is unsafe must be excluded because it fails the requirements of qualification and reliability.

Dr. Bomalaski opined that the Rebotix repair process does not have "any real measures of quality control," and that a repaired instrument "may result in unexpected malfunction," and "would present undue risks."  Ex. 1 (Bomalaski

4

Report) ¶54, ¶52, ¶15.  He also opined that he "would not feel comfortable," and "would have serious reservations using EndoWrist instruments that were 'repaired' by Rebotix."  Ex. 1 (Bomalaski Report) ¶54, ¶49.

In support of these opinions, Dr. Bomalaski states: (1) the "video demonstrating what the [repair] 'process' actually entails… did not show any real measures of quality control concerning instrument refurbishing," and (2) "Rebotix does not possess regulatory clearance for its claimed 'repairing' of EndoWrist instruments."  Ex. 1 (Bomalaski Report) ¶54, ¶56.

But Dr. Bomalaski does not have the qualifications to competently address the safety of the repair process or the requirements of FDA regulations.  And he does not have a reliable methodology or basis to support these opinions.

### A. Dr. Bomalaski is not qualified to testify competently on the safety of Rebotix's repair process or the requirements of FDA regulation.

For expert testimony to be admissible, the expert must be "qualified to testify competently regarding the matters he intends to address."  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 562 (11th Cir. 1998)).

Dr. Bomalaski is not qualified to testify competently on the reliability or safety of the Rebotix repair process.  By his own admission, he is not qualified by education, training, or experience: "I do not have an engineering background and I *have no way of knowing how to evaluate* whether an EndoWrist instrument can no longer be safely and reliably used."  Ex. 1 (Bomalaski Report) ¶53

5

(emphasis added).

Hospitals commonly employ third-party providers to repair or refurbish surgical equipment. Ex. 7 (Long Tail Intuitive-00102938) at pdf 44. But, as Dr. Bomalaski admitted, he has no involvement in overseeing the repair of surgical equipment. Ex. 2 (Bomalaski Depo) 120:22-25 ("Q. Have you ever at any time conducted any inquiry or investigation into how a hospital repair or services reusable instruments? A. I have not."). Instead, he will "depend on the hospital to maintain" instruments and "[w]hen it comes to instruments … that are refurbished and reused" he will "depend on the hospital to supervise that process." Ex. 2 (Bomalaski Depo) 113:13-114:11; *id.* at 154:11-19.

When asked whether, "based on [his] expertise" as a surgeon, he is "able to assess whether that repair process would introduce anything into an EndoWrist that would make it unsafe," Dr. Bomalaski testified, "I'm no engineer to be able to go into the – the exact – how each of those pieces work," and he could only point to his unsupported feelings of concern: the video "brought up significant concern that those are instruments that I would not feel comfortable using [on] my patients." Ex. 2 (Bomalaski Depo) 159:5-160:8.

Dr. Bomalaski's lack of qualification on the matter is underscored by comparison to the experts in this case who are qualified. For example, Rebotix's expert Dr. Kim Parnell has a Ph.D. in Mechanical Engineering and over 30 years of professional experience, which includes work on medical devices and medical instruments. Ex. 3 (Parnell Report) ¶5, ¶14. These qualifications allow Dr.

Parnell to competently address the safety of Rebotix-repaired EndoWrists. And Intuitive's expert Dr. Robert Howe has a Ph.D. in Mechanical Engineering which, among other things, qualifies him to address the "mechanical design of the EndoWrist instruments." Ex. 4 (Howe Report) ¶1, ¶8.

With nothing to qualify him on this matter, Dr. Bomalaski's testimony on this subject must be excluded.

Dr. Bomalaski similarly lacks the qualifications to competently testify on FDA requirements. He has no training, education, or experience in FDA regulatory processes. He admitted in his deposition that he does not "know the legality of whether [regulatory clearance] was required or not" for Rebotix's repair; that it is "out of my expertise" to answer whether Rebotix violated any FDA regulations in repairing EndoWrists, and that "[he doesn't] know enough of the FDA, in all honesty." Ex. 2 (Bomalaski Depo) 98:14-99-21.

Dr. Bomalaski's lack of qualification, again, is underscored by comparison to experts in this case who are precisely qualified to testify on FDA regulation. For example, Rebotix's expert J. Lawrence Stevens was employed for a total of 22 years at the FDA, where his work included a role as a "technical specialist for all aspects of Medical Device regulatory compliance." Ex. 5 (Stevens Report) ¶3, ¶10. And Intuitive's expert Heather Rosecrans is a "Food and Drug Administration [FDA] regulatory affairs consultant with expertise in matters concerning premarket regulation of [medical] devices." Ex. 6 (Rosecrans Report) ¶1.

7

Dr. Bomalaski is not qualified to testify competently on the reliability or safety of the Rebotix repair process.

