## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC,<br><br>    Plaintiff/Counterclaim<br>    Defendant,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>    Defendant/Counterclaim<br>    Plaintiff. | Civil Case No. 8:20-cv-2274-VMC-TGW |

## INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE
## THE EXPERT OPINIONS OF GWEN MANDEL AND KURT HUMPHREY

Pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, Defendant and Counterclaim Plaintiff Intuitive Surgical, Inc. ("Intuitive") respectfully submits this motion to exclude the opinions of Gwen Mandel and Kurt Humphrey, who have been proffered as experts by Plaintiff and Counterclaim Defendant Rebotix Repair LLC ("Rebotix").

## PRELIMINARY STATEMENT

Rebotix acknowledges that the technology it uses to perform its "repair" service and override use limits on EndoWrist instruments ("EndoWrists") functions only on the S and Si models, not the later X and Xi model instruments.  (ECF No. 1

¶¶ 51-52.)  And the undisputed factual record demonstrates ████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████  Nevertheless, Rebotix seeks damages relating to X and Xi EndoWrist

"repairs" under the theory that it *could* have developed the requisite technology but

for Intuitive's purported anticompetitive conduct.  In an apparent attempt to support

the otherwise bare evidentiary record, Rebotix has designated two expert witnesses,

Gwen Mandel and Kurt Humphrey, to opine about Rebotix's purported *future* ability

to override X and Xi use limits.  Their opinions should be excluded.

Gwen Mandel, the daughter of Rebotix co-owner Stan Hamilton, is a self-

described "cybersecurity" expert.  (Ex. 1, Mandel Report ¶ 4; Ex. 2, Mandel Tr. at

221:8-11.)  Rebotix retained Mandel to opine about the ████████████████

████████████████████████████████████████████████

████████████  (Ex. 1, Mandel Report ¶ 11.)  She offers the opinion that ████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████  (Ex. 2, Mandel Tr. at 113:9-117:24,

195:18-196:5, Ex. 4, Humphrey Tr. at 166:10-167:5, 178:3-180:20.)  Mandel

---

[1]  According to Humphrey, ████████████████████████████████████
████████████████████████████████  (Ex. 3, Humphrey
Report ¶ 48.)

acknowledges that she did not "complete the analysis" needed to verify her conclusions. (*Id.* at 10:18-13:25, 110:15-117:15; *see also* Ex. 1, Mandel Report ¶ 27.)

Relying in part on Mandel's opinion that ████████████████████████ ██████████████████████████████████████████████████

Kurt Humphrey opines that, ████████████████████████████ ████████████████████████████████████████████

████████████ (Ex. 3, Humphrey Report ¶¶ 3, 47.) ████████████████ ███████████████████████████████████ ███████████████████████████████████████

████████████████████████—Humphrey offers his "three primary opinions" that (i) Rebotix "*will* be" able to extract an image "from the . . . chip on the X/Xi EndoWrist," after which it (ii) "*will identify* the usage counter in the extracted image," and after which (iii) it "*will have* the capability to implement a reset of the usage counter." (*Id.* ¶¶ 45-47, 48-92.) Rebotix has never performed these activities, however, and Humphrey did not test either method to confirm his opinions. (Ex. 4, Humphrey Tr. at 166:10-167:5; 178:3-180:20.)

Mandel's and Humphrey's opinions should be excluded in their entirety for the following reasons.

*First*, Mandel's and Humphrey's opinions are not relevant, and as such, will not assist the trier of fact to understand evidence or to determine a fact at issue. To establish antitrust standing, Rebotix must show, among other things, that it is an

"efficient enforcer" of the antitrust laws, *Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264, 1271 (11th Cir. 2013) (citation omitted), which requires a showing of "***preparedness*** to enter the business." *Cable Holdings of Ga., Inc. v. Home Video, Inc.*, 825 F.2d 1559, 1562 (11th Cir. 1987) (emphasis added) (citation omitted). Mandel's and Humphrey's opinions, which concern Rebotix's unproven ability to extract an image from the X/Xi EndoWrist memory chip to ultimately override the use counter, do not demonstrate that Rebotix currently has the know-how to override X/Xi EndoWrist use limits to perform "repairs" of those instruments, let alone that Rebotix is prepared to commercialize the business. Because Mandel's and Humphrey's opinions will not "logically advance[] a material aspect" of the case, they are irrelevant and should be excluded as being unhelpful to the trier of fact. *McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 591); *see also Dominguez v. Yahoo!, Inc.*, No. 13-cv-1887, 2017 WL 390267, at *16-17, 19-20 (E.D. Pa. Jan. 27, 2017) (excluding the opinions of four experts as "unhelpful to a jury asked to assess liability," including untestable hypothesis that software program could "potentially" be modified), *aff'd*, 894 F.3d 116 (3d Cir. 2018). Moreover, Mandel's and Humphrey's opinions are based on "imprecise and unspecific" future events, and thus will only serve to confuse the jury. *United States v. Frazier*, 387 F.3d 1244, 1266 (11th Cir. 2004).

