UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant/Counterclaim Plaintiff. | Civil Case No. 8:20-cv-2274-VMC-TGW |

**INTUITIVE SURGICAL, INC.'S MOTION
TO EXCLUDE THE EXPERT OPINIONS OF DR. T. KIM PARNELL**

Pursuant to Rule 702 of the Federal Rules of Evidence ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, Defendant and Counterclaim Plaintiff Intuitive Surgical, Inc. ("Intuitive") respectfully submits this motion to exclude the opinions of Dr. T. Kim Parnell as unreliable and unhelpful, and thus inadmissible.  Plaintiff and Counterclaim Defendant Rebotix Repair LLC ("Rebotix") proffers Dr. Parnell as a rebuttal expert on the performance and safety of new EndoWrist instruments ("EndoWrists") sold by Intuitive and modified EndoWrists "repaired" by Rebotix, even though he has never seen an EndoWrist perform in an operating room (or indeed anywhere) and

has no factual basis to attest to EndoWrists' safety after Rebotix has "repaired" them to circumvent their use counters.

*Preliminary Statement*

Dr. Parnell's deposition testimony confirms that he has no factual basis to support, has done no expert analysis to reach, and has set forth no reliable methodology to test, his opinions about the performance and safety of Intuitive's EndoWrists, either as new instruments sold directly by Intuitive or as modified instruments after Rebotix has installed its Interceptor circuit board to circumvent the instruments' use counters. Specifically, Dr. Parnell opines that Rebotix's procedure "ensures that EndoWrists can continue to be used safely," and "results in instruments that have a higher degree of safety and reliability than new EndoWrists manufactured by Intuitive." (Ex. 1, Parnell Rep.[1] ¶¶ 18, 19.) He further opines that EndoWrist use limits do not "promote patient safety," and that Intuitive has no basis to assert that the modified EndoWrists with the Rebotix Interceptor circuit board are less safe than new EndoWrists. (*Id.* ¶¶ 20, 21.) But Dr. Parnell has never seen an EndoWrist put through Rebotix's procedures, let alone done any expert analysis or set forth any methodology to test those procedures or their results. He therefore has no reliable basis on which to opine that Rebotix's procedures ensure that EndoWrists modified by Rebotix can continue to be used safely or that those modified

---

[1] Expert Report of Dr. T. Kim Parnell, dated Aug. 30, 2021 ("Parnell Rep.").

2

EndoWrists are safer and more reliable than the original EndoWrists prior to Rebotix's modification.

Dr. Parnell's scant familiarity with EndoWrists and Rebotix's modification of them derives solely from his single one-day visit to Rebotix's facility in St. Petersburg, Florida, on August 10, 2021, at a time when the facility was not "repairing" EndoWrists. (Ex. 1, Parnell Rep. ¶ 41; Ex. 2, Parnell Dep.[2] at 66:16-15.) Because Rebotix was not "repairing" EndoWrists when Dr. Parnell visited the facility, Rebotix's director of operations, Greg Fiegel, merely showed Dr. Parnell the idle equipment on which Rebotix had previously "repaired" EndoWrists and described the Rebotix procedures to Dr. Parnell. (Ex. 2, Parnell Dep. at 64:1-68:24, 82:25-86:4, 95:15-97:21.) Dr. Parnell's frequent descriptions of Rebotix's procedures throughout his report (*see, e.g.*, Ex. 1, Parnell Rep. ¶¶ 44-61, 78-80, 87, 90, 167-168, 202, 205-208, 221-224, 238-244, 246, 256-257) are not based on his own experience or expertise; he has simply repeated Mr. Fiegel's description of those procedures. And, while Mr. Fiegel did demonstrate one Rebotix procedure—the insertion of a Rebotix Interceptor circuit board into a single EndoWrist to circumvent Intuitive's original use counter—Dr. Parnell does not even know which EndoWrist was used in that demonstration. (Ex. 2, Parnell Dep. at 64:19-65:15.)

Dr. Parnell's visit to the Rebotix facility was woefully inadequate to provide him a sufficient factual basis—and he not has conducted any expert analysis or set

---

[2] Deposition of Dr. T. Kim Parnell (Sept. 24, 2021) ("Parnell Dep.").