### B. Dr. Bomalaski does not have a reliable methodology for concluding that Rebotix's repair process is unsafe.

To be admissible, expert testimony must also be reliable. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The focus of the reliability requirement is on "principles and methodology, not on the conclusion that they generate." *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 595 (1993). While the reliability inquiry is a "flexible one," a "key question" is whether the expert's method "can be (and has been) tested." *Daubert*, 509 U.S. at 593-95. For an expert's method to be admissible, "*Daubert* requires evaluating whether it can be challenged in some objective sense and determining that it is not simply a subjective, conclusory approach that cannot reasonably be tested for reliability." *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18-WSD, 2012 U.S. Dist. LEXIS 20685, at *14 (N.D. Ga. Feb. 17, 2012) (citing *Daubert*, 509 U.S. at 593-94). At the far limit of unreliability is a complete lack of methodology, "when the only connection between the conclusion and the existing data is the expert's own assertions." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004). A reliable methodology, at the very least, requires "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Dr. Bomalaski does not set forth a reliable methodology for assessing the safety and reliability of the Rebotix repair process. For example, he has "no data

8

on the malfunction rate for devices that were repaired by Rebotix" whatsoever. Ex. 2 (Bomalaski Depo) 181:17-23.

Instead, Dr. Bomalaski watched a video of Rebotix's repair process, and asserts that "after reviewing the video demonstrating what the 'process' actually entails, I would not feel comfortable using an instrument on a patient that had been 'repaired' in that manner… the video did not show any real measures of quality control concerning instrument refurbishing." Ex. 1 (Bomalaski Report) ¶54. This is nothing "more than subjective belief." *Daubert*, 509 U.S. at 590.

When Dr. Bomalaski was pressed in his deposition to specify what he saw in the video that was concerning, he identified: (1) "the housing being pried off"; (2) "the disassembly" of the device, and (3) "the replacing of the circuit board." Ex. 2 (Bomalaski Depo) 160:9-161:3. But he admitted that he had no basis for concluding that any of those processes cause any issues whatsoever.

```
4    Q.   Did prying the housing off, did that cause
5   any issues with EndoWrists?
6    A.   I -- I have never -- I cannot answer that
7   question.  I don't know.
8    Q.   Did you do any investigation to determine
9    whether prying housing off, created any issues with
10   the EndoWrists?
11   A.   No.
12   Q.   Did the disassembly create any issues with
13   the EndoWrists?
14   A.   I don't know.
15   Q.   Did replacing the circuit board create any
16   issues with the EndoWrists?
17   A.   I don't know.
```

- Ex. 2 (Bomalaski Depo) 161:4-17.

9

He also admitted that "in looking at the video of the Rebotix repair," he did not "see anything that looked like it would introduce a defect that would result in a malfunction of the EndoWrists." Ex. 2 (Bomalaski Depo) 172:13-17. Without any explanation or methodology to support his concerns about Rebotix's repair process, the "only connection between the conclusion and the existing data [that he reviewed in the video] is [his] own assertions." *McDowell*, 392 F.3d at 1300. A bare assertion is not a reliable methodology.

Dr. Bomalaski also refers to his feelings of concern about Rebotix's lack of FDA clearance and his trust in Intuitive, but these feelings are not a reliable methodology to support his opinion. For example, Dr. Bomalaski opined that he places "great weight" on Intuitive's determination of "how many times an EndoWrist instrument can be used." Ex. 1 (Bomalaski Report) ¶48, ¶51. But he has no basis or support for this trust in Intuitive. He admits that he does not "know how [Intuitive] came up with... their deciding number," he did not "ask Intuitive how they came up with that number ten," and he merely "assumed for [his] analysis that [the number] was based upon safety engineering and not profit." Ex. 2 (Bomalaski Depo) 149:10-150:6. He also admitted that he did not have "any support for that assumption." *Id.* 150:7-10. This blind trust cannot be tested or "challenged in some objective sense" so as to amount to a reliable methodology. *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18-WSD, 2012 U.S. Dist. LEXIS 20685, at \*14 (N.D. Ga. Feb. 17, 2012) (citing *Daubert*, 509 U.S. at 593-94).

10

Similarly, Dr. Bomalaski has no basis or support for his personal feelings of concern that "Rebotix does not possess regulatory clearance" for its repair process. Ex. 1 (Bomalaski Report) ¶56. He admitted that he does not "know the legality of whether [FDA clearance] was required or not" but could only conclude that "[he] would feel more comfortable if [he] knew there was a regulatory process overlooking" Rebotix's repair. Ex. 2 (Bomalaski Depo) 98:14-20. These feelings of concern and discomfort are a "subjective, conclusory approach that cannot reasonably be tested for reliability." *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18-WSD, 2012 U.S. Dist. LEXIS 20685, at *14 (N.D. Ga. Feb. 17, 2012) (citing *Daubert*, 509 U.S. at 593-94).

There is no reliable methodology for his opinions that Rebotix's repair process is unsafe, only "subjective belief and unsupported speculation." *Daubert*, 509 U.S. at 590. These opinions must be excluded.