**Second**, Mandel's opinion is nothing more than *ipse dixit* that should not be credited. She relies on unsupported and unverified assumptions to conclude that the

RFID Method can extract a full image from the X/Xi EndoWrist memory chip. Although she claims to be able to do so, Mandel did not attempt to extract a full image from the X/Xi memory chip using the RFID Method. She did not analyze such an image or attempt to map out how Rebotix could override EndoWrist use limits using an image. In fact, Mandel was instructed by Rebotix *not* to take this additional step and instead opine only on the *feasibility* of the RFID Method. Mandel's opinions are not the product of a reliable methodology that can be tested, but instead pure *ipse dixit* that should be excluded.

*Third*, Humphrey's opinions regarding Rebotix's assumed future capabilities are also based on an unreliable methodology. The bases for Humphrey's opinions that Rebotix "will" be able to extract an image from the memory chip inside the X/Xi EndoWrist—the prerequisite for determining how to override use limits—are two methods of image extraction that Humphrey has admittedly never used and did not attempt to verify as part of his analysis because he has never examined an EndoWrist instrument. Humphrey's failure to perform any evaluation of an EndoWrist himself is made all the more glaring because he acknowledges that he typically performs "product investigation" when retained to perform reverse engineering analysis. Moreover, Humphrey's opinion that Rebotix could determine how to override use limits once it obtains an image of the X/Xi memory chip is based solely on information fed to him by Hamilton that is demonstrably false. Humphrey's use of an unreliable methodology that is inconsistent with the record is a separate and independent ground warranting exclusion of his opinions.

5

**ARGUMENT**

Expert testimony is not admissible unless it satisfies the requirements of Federal Rules of Evidence 702 and 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 and *Daubert* require that "any and all scientific testimony or evidence admitted is both relevant and reliable." *Simon v. Healthsouth of Sarasota Ltd. P'ship*, No. 8:12-cv-236-VMC-AEP, 2021 WL 268496, at *3 (M.D. Fla. Jan. 27, 2021). Courts "conduct this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation "expert testimony."'" *Id.* (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)). Courts acting as gatekeepers must engage in a "rigorous three-part inquiry" to assess whether: (1) "the expert is qualified to testify competently regarding the matters he intends to address"; (2) "the methodology by which the expert reaches his conclusions is sufficiently reliable"; and (3) "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* (citation omitted). The proponent of the expert testimony bears the burden of showing by a preponderance of the evidence that the testimony satisfies each of these requirements. *Id.* For the reasons set forth below, the opinions of Mandel and Humphrey fail to satisfy the rigorous three-part inquiry, and thus should be excluded.

6

I.   **The Opinions of Mandel and Humphrey Will Not Assist The Trier of Fact Because They Are Speculative And Not Relevant**

As Mandel and Humphrey acknowledge, Rebotix has never successfully overridden the use limits of X or Xi EndoWrists.  (Ex. 4, Humphrey Tr. at 135:20-136:21, 178:3-180:20; Ex. 2, Mandel Tr. at 116:24-118:21.)  Instead, Rebotix is claiming the right to antitrust damages regarding these instruments based on the unproven assumptions of its experts.[2]  These opinions must be excluded as speculative, irrelevant and unhelpful to the trier of fact in determining any fact in issue.

Mandel and Humphrey purport to ███████████████████████████████ ██████████████████████████████████████████████████ (*See* Ex. 3, Humphrey Report ¶¶ 55-61; Ex. 1, Mandel Report ¶ 11 ("███████████████████ ████████████████████████████████████████████████████ ████████████████ (emphasis added).)  ███████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ (Ex. 4, Humphrey Tr. at 92:16-93:12, 140:8-23, 148:7-149:4, 153:14-154:11; Ex. 2, Mandel Tr. at 116:24-

---

[2]  Rebotix is pursuing damages in this case for lost profits as a result of Intuitive's alleged exclusionary and anticompetitive conduct.  Rebotix's damages expert, Robert Mills, estimates Rebotix's purported damages as ████████████████ with respect to da Vinci S and Si EndoWrist models.  If Rebotix is permitted to include X and Xi EndoWrist "repairs" in its damages calculation, which is premised on Rebotix's speculation about its ability to develop the requisite technology to override use limits, this estimate increases to ████████████████ as the alleged maximum possible recovery.  (Ex. 8, Mills Report Table 11.)  As sole support for his opinion that Rebotix could have developed this technology, Mills cites to (1) off-the-record conversations with Rebotix personnel, and (2) Humphrey's expert report.  (*Id* at fn. 95, 101.)