3

forth any methodology—to compare the performance or safety of new EndoWrists with those that have undergone Rebotix's procedures, rendering his opinions about the relative safety of new and modified EndoWrists unreliable. During his visit to St. Petersburg and since, Dr. Parnell has not even learned, and does not know, which types of EndoWrists Rebotix has modified. (*Id.* at 33:12-36:12.) Of the dozens of EndoWrists manufactured by Intuitive (*see* Ex. 1, Parnell Rep. ¶ 209 Table 1), Dr. Parnell has not seen and handled more than "probably five or six different" instruments, all during his one day in St. Petersburg. (Ex. 2, Parnell Dep. at 37:1-38:3.) And, although Dr. Parnell claims that he was able to "compare EndoWrists repaired by Rebotix to brand new EndoWrists sold by Intuitive" during his visit to St. Petersburg (Ex. 1, Parnell Rep. ¶ 41), any EndoWrists—new or modified—that he "compare[d]" that day were not attached to a surgical robot (Ex. 2, Parnell Dep. at 38:4-12), meaning that he has never seen these instruments in actual use. Consequently, Dr. Parnell could not have compared their performance in operation or assessed their relative level of patient safety and reliability in the operating room.[3]

Nor does Dr. Parnell's comparison of the reparability of EndoWrists and traditional laparoscopic instruments stand on any firmer ground. (Ex. 1, Parnell Rep. ¶¶ 23-35.) Dr. Parnell admits that he had no experience with laparoscopic instruments prior to this litigation, and he did not examine any laparoscopic

---

[3]   Dr. Parnell claims to have seen videos of EndoWrists in use, but could not recall the details of the videos and could recall seeing only one EndoWrist—a Maryland bipolar forceps—in operation. (*Id.* at 38:9-42:4.)

4

instruments in connection with his engagement in this case. (Ex. 2, Parnell Dep. at 18:25-21:6, 42:25-47:24.) And he does not know whether the procedures that Rebotix uses to, for example, test the cutting efficiency of serviced EndoWrists are employed by any other medical device company. (*Id.* at 82:2-24, 93:4-21.) Consequently, he has applied no independent expertise and conducted no methodological testing to compare EndoWrists with traditional laparoscopic instruments, but has merely quoted the testimony of others, which he uncritically assumes to be correct.

    Finally, Dr. Parnell has no idea what happens to modified EndoWrists after they leave the Rebotix facility. (*Id.* at 130:7-135:14.) He has no knowledge of whether the instruments are used in subsequent surgeries. (*Id.*) Moreover, he has seen no data or records even to suggest that Rebotix tracks the instruments or their performance and safety after Rebotix has modified them and returned them to their hospital owners (*id.*), and he has set forth no reliable methodology to measure that post-modification performance and safety. And, while Dr. Parnell acknowledges that medical instruments wear out, he has no knowledge of—and has neither developed a reliable testing methodology to determine nor analyzed Intuitive's internal process to evaluate—the maximum number of uses or the length of the useful life of any EndoWrist. (*Id.* at 118:20-122:23.)

    In sum, Dr. Parnell has no factual basis for—and has not conducted any expert analysis or set forth any methodology to test—any of his opinions about Rebotix procedures or the performance and safety of EndoWrists, either before or

5

after they have undergone those procedures. Instead, he simply repeats assertions about those procedures and the post-modification safety of modified EndoWrists that he has either been told by others or has read in the report of Dr. Joshua S. Sharlin, a purported expert on the Food and Drug Administration ("FDA") rules and practices whom Rebotix has since withdrawn, and the deposition transcript of a Mr. Ed Harrich, a hospital employee whose credentials Dr. Parnell does not know. (*Id.* at 103:18-107:3.)[4] Expert opinions that are not based on a testable methodology, but merely parrot the assertions of others with no underlying expert analysis, are neither reliable nor helpful to the factfinder, and under Rule 702 are excluded as inadmissible. Absent sufficient facts to show, and a reliable methodology to test, the relative performance and safety of new and modified EndoWrists, Dr. Parnell's opinions about their performance and safety are unreliable and unhelpful, and should thus be excluded in their entirety.