**IV.    Dr. Bomalaski's opinions about what would be concerning to surgeons, patients, and payers must be excluded because they are unreliable.**

Dr. Bomalaski offered opinions about how surgeons, patients, and payers would feel about the repair of EndoWrist instruments. He opined that it would be "important for surgeons to know" and "important to inform payers" which surgeries use "an EndoWrist instrument 'repaired' through Rebotix's process" instead of "original EndoWrist instruments." Ex. 1 (Bomalaski Report) ¶55, ¶57. He also opined that "patients would be quite concerned if they saw the Rebotix 'repair' process," that the video of Rebotix's repair "would be a source of little

11

comfort and more anxiety" to patients, and it would be "important… to share with patients" that "Rebotix does not possess regulatory clearance" for its repair process. Ex. 1 (Bomalaski Report) ¶54, ¶56.

These opinions are unreliable under *Daubert* because Dr. Bomalaski has not used any method to learn the perceptions of surgeons, patients, or payers, except for his own speculation. For example, Dr. Bomalaski has not conducted a survey or any research on what these groups think about repaired EndoWrists. Dr. Bomalaski testified that he has not "conducted any poll or survey to assess how… physicians who used Rebotix-repaired EndoWrists" feel about the instruments, and he has not "read any report on what other physicians [think] and how they would react." Ex. 2 (Bomalaski Depo) 166:17-167:1. And he admitted that he did not "show the repair video to any patients to get their assessment of whether it caused them concern." Ex. 2 (Bomalaski Depo) 174:9-12.

Nor is the perceptions of surgeons, patients, and payers about repaired surgical instruments the sort of information that Dr. Bomalaski would have acquired based on his day-to-day experience as a surgeon. He admitted that he has never "conducted any inquiry or investigation into how a hospital repairs or services reusable instruments." Ex. 2 (Bomalaski Depo) 120:22-25. And he has never tried to "find out about the repair process for any of the components that are refurbished and reused… so that [he] could alert [his] patients to what he observed." Ex. 2 (Bomalaski Depo) 174:4-8. Instead, he will "depend on the

hospital to maintain" instruments and "supervise [the] process" of refurbishing reusable instruments.  Ex. 2 (Bomalaski Depo) 114:10-11; *Id.* at 154:10-19.

Without using a survey or any other method to support his opinions, Dr. Bomalaski's assertions about the perceptions of surgeons, patients, or payers cannot be tested or "challenged in some objective sense." *Daubert*, 509 U.S. at 593-95; *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18-WSD, 2012 U.S. Dist. LEXIS 20685, at *14 (N.D. Ga. Feb. 17, 2012).  Dr. Bomalaski's complete lack of methodology is far below what courts have allowed in comparable circumstances.  For example, in *Sabal*, the expert asserted opinions "about market participants' perceptions, including their belief that a piece of property impacted by a pipeline… suffers a diminution in value." *Sabal Trail Transmission, LLC v. 13.386 Acres of Land in Lake Cty. Fla.*, No. 5:16-cv-147-Oc-41PRL, 2018 U.S. Dist. LEXIS 233676, at *29 (M.D. Fla. Aug. 13, 2018).  The expert based this opinion on a survey of market participants.  But the court excluded the opinion because the survey failed to "adequately obtain a representative sample population." *Id.* at 26-29.  Dr. Bomalaski's opinions are based on far less.  He has not surveyed a single patient or payer, and his survey of surgeons is limited to one: himself.  Dr. Bomalaski's opinion amounts to no more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

### V.   Conclusion

For the foregoing reasons, Plaintiff Rebotix Repair respectfully requests the Court to enter an Order precluding Dr. Bomalaski from testifying as to the

13

opinions in section VII, paragraphs 44-57, of his report (as well as that portion of Dr. Bomalaski's "Summary of Opinions" that relates to section VII). These opinions fail Rule 702's admissibility requirements of qualification and reliability.

Date: November 17, 2021             Respectfully submitted,

*/s/ Richard Lyon*
Richard Lyon
California Bar No. 229288 (*pro hac vice*)
rick@dovel.com
Gregory S. Dovel
California Bar No. 135387 (*pro hac vice*)
greg@dovel.com
Alexander Erwig
California Bar No. 334151 (*pro hac vice*)
alexander@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
David L. Luikart III
Florida Bar No.: 21079
dave.luikart@hwhlaw.com
HILL WARD & HENDERSON, P.A.
101 East Kennedy Blvd.
Tampa, Florida 33602
Telephone: (813) 227-8419
Facsimile: (813) 221-2900

ATTORNEYS FOR PLAINTIFF
REBOTIX REPAIR LLC

14

## Certificate of Good Faith Conference

Consistent with the Court's Case Management and Scheduling Order, ECF No. 36, Rebotix certifies that its counsel conferred by telephone with Defendant's counsel regarding this motion on November 15, 2021. The conference did not resolve the issues raised in the motion.

Date: November 17, 2021    Respectfully submitted,

*/s/ Richard Lyon*