117:15, 204:12-206:5.)  Indeed, Humphrey asserts that ███████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████ a fact which he attributes to an "interview" with Rebotix

co-owner Stan Hamilton.  (Ex. 3, Humphrey Report ¶ 36.)

      Expert testimony that is not "relevant" (i.e., it does not "logically advance[] a

material aspect" of the case) is not helpful to a jury under the third prong of the

gatekeeping analysis and should be excluded.  *McDowell*, 392 F.3d at 1298-99

(quoting *Daubert*, 509 U.S. at 591).  Here, Mandel's and Humphrey's opinions are

unhelpful to the jury because they fail to advance a material aspect of this case:

whether Rebotix has antitrust standing to assert claims based on lost profits of X and

Xi EndoWrist "repairs."

      To establish antitrust standing, Rebotix must demonstrate that it is an

"efficient enforcer" of the antitrust laws regardless of whether Intuitive's purported

anticompetitive conduct caused Rebotix's injuries (i.e., prevented Rebotix from

developing the requisite X/Xi technology).  *Sunbeam*, 711 F.3d at 1271.  Merely

intending to enter this business is insufficient to establish standing.  *See Ashley Creek*

*Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1255 (10th Cir. 2003).  Instead,

Rebotix must make "a showing of ***preparedness*** to enter the business."  *Cable Holdings*,

825 F.2d at 1562 (emphasis added) (citation omitted).  To prove preparedness, a

would-be market entrant such as Rebotix must show that it "'prepared cash flow

estimates and financial statements in order to determine the profitability of the

expansion,' ***had existing capabilities that would have allowed it to serve the market***, [and] took affirmative steps to obtain necessary government permits." *Sunbeam*, 711 F.3d at 1273 (emphasis added) (citing *Cable Holdings*, 825 F.2d at 1562).

Mandel's and Humphrey's opinions would only serve to establish that certain methods ***may*** exist that Rebotix ***could*** use in further efforts to develop a technology that ***could*** be commercialized to override use limits on X/Xi EndoWrists.  Both experts acknowledge that as of the date of their report, ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮(Ex. 4, Humphrey Tr. at 136:1-21, 154:6-155:8, 158:3-9, 166:18-167:5; Ex. 2, Mandel Tr. at 116:24-118:21, 204:12-206:5.)  Both experts also concede that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮  (*See infra* at §§ II.A-B.)  Such opinions fall far short of the type of preparedness courts require for a plaintiff to be an "efficient enforcer" of the antitrust laws.  *See Hayes v. Solomon*, 597 F.2d 958, 975-76 (5th Cir. 1979) (dismissing antitrust claim where plaintiffs' "listing of what they claim[ed] to have done to pursue their interest" related "mostly to their trial preparation" and steps taken "long after" period in which steps "would have had to have begun to conform to the plaintiffs' damage theory").  Mandel's and Humphrey's opinions should be excluded because

they will not contribute to a jury's understanding of any relevant evidence or determining a relevant fact at issue.

Moreover, Mandel's and Humphrey's opinions are the type of "imprecise and unspecific" expert testimony that courts routinely exclude because they "could serve to confuse the jury" or mislead it. *Frazier*, 387 F.3d at 1266; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309-1310 (noting that "[t]he *Daubert* analysis does not operate in a vacuum" and discussing applicability of Rule 401, Rule 402, and the "intricate role of Rule 403 in an expert testimony admissibility analysis"); *Mahli, LLC v. Admiral Ins. Co.*, No. 14-cv-175-KS-MTP, 2015 WL 4915701, at *11 (S.D. Miss. Aug. 18, 2015) (excluding expert opinions "too indeterminate to aid the trier of fact" because "[m]ere possibilities are not the stuff of competent expert testimony").

For example, Humphrey opines that "Rebotix will have the capability to implement a reset of the usage counter on the X/Xi EndoWrists," but conceded that he is unable to confirm with no reservations that Rebotix "will be successful" in doing so using either the RFID Method or Hard Wire Method because he did not verify those methods himself and "absolute certainty requires a crystal ball." (Ex. 3, Humphrey Report ¶ 47; Ex. 4, Humphrey Tr. at 13:13-14:7.) Although he testified that both methods "have been proven to be effective and successful" in other contexts, Humphrey acknowledged circumstances in his career "where the applicability of a given technique or tool to a given situation was an unknown until such time as it was tried and verified"—which he did not do here. (Ex. 4, Humphrey Tr. at 13:22-16:4.) Likewise, although Mandel opines that extracting an image from

10

the X/Xi EndoWrist memory chip is feasible, her report does not explain whether the process she describes can actually be used to override the use counter on an EndoWrist, and she has no knowledge of Rebotix's "repair" process or any plan to implement one.  (Ex. 1, Mandel Report ¶ 27; Ex. 2, Mandel Tr. at 113:16-117:24.)