*Argument*

Rule 702, which governs the admission of expert opinions and testimony in federal courts, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the

---

[4] Dr. Parnell extensively relies on this single hospital employee—Ed Harrich—throughout his report (Ex. 1, Parnell Rep. ¶¶ 62-64, 73,109-111, 144, 164, 190), despite Mr. Harrich's testimony that, at his hospital, Rebotix had "repaired" no more than a half dozen individual EndoWrists that, combined, had been used in fewer than ten total surgeries following Rebotix's "repair." (Ex. 3, Deposition of Ed Harrich (May 24, 2021) at 59-60.)

> testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court has held that district courts must ensure that, to be admissible, expert opinions and testimony must be both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Daubert*, 509 U.S. at 589-90. As this Court recently explained, "[d]istrict courts are tasked with this gatekeeping function so 'that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony.'" *Delta T, LLC v. Dan's Fan City, Inc.*, No. 8:19-cv-1731-VMC-SPF, 2021 WL 2103074, at *2 (M.D. Fla. May 25, 2021) (Covington, J.) (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)); *accord Simon v. Healthsouth of Sarasota Ltd. P'ship*, No. 8:12-cv-236-VMC-AEP, 2021 WL 268496, at *3 (M.D. Fla. Jan. 27, 2021) (Covington, J.). This duty is "especially significant" because expert testimony "can be both powerful and quite misleading." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595).

In the Eleventh Circuit, district courts must engage in a "rigorous three-part inquiry" to determine the admissibility of expert opinions and testimony. *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010). Specifically, courts must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry

> mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (citation omitted). These three requirements—referred to as "qualification, reliability, and helpfulness"—are "distinct concepts" that courts must not "conflate." *Frazier*, 387 F.3d at 1260. And the party offering the expert—here, Rebotix—bears the burden of satisfying each of these three elements by a preponderance of the evidence. *Simon*, 2021 WL 268496, at *3; *Adams v. Magical Cruise Co.*, No. 6:15-cv-282-Orl-37TBS, 2016 WL 11577631, at *2 (M.D. Fla. Oct. 21, 2016).

## I. DR. PARNELL'S OPINIONS ABOUT ENDOWRIST PERFORMANCE AND SAFETY ARE UNRELIABLE.

The reliability of an expert's opinion is determined based on four non-exhaustive factors, including: (i) "whether the expert's methodology has been[,]" or is capable of, "being tested"; (ii) "whether the [expert's] technique has been subject[] to peer review and publication"; (iii) the "known and potential error rate of the methodology"; and (iv) "whether the technique has been generally accepted in the proper scientific community." *Simon*, 2021 WL 268496, at *4 (citations omitted). If "*any* step" in the analysis is not reliable, the expert's methodology suffers a "fatal defect" that precludes admission of the entire opinion. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005) (citation omitted).

As a matter of law, an expert opinion cannot satisfy the reliability prong where, as here, the expert "relies on no discernible methodology at all." *Martinez v. Rabbit Tanaka Corp.*, No. 04-cv-61504-CIV, 2006 WL 5100536, at *13 (S.D. Fla. Jan.

8

6, 2006); *Valle Del Cibao v. Lama*, No. 07-cv-23066-CIV-UNGARO, 2008 WL 11333584, at *4 (S.D. Fla. Oct. 27, 2008). Where, as here, Dr. Parnell has done nothing to test the performance or safety of EndoWrists after Rebotix has circumvented the use counter, his opinions as to the performance and safety of those instruments are unreliable. *See, e.g.*, *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (affirming exclusion of engineer's opinion as to product design and manufacture where expert "did not test alternative designs" for the product); *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2015 WL 2062611, at *3 (M.D. Fla. May 4, 2015) (excluding engineer's opinion regarding product design because expert "failed to test or examine" the product and had "never even seen in person or touched" the product); *see also Dominguez v. Yahoo!, Inc.*, No. 13- 1887, 2017 WL 390267, at *16 (E.D. Pa. Jan. 27, 2017) (excluding as unreliable expert's opinion that computer program "could be modified" in a particular way because expert did "not actually test" hypotheses to show product could be modified), *aff'd*, 894 F.3d 116 (3d Cir. 2018); *Haney v. Eaton Elec., Inc.*, 528 F. Supp. 2d 1262, 1268 (N.D. Ala. 2007) (excluding engineer's opinion as to product's alleged failure where engineer "did not test" and "ha[d] not examined" the product).