Such opinions are exactly the type of imprecise, unspecific, and unhelpful testimony that must be excluded.  *Frazier*, 387 F.3d at 1266 (affirming exclusion of expert's opinion regarding unclear probability of inculpatory hair or fluid recovery by forensic examiner); *see also* Fed. R. Evid. 403 (evidence must be excluded if its probative value is substantially outweighed by its prejudicial effect or the risk that it will confuse the jury).

## II. Mandel's and Humphrey's Opinions Must Be Excluded Because They are Not Based on Any Reliable Methodology

The reliability of an expert's opinion is determined based on four non-exhaustive factors, including:  (i) whether the expert's "methodology" has been, or is capable of, "being tested"; (ii) whether the expert's technique has been subject to "peer review and publication"; (iii) the "known and potential error rate of the methodology"; and (iv) "whether the technique has been generally accepted in the proper scientific community."  *See Simon*, 2021 WL 268496, at *4 (citation omitted).  Courts "have substantial discretion in deciding how to test an expert's reliability."  *Rink*, 400 F.3d at 1292 (citation omitted).

Expert testimony cannot satisfy the reliability prong when the expert "relies on no discernible methodology at all," or where the methodology relies on

11

"unsupported and unverified assumptions" such that the ultimate opinion "amounts to nothing more than [the expert's] own *ipse dixit.*" *Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV, 2006 WL 5100536, at *13-14 (S.D. Fla. Jan. 6, 2006); *see also Frazier*, 387 F.3d at 1261 ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.))).

Further, the Federal Rules of Evidence require that expert testimony be, *inter alia*, "based on sufficient facts or data." Fed. R. Evid. 702(b). Expert testimony is admissible "only if an expert knows of facts which enable him to express a reasonably accurate conclusion," and "[o]pinions derived from erroneous data are appropriately excluded." *Morrow v. Brenntag Mid-S., Inc.*, 505 F. Supp. 3d 1287, 1291 (M.D. Fla. 2020) (quoting *United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997)). An expert's opinion is unreliable where it merely repeats the assertions of the plaintiff or other expert witnesses without conducting any independent analysis or verification. *See, e.g.*, *Morrow*, 505 F. Supp. 3d at 1290-92 (excluding expert testimony based upon "inaccurate statements" from plaintiff where expert "took [plaintiff] at his word" rather than "verify anything"); *Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*, No. 6:18-cv-1639-Orl40DCI, 2020 WL 8184710, at *3 (M.D. Fla. Dec. 4, 2020) (excluding expert witness testimony where expert "made no effort to independently verify" facts forming "the foundation of his entire report"); *Sabal Trail Transmission, LLC v. 0.589 Acres of Land in Hamilton Cnty.*,

*Fla.*, No. 16-cv-277-J-34JBT, 2018 WL 3655556, at *7 (M.D. Fla. Aug. 2, 2018)

("Rules 702 and 703 do not permit an expert to 'simply repeat or adopt the findings

of another expert without attempting to assess the validity of the opinions relied

upon.'" (citations omitted)).

 As explained below, Mandel and Humphrey's opinions are unreliable on

multiple grounds and should be excluded.

### A. Mandel's Conclusion That The RFID Method "Can Extract A Full Unencrypted Image" Must be Excluded as Unreliable

Gwen Mandel opines that ███████████████████████████████████

███████████████████████████████████████████" and that "███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████ (Ex. 1, Mandel Report ¶ 23.)  From this opinion, she concludes that "█████

███████████████████████████████████████████████████

(*Id.* ¶ 27.) All of these opinions  must be excluded as unreliable because Mandel's

ultimate opinions amount to "unsupported and unverified assumptions" that are

"nothing more than . . . *ipse dixit*." *Martinez*, 2006 WL 5100536, at *13-14.