An expert's opinion is also unreliable where it rests on unsupported and unverified assumptions, amounting "to nothing more than [the expert's] own *ipse dixit*." *Martinez*, 2006 WL 5100536, at *14. Such a "superficial analysis," untethered to any discernible methodology for testing post-modification EndoWrist performance and safety, is simply "insufficient to satisfy *Daubert*." *Morrow v. Brenntag Mid-S., Inc.*,

505 F. Supp. 3d 1287, 1290-91 (M.D. Fla. 2020) (Covington, J.) (excluding expert testimony based primarily on statements from plaintiff and plaintiff's counsel, where expert "took [plaintiff] at his word," and admitted he did not "verify anything" (citation omitted)); *accord Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015).

Dr. Parnell has set forth no methodology whatsoever either to compare the reparability of EndoWrists to traditional laparoscopic instruments or to determine the performance and safety of EndoWrists that Rebotix has modified with its Interceptor circuit board. As explained above, he did not examine any laparoscopic instruments in the course of his engagement in this case, he has not even seen most EndoWrists, and he has never seen an EndoWrist perform its surgical functions. He does not know whether the procedures Rebotix uses are used by other medical device companies. He does not know which types of EndoWrists have undergone Rebotix modifications, and he has no idea what happens to those EndoWrists when they leave the Rebotix facility after modification. He has seen no data or records even to suggest that Rebotix tracks or in any way measures the performance and safety of the EndoWrists it modifies, and Dr. Parnell has neither suggested nor implemented any methodology for doing so. His opinions as to the post-modification performance and safety of EndoWrists are not based on any expert analysis, but on his regurgitation of the assertions of others. Without any testable methodology for measuring the post-modification performance and safety of EndoWrists, Dr. Parnell's views about that performance and safety are nothing more than his *ipse*

*dixit*, and, as such, are unreliable and inadmissible. *Martinez*, 2006 WL 5100536, at *14.

## II. DR. PARNELL'S OPINIONS ABOUT ENDOWRIST PERFORMANCE AND SAFETY ARE UNHELPFUL.

To be helpful, an expert opinion must "concern[] matters that are beyond the understanding of the average lay person," and offer something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63; *accord Bryant v. Troutman*, No. 3:05-CV-162-J-33MCR, 2006 WL 2045871, at *2 (M.D. Fla. July 19, 2006) (Covington, J.) (excluding expert opinion on matters that "are commonly known and observable" as "testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves" (citations omitted)).

In this regard, an expert opinion is not helpful if it merely repeats, without expert analysis, the assertions of plaintiff or other witnesses, simply assuming that those assertions are correct. *See, e.g.*, *Delta T*, 2021 WL 2103074, at *4 (excluding expert's opinion that "simply repeat[ed] counsel's opinion or analysis" where expert "conducted no research" because "[a]n expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence" (citation omitted)); *Cano v. 245 C & C, LLC*, No. 19-cv-21826-CIV, 2021 WL 684188, at *7, 13 (S.D. Fla. Feb. 19, 2021) (excluding expert opinion that "simply parrot[ed] back what she was told by Plaintiffs without any attempt to test the validity or veracity of their claims"; expert "relied almost exclusively on

11

interviews with the Plaintiffs" and did not conduct any further investigation to assess issues relevant to her opinion); *Sabal Trail Transmission, LLC v. 0.589 Acres of Land in Hamilton Cnty., Fla.*, Nos. 3:16-cv-277-J-34JBT, 3:16-cv-300-J-34PDB, et seq., 2018 WL 3655556, at *8 (M.D. Fla. Aug. 2, 2018) (excluding expert opinion based on information from another person, where expert "simply 'assumed'" that person's information "to be correct" (citation omitted)); *Bowe v. Pub. Storage*, No. 1:14-cv-21559-UU, 2015 WL 10857339, at *8 (S.D. Fla. June 2, 2015) (excluding portions of expert's opinion that were "not based on his expertise," but rather, "an improper presentation of hearsay evidence" under "the guise of an expert opinion"); *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 428-29 (S.D.N.Y. 2009) (excluding expert's opinions about a party's system based on "nothing more than information supplied to [him] by [the party]"; an expert cannot "simply repeat[ ] the hearsay of the client who retained him, without any independent investigation or analysis").