 Mandel did not ███████████████████████████████████████

████████████████████ Rebotix engaged Mandel to ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ (Ex. 1, Mandel Report

¶ 11 (emphasis added); Ex. 2, Mandel Tr. at 16:11-18:7.)  Mandel was *not*, however,

████████████████████████████████████████████████████████

████████████ (Ex. 2 at 116:19-21, 195:18-196:5.)  Instead, Mandel used ████████

███████████████████████████████████████████████ (*Id.* at 119:4-

120:10.)  Similarly, Mandel's opinions about how ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ (*Id.* at

200:24-202:5.)[3]

      Critically, Mandel asserts that ████████████████████████████

████████████████████████████████████████████████████

███████████████████ (*Id.* at 119:4-120:23, 124:25-125:22.)  She testified that ██████

████████████████████████████████████████████████████████

███████████████████████████ (*Id.* at 114:20-115:1.)  But remarkably,

she was instructed by Rebotix ███████████████████████████████████████

████████████████████████████████████████████████████████

████████ (*Id.* at 10:18-13:25, 16:7-17, 99:18-104:10.)[4]  Thus, rather than perform a

---

[3]  Mandel is also unaware of whether, independent of any analysis that she performed, ████████████
████████ (Ex. 2, Mandel Tr. at 202:19-22.)

[4]  Mandel originally was hired by Rebotix as a consultant to find a way to override the use counter in X and Xi EndoWrists.  (Ex. 2, Mandel Tr. at 16:11-18:7, 99:18-21.)  In that context, ██████████████
█████████████████████████████████████████ (*Id.* at 121:11-122:22, 152:3-154:11.)
Rather than review and analyze that data to support her conclusions, ████████████████████████████
████████████████████ (Ex. 2, Mandel Tr. at 121:16-122:22.)

sufficiently reliable methodology, Mandel *avoided* performing the full analysis required to reach her conclusions regarding the ultimate outcome of the RFID Method.

Mandel's opinion that "an image of the chip can be copied" is likewise unsupported because she did not attempt to demonstrate or even explain how a "copy" could be performed. (Ex. 1, Mandel Report ¶ 27.) Indeed, her report contains no explanation of how extracted data could be copied, and at deposition she explained she "[has] not considered exactly what way may be preferable as I do not know how this instrument is created or how it communicates. I don't know what it looks like or its form factor in configuration." (Ex. 2, Mandel Tr. at 215:2-16.) Accordingly, she conceded that she could not opine on the specific means to copy an image from the chip, for example whether to reuse the chip from which data was extracted or rewrite data to a new chip, or whether the chip's use counter could be reprogrammed multiple times. (*Id.* at 214:3-216:5.)[5]

Because Mandel never even attempted a "full" image extraction, her opinion that ████████████████████████████████████████████ ██████████████████████████████████ should be excluded because it lacks any support.

---

[5] For this reason, Mandel's opinion about ███████████████████████████ ███████████████ is likewise unhelpful to the trier of fact and should be excluded on that additional basis. *See supra* § I.

**B.    Humphrey's Adoption of Image Extraction Methods Provided by Mandel and Rebotix Without Independent Analysis or Verification Is Unreliable and Improper**

Each of Humphrey's "three primary opinions" must be excluded because he failed to rely on any discernible methodology to arrive at his conclusions. *Simon*, 2021 WL 268496, at *4.  Humphrey's opinions are based on an assumption that the ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Humphrey's understanding of both methods, however, is based solely on information provided to him by Gwen Mandel and Stan Hamilton. (Ex. 3, Humphrey Report ¶¶ 45-47; Ex. 4, Humphrey Tr. at 75:20-78:2.)  Because Humphrey conceded he did nothing to "independently confirm" either of the two methods that form the entire foundation of his report, his opinions must be excluded. (Ex. 4, Humphrey Tr. at 140:8-23.)

*First*, Humphrey's opinion regarding the likelihood of Rebotix's success in overriding the use counter using the RFID Method is based entirely upon the unreliable opinions set forth in the Mandel report, of which he knows very little and never sought to verify. (*See id.* at 78:19-79:1, 93:1-12, 148:7-149:4.)  To learn about the RFID Method, Humphrey exchanged cursory emails with Mandel and spoke to her for one hour on two different occasions for very limited purposes.[6] (*Id.* at 71:22-

---

[6] For example, on July 17, 2021—9 days before submitting his report—Humphrey emailed Mandel, noting that he was "looking forward getting [sic] a better sense of the work you [are] doing to extract the image," and requesting a "high-level outline of the tools/processes" Mandel had used to extract an image. (Ex. 9 at REBOTIX175415.)  When asked whether she ever provided Humphrey with a "high-level outline" of the tools and processes she was using, Mandel replied ████████████████ ████████████████████████████████████████ I don't really think there

*(cont'd)*

72:3, 94:6-21; *see also* Ex. 2, Mandel Tr. at 72:14-78:8, 83:21-84:3.)  Because he merely repeats Mandel's opinion regarding the RFID Method without any independent verification, Humphrey's opinion that Rebotix "will" extract an image from the X/Xi EndoWrist using the RFID Method must be excluded.  *See Sabal*, 2018 WL 3655556, at *7; *see also Davis ex rel. J.D.D. v. Carroll*, 329 F.R.D. 435, 442 (M.D. Fla. 2018) (excluding expert opinion that was "merely a regurgitation" of another expert's opinion); *Cf. United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987) (affirming exclusion of expert testimony that was "nothing more than a personal vouching of one expert for another expert").