As previously explained, Dr. Parnell has not conducted any independent expert analysis or offered a testable methodology either to compare EndoWrists to traditional laparoscopic instruments or to measure the performance or safety of EndoWrists after Rebotix has modified them and disabled their use counter. Instead, he has merely repeated the assertions of others, including Rebotix's director of operations, Rebotix's withdrawn FDA expert, and one hospital employee, that EndoWrists can be repaired just like any traditional laparoscopic instrument and that modified EndoWrists performed as well as (or better than) new EndoWrists. Dr. Parnell simply assumes that those assertions are correct without any critical expert

12

analysis or methodological testing. Such uncritical regurgitation of the assertions of others offers nothing more than what the lawyers for the parties can argue in closing arguments. As such, it is not helpful to the factfinder, and should be excluded.

## *Conclusion*

Dr. Parnell's opinions as to the performance and safety of EndoWrists after Rebotix has modified them to circumvent their use counters are neither reliable nor helpful. Dr. Parnell has no factual basis to support, has conducted no expert analysis to reach, and has set forth no testable methodology to test, that performance or safety. He simply parrots the assertions of others on the subject. Accordingly, Dr. Parnell's opinions (i) that EndoWrists can be repaired just as traditional laparoscopic instruments can, (ii) that Rebotix's procedures ensure that EndoWrists can continue to be used safely, (iii) that modified EndoWrists are safer and perform more reliably than new EndoWrists, (iv) that EndoWrist use limits do not promote patient safety, and (v) that Intuitive has no basis to assert that modified EndoWrists are less safe than new EndoWrists, fail to satisfy the rigorous three-part test for admissibility under Rule 702 and *Daubert*. Those opinions should therefore be excluded in their entirety.

# LOCAL RULE 3.01(G) CERTIFICATE OF COMPLIANCE WITH GOOD FAITH CONFERENCE

Consistent with the Court's Amended Case Management and Scheduling Order, ECF No. 90, Intuitive certifies that its counsel conferred by telephone with Plaintiff's counsel regarding this motion on November 15, 2021. The parties were unable to agree on the resolution of the motion.

DATED: November 17, 2021              Respectfully submitted,

                                      /s/ Karen Lent

KAREN HOFFMAN LENT (*Pro Hac Vice*)      DAVID L. McGEE
MICHAEL H. MENITOVE (*Pro Hac Vice*)     Fla. Bar No. 220000
MICHAEL W. FOLGER (*Pro Hac Vice*)       BEGGS & LANE, RLLP
SKADDEN, ARPS, SLATE,                    501 Commendencia Street
 MEAGHER & FLOM LLP                      Pensacola, FL 32502
One Manhattan West                       Telephone: (850) 432-2451
New York, NY 10001                       dlm@beggslane.com
Tel: (212) 735-3000
karen.lent@skadden.com                   ALLEN RUBY (*Pro Hac Vice*)
michael.menitove@skadden.com             Attorney at Law
michael.folger@skadden.com               15559 Union Ave. #138
                                         Los Gatos, CA 95032
MICHAEL S. BAILEY (*Pro Hac Vice*)       Tel: (408) 477-9690
1440 New York Avenue, N.W.               allen@allenruby.com
Washington, DC 20005
Tel: (202) 371-7000
michael.bailey@skadden.com

*Counsel for Intuitive Surgical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2021, I caused **INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. T. KIM PARNELL** to be served on the following counsel of record by email:

| | |
|---|---|
| Gregory Dovel | greg@dovel.com |
| Richard Lyon | rick@dovellaw.com |
| Alexander Erwig | alexander@dovel.com |
| David Luikart, III | dave.luikart@hwhlaw.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com