 *Second*, Humphrey's opinion regarding Rebotix's ability to utilize the Hard Wire Method to override the X and Xi use counter is based entirely on an undated, off-the-record "interview with Stan Hamilton."  (Ex. 3, Humphrey Report ¶ 59 & n.54.)  Humphrey did not perform an image extraction using the Hard Wire Method himself, nor did he observe Rebotix obtain an image using this method.  (*See* Ex. 4, Humphrey Tr. 153:14-154:19, 162:13-163:1.)  Nor did Humphrey perform any analysis to independently verify what Hamilton told him in this "interview."  He did not review any records from Rebotix for his opinions regarding the Hard Wire Method, nor did he ask Rebotix for documentation regarding its purported efforts to

---

was much detail provided." (Ex. 2, Mandel Tr. at 85:13-86:2; *see also* Ex. 9 at REBOTIX175413-14.)
It is unclear what more, if anything, Humphrey did to assess the RFID Method other than these
exchanges because Mandel never shared a draft of her report with Humphrey for his review. (Ex. 2,
Mandel Tr. at 77:19-78:8.)

*(cont'd)*

override the use counter on X/Xi EndoWrists in this fashion.  (*See* Ex. 3, Humphrey

Report Ex. 1; Ex. 4, Humphrey Tr. at 98:1-9.)  Merely reciting the opinion of

plaintiff without any actual analysis is inherently unreliable.[7]  *See Delta T, LLC v.*

*Dan's Fan City, Inc.*, No. 8:19-cv-1731-VMC-SPF, 2021 WL 2103074, at *4 (M.D.

Fla. May 25, 2021) ("An expert may not present testimony that merely 'parrots' the

opinions of others, without providing an independent evaluation of the evidence."

(citation omitted)); *Morrow*, 505 F. Supp. 3d at 1290-92 (excluding expert testimony

where expert "took [plaintiff] at his word" rather than "verify anything").

        In addition, despite being proffered as an expert in "reverse engineering" (Ex.

3, Humphrey Report ¶ 3), Humphrey did not reverse engineer either the RFID or

Hard Wire Methods using an X or Xi EndoWrist or the memory chip present in the

instruments (Ex. 4, Humphrey Tr. at 48:4-17, 78:6-18, 140:7-142:1).  As a result,

Humphrey was unable to verify *any* of his "primary opinions" that ███████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████ (Ex. 3, Humphrey Report ¶¶ 45-47; Ex. 4, Humphrey Tr. at 178:14-180:20

---

[7] Stark evidence that Humphrey is serving as mouthpiece for Rebotix regarding the Hard Wire
Method is a July 20, 2021 email exchange where Hamilton directed Humphrey on what to opine
concerning extraction methods.  Hamilton wrote:  "I would like to be able to state that we have
multiple ways planned to do the repair – all of which are considered feasible at this point," because
"[i]f there is something we missed here (*since we haven't done testing yet*), then we have other options
[Intuitive has] to also attack."  (Ex. 7 (emphasis added).)  This email exchange also reveals that, as
of the time of Humphrey's report, Rebotix had not yet fully tested and validated the Hard Wire
Method, a critical gap that Humphrey fails to address in concluding that the Hard Wire Method is a
viable image extraction technique.

("[A]s of today, you have no knowledge that Rebotix has the capability to implement a reset of the usage counter on the X/Xi EndoWrists, right?  I have no information to confirm whether they have successfully extracted the image and reset the counter. That had not been accomplished at the time that I drafted this opinion . . . .").)

Humphrey's failure to perform any reverse engineering is inconsistent with the very standards that he typically adheres to as an expert.  Humphrey testified that in his professional role as a "principal technologist" at his consulting firm, "product investigation is a fundamental part of most every reverse engineering project."  (Ex. 4, Humphrey Tr. at 37:17-40:9.)  He further agreed that it would "never" be unnecessary to examine a product at issue for a "reverse engineering project."  (*Id.* at 39:20-40:9.)  Notably, Rebotix itself purports ████████████████████████ ███████████████████████████████████████████████████████████ ██████████ (Ex. 5, Hamilton Tr. at 106:11-111:6; Ex. 6, Papit Tr. at 38:17-40:14, 87:23-89:10, 167:22-168:5.)

In contrast, Humphrey did not examine any EndoWrist instrument (either the S/Si model or X/Xi model) or any of an EndoWrist's component parts—including the memory chip central to Humphrey's opinions—to reach his conclusions.  (Ex. 4, Humphrey Tr. at 78:6-18.)  Accordingly, not only does Humphrey fail to utilize any technique that has been tested or is capable of being tested to reach his conclusions, but the so-called analysis he did perform would be inadequate in his own professional practice and by comparison to Rebotix's own prior practice.  Courts have repeatedly held that this gap in a methodology is unreliable and grounds for

19

exclusion.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting that

*Daubert's* gatekeeping requirement "is to make certain that an expert . . . employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field"); *see also Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-

36AEP, 2015 WL 2062611, at *3 (M.D. Fla. May 4, 2015) (excluding engineer's

opinion regarding product design as unreliable where expert "failed to test or

examine" the product and "failed to articulate any scientific or regulatory bases for

his methodology"); Fed. R. Evid. 702(c), advisory committee notes to 2000

amendments (listing factors relevant to determining expert reliability including

"[w]hether the expert 'is being as careful as he would be in his regular professional

work outside his paid litigation consulting'" (citation omitted)).

### C.     Humphrey's Opinion That Rebotix Will Identify the Use Counter in an Extracted Image to Override the Use Counter in X/Xi EndoWrists Is Not Based on Sufficient Facts or Data

Assuming that Rebotix is able to extract an image from the X/Xi EndoWrist

memory chip—which is an opinion based itself on an unreliable methodology (*see*

*supra* §§ II.A-B)—Humphrey opines that Rebotix "***will identify*** the usage counter in

the extracted image."  (Ex. 3, Humphrey Report ¶ 46.)  Humphrey's opinions are

"based on Rebotix's past work with the S/Si EndoWrists and its understanding of

the function of the usage counter."  (*Id.*)  Humphrey also asserts that ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶¶ 49, 76), leading to his

conclusion that Rebotix "will have" the ability to "reset the usage counter" on X/Xi

EndoWrists (*id.* ¶ 47). These opinions should be excluded for the additional,

independent reasons that Humphrey lacks sufficient facts or data and relies on

erroneous data and false assumptions in concluding that Rebotix has the capability to

override the X/Xi use counter. *See* Fed. R. Evid. 702(b).

    ***First***, in forming these opinions, Humphrey relied entirely on discussions with

Stan Hamilton to understand "the historical context and the actual methods that

[Rebotix] had employed" with overriding use limits on S/Si EndoWrists. (*See* Ex. 4,

Humphrey Tr. 77:9-78:5, 111:16-20, 188:19-189:18 (relying solely on Hamilton's and

Mandel's characterizations to conclude that ███████████████████████████

███████████████████████████████████ Humphrey did not observe

any of the work Rebotix performs on S/Si EndoWrists. (*Id.* at 79:2-5.) Nor did he

review any documentation related to Rebotix's work with external consultants or

testing records regarding the "workaround" Rebotix developed to override the use

counter on S/Si EndoWrists (the "Interceptor"). (*Id.* at 118:6-25.) Humphrey's use

of Hamilton's one-sided views to formulate his opinions rather than facts and data

warrants exclusion of his opinions. *See Arista Recs. LLC v. Usenet.com, Inc.*, 608 F.

Supp. 2d 409, 424, 429 (S.D.N.Y. 2009); *see also Bowe v. Pub. Storage*, No. 1:14-cv-

21559-UU, 2015 WL 10857339, at *8 (S.D. Fla. June 2, 2015) (excluding portions of

expert's opinion that were "an improper presentation of hearsay evidence" under

"the guise of an expert opinion").

*Second*, the record belies the notion that Rebotix has the know-how to override use limits on X/Xi EndoWrists.  Rebotix corporate representative Glen Papit testified that ███████████████████████████████████████████ ███████████████████████████████████.  (Ex. 6, Papit Tr. at 100:5-101:15.)  Even as of July 26, 2021 when Humphrey submitted his report, Rebotix had communicated with Humphrey that it still had not succeeded in extracting an image from the X/Xi EndoWrist, let alone determined how it would override use limits using the image. (Ex. 7.)  Humphrey fails to acknowledge these facts, instead accepting Hamilton's hearsay that Rebotix will be able to override use limits on X/Xi EndoWrists because it had done so in the past.  Such parroting without consideration of the facts and data in the record is unreliable under the law.  *See Morrow*, 505 F. Supp. 3d at 1290-93 (excluding expert testimony where expert "took [plaintiff] at his word"); *Cano v. 245 C & C, LLC*, No. 19-cv-21826, 2021 WL 684188, at \*13 (S.D. Fla. Feb. 19, 2021) (finding expert opinion unreliable where expert "relied almost entirely on interviews with the Plaintiffs"); *Arista*, 608 F. Supp. 2d at 429 (S.D.N.Y. 2009) ("An expert who simply repeats the hearsay of the client who retained him, without any independent investigation or analysis, does not assist the trier of fact in understanding matters that require specialized knowledge.").

*Third*, Humphrey's explanation for why Rebotix has not yet found a way to override X/Xi EndoWrist use limits is based on erroneous data.  Citing only to an "interview with Stan Hamilton," Humphrey opines that "███████████████████ ████████████████████████████████████████████████████████████



(Ex. 3, Humphrey Report ¶ 36.)[8]

This is demonstrably false.  The record shows that ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9]  The record also shows, as noted above,

that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Ex. 6, Papit Tr. at 100:5-101:15.)

Humphrey's consideration of demonstrably false information is an additional ground

for exclusion of his opinions.  *Morrow*, 505 F. Supp. 3d at 1290 (excluding expert

testimony regarding causation of plaintiff's injuries where expert relied on plaintiff's

inaccurate representation that he had no prior accidents); *see also Korsing v. United

States*, No. 16-cv-22190, 2017 WL 7794276, at *4 (S.D. Fla. Aug. 24, 2017)

---

[8]  In its motion to dismiss decision, the Court recognized that the design of the X and Xi EndoWrist use counter does not constitute anticompetitive conduct.  *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274-VMC-TGW, 2021 WL 1227593, at *9-10 (M.D. Fla. Mar. 8, 2021).  Recognizing that Rebotix cannot establish antitrust injury attributable to Intuitive's design of the use counter, the Court dismissed the portions of Counts III and IV based on the use counter.  *Id.* at 10.  However, the Court declined to dismiss all X and Xi-related claims because it found that alleged anticompetitive behaviors of tying, contractual exclusivity, and threats of economic retaliation "could plausibly foreclose Rebotix from repairing EndoWrists for the newer Xi models."  *Id.*  Rebotix nowhere alleges that Intuitive's conduct precluded Rebotix from ***developing the technology*** required to perform such "repairs," however, and Rebotix did not amend its Complaint following the Court's ruling on the motion to dismiss to include this allegation, nor could Rebotix plausibly do so in light of the record evidence detailed above.

[9]  *See* Ex. 10 at REBOTIX171289 (January 13, 2015 G5 Engineering Solutions report); Ex. 11 (March 2, 2015 G5 Engineering Solutions report); Ex. 12  (March 17, 2015 G5 Engineering solutions report); Ex. 13 at REBOTIX110981 (timeline reflecting Rebotix's instruction to pause development of work on the Xi in April 2015); Ex. 14 at REBOTIX166250 (Rebotix representation that it could not override Xi use limits because of the "completely different technology" in the Xi EndoWrists, and that "the S/Si market is currently much bigger for us").

(excluding expert opinion as "unhelpful" where based on "assume[d] facts affirmatively contradicted by the record evidence").

## CONCLUSION

For the foregoing reasons, Intuitive respectfully requests that Rebotix proffered experts Gwen Mandel and Kurt Humphrey be excluded from testifying in this matter.

### LOCAL RULE 3.01(G) CERTIFICATE OF COMPLIANCE WITH GOOD FAITH CONFERENCE

Consistent with the Court's Amended Case Management and Scheduling Order, ECF No. 90, Intuitive certifies that its counsel conferred by telephone with Plaintiff's counsel regarding this motion on November 15, 2021.  The parties were unable to agree on the resolution of the motion.

DATED:  November 17, 2021

Respectfully submitted,

/s/ Karen Lent

KAREN HOFFMAN LENT (*Pro Hac Vice*)
MICHAEL H. MENITOVE (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

MICHAEL S. BAILEY (*Pro Hac Vice*)
DOUGLAS J. DEBAUGH (*Pro Hac Vice*)
1440 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 371-7000
michael.bailey@skadden.com
douglas.debaugh@skadden.com

ALLEN RUBY (*Pro Hac Vice*)
Attorney at Law
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690
allen@allenruby.com

*Counsel for Intuitive Surgical, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 17, 2021, I caused **INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF GWEN MANDEL AND KURT HUMPHREY** to be served on the following counsel of record by email:

Gregory Dovel                    greg@dovel.com
Richard Lyon                     rick@dovellaw.com
Alexander Erwig                  alexander@dovel.com
David Luikart, III               dave.luikart@hwhlaw.com

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com