## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC,<br><br>    Plaintiff/Counterclaim<br>    Defendant,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>    Defendant/Counterclaim<br>    Plaintiff. | Civil Case No. 8:20-cv-2274-VMC-TGW |

## INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE
## THE EXPERT OPINIONS OF J. LAWRENCE STEVENS

Pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant/Counterclaim Plaintiff Intuitive Surgical, Inc. ("Intuitive") respectfully submits this motion to exclude the opinions of J. Lawrence Stevens, who has been proffered as an FDA expert by Plaintiff/Counterclaim-Defendant Rebotix Repair LLC ("Rebotix") in rebuttal to Heather Rosecrans, Intuitive's affirmative FDA expert witness.

## PRELIMINARY STATEMENT

Rebotix proffers Stevens as a rebuttal witness to Rosecrans, whom Intuitive proffered to opine concerning FDA's clearance of EndoWrist instruments ("EndoWrists") under Section 510(k) of the Federal Food, Drug & Cosmetic Act

("FDCA"), 21 U.S.C. § 360(k) (i.e., 510(k) clearance), the scope of that clearance and whether Rebotix's practice of installing Interceptor circuit boards (the "Interceptor") to override EndoWrist use limits—which Rebotix deceptively labels a "repair"—requires 510(k) clearance.  (Ex. 1, Expert Report of Heather S. Rosecrans.) Stevens opines that Rebotix did not require 510(k) clearance from FDA as a "manufacturer" or a "remanufacturer" prior to marketing its "repair" services.  (Ex. 2, Expert Report of J. Lawrence Stevens ("Rep.") ¶¶ 32-114.)  Stevens's opinions are inadmissible and should be excluded on the following grounds.

*First*, Stevens is not qualified to opine on 510(k) clearance issues.  While Stevens may have general experience consulting on FDA regulatory issues, he lacks relevant experience on the review and clearance of 510(k) submissions, rendering him unqualified to opine in this field.  Stevens has never worked at FDA headquarters, where 510(k) submissions are reviewed and final decisions about 510(k) clearance are made.  Instead, he worked in post-market enforcement and investigative roles in FDA field offices.  He never had any responsibility at FDA to opine on the need for 510(k) clearance or the sufficiency of a 510(k) submission. Stevens's only experience with 510(k) submissions comes from his private sector work in which he advised a handful of clients on devices completely unrelated to laparoscopic instruments.  Stevens also purports to offer technical opinions relating to EndoWrist specifications, instrument failures and testing, but has no engineering expertise.  Stevens's lack of qualifications alone renders his opinions inadmissible.

*Second*, the methodology Stevens employs to conclude that Rebotix does not require 510(k) clearance is not "sufficiently reliable" because it simply parrots the opinions of Dr. Joshua Sharlin, an expert Rebotix initially proffered on FDA issues but withdrew the day after serving Stevens's rebuttal report.  Stevens's opinions are "essentially driven" by those of Dr. Sharlin.  (Ex. 3, Stevens Tr. 24:18-20.)  Without performing independent analysis, Stevens adopted Dr. Sharlin's entire 73-page report, including technical opinions concerning performance specifications, instrument failures and testing, which Dr. Sharlin himself was not qualified to proffer in the first place.  Such parroting of the opinions of others without independent analysis, in particular in areas where neither expert is qualified, renders the methodology unreliable.  *Delta T, LLC v. Dan's Fan City, Inc.*, No. 8:19-cv-1731-VMC-SPF, 2021 WL 2103074, at *4 (M.D. Fla. May 25, 2021) (Covington, J.).

*Third*, Stevens fails to consider "sufficient facts and data" in conducting his analyses, relying on erroneous data and using selected arguments that he parrots from Rebotix.  For example, without any independent analysis or verification, Stevens adopts arguments made to him by Rebotix witness Greg Fiegel during one conversation that: (i) Rebotix did not "hold or offer for sale" the Interceptor; (ii) Rebotix's "repair" service does not "increase the [EndoWrist] use counter to a number beyond that at which it was originally set"; and (iii) Rebotix, LLC withdrew a previous 510(k) submission concerning the Interceptor because of a change in business model.  (Ex. 2, Rep. ¶¶ 52 n.3, 65,114, 142-43, 173.)  In conducting his analysis, Stevens relies on these biased statements and ignores contradictory record

3

evidence.  Stevens's acceptance of arguments from Rebotix without any independent verification and in the face of contrary record evidence is nothing more than *ipse dixit*, further undermining the reliability of his methodology.

*Fourth*, to support certain opinions, Stevens adopts unattributed statements from so-called "FDA experts" in a Deutsche Bank analyst report.  Stevens does not use this report as an independent fact to support his opinions, but rather in an improper attempt to end run the Federal Rules of Evidence.  Stevens's adoption of hearsay from an analyst report to prop up his own flawed opinions underscores the unreliability of his methodology.

*Fifth*, Stevens proffers opinions that *do not rebut* Rosecrans's affirmative opinions, and thus should be excluded as improper rebuttal testimony.

## RELEVANT LAW CONCERNING 510(K) CLEARANCE

FDA has authority under the FDCA to regulate medical devices.  21 U.S.C. §§ 301-392.  If a product meets the definition of "device," it will be regulated by FDA as a medical device and be subject to premarket and postmarket regulatory controls. 21 U.S.C. § 321(h).  Unless exempt, Class II devices require 510(k) clearance.  *See* 21 U.S.C. §§ 360(k)-(m), 360c(a)(1)(A), 360c(f)(1), 360c(i).

A "manufacturer" of a new, non-exempt, Class II medical device must obtain 510(k) clearance before introducing the device into commercial distribution in the U.S.  *See* 21 C.F.R. §§ 807.81(a)(2), 807.20(a).  A "remanufacturer" of a non-exempt, Class II medical device is required to obtain 510(k) clearance before introducing its remanufactured device into commercial distribution in the U.S.  21 C.F.R.

4

§§ 807.81(a)(2), 820.3(o), 807.20(a).  A "remanufacturer" is anyone who significantly changes the intended use of a medical device or its safety or performance specifications.  21 C.F.R. § 820.3(w).

## ARGUMENT

Expert testimony is not admissible unless it satisfies the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See Simon v. Healthsouth of Sarasota Ltd. P'ship*, No. 8:12-cv-236-VMC-AEP, 2021 WL 268496, at *3 (M.D. Fla. Jan. 27, 2021) (Covington, J.). These standards require the district court to act as a "gatekeep[er]" and prevent "speculative, unreliable expert testimony" from "reach[ing] the jury." *Id.* (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)).  The court's gatekeeping function is "especially significant" because expert testimony "can be both powerful and quite misleading." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595).  Accordingly, the proponent of expert testimony must establish, "by a preponderance of the evidence," that the expert: (i) is "qualified" to testify competently regarding a matter; (ii) reached conclusions based on a "sufficiently reliable" methodology; and (iii) will "assist[] the trier of fact." *Simon*, 2021 WL 268496, at *3 (citations omitted).  Each of these requirements—referred to as "qualification, reliability, and helpfulness"—must be satisfied to admit expert testimony. *Frazier*, 387 F.3d at 1260.  The testimony that Stevens seeks to offer fails on all three grounds.

5

## I.   STEVENS IS NOT QUALIFIED TO OFFER OPINIONS CONCERNING 510(K) CLEARANCE OR THE PURPORTED SAFETY AND PERFORMANCE OF REBOTIX'S "REPAIRED" ENDOWRISTS

Federal Rule of Evidence 702 requires an expert to be qualified either "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Courts examine a proposed expert's "credentials" in light of "the subject matter of the proposed testimony."  *Simon*, 2021 WL 268496, at *3 (quoting *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)); *SEC v. Spartan Sec. Grp.*, No. 8:19-cv-448-T-33CPT, 2020 WL 7024885, at *3 (M.D. Fla. Nov. 30, 2020) (Covington, J.).  While the qualification inquiry is "not stringent," *id.*, "[t]estimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702," *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007).  Because Stevens is not qualified to opine on the specialized area of 510(k) clearance and technical issues requiring an engineering background, all of his opinions should be excluded.

### A.   Stevens Is Not Qualified to Opine on 510(k) Clearance Issues

"Even if [an expert] has special knowledge or general experience, the court must confirm that the [expert's] competence matches the subject matter of each opinion to be given."  *Companhia Energetica Potiguar v. Caterpillar Inc.,* NO. 14-CV-24277-MARTINEZ-GOODMAN, 2016 WL 7507848, at *3 (S.D. Fla. Aug. 1, 2016) (citing *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)).  An expert whose "experience is too general" and lacks sufficient knowledge of the subject area at issue in the litigation is not qualified under *Daubert*.  *Id.* at *7; *accord In re Trasylol*

*Prods. Liab. Litig.*, No. 1:08-MD-01928, 2010 WL 4053756, at *4 (S.D. Fla. May 17, 2010) (precluding expert qualified in the field of internal medicine from opining on effects of Trasylol where expert had neither prescribed Trasylol nor reviewed relevant literature prior to retention).  While Stevens has experience broadly with FDA regulations and practices, as explained below, he lacks the knowledge, skill, experience, training and education to opine on the specialized field of 510(k) clearance, and thus his opinions should be excluded.

   ***First***, Stevens's tenure at FDA is devoid of any experience reviewing 510(k) applications or making final 510(k) clearance determinations.  Stevens worked in FDA field offices in compliance and enforcement roles and has never worked at FDA headquarters where final 510(k) clearance decisions are made.  (*See* Ex. 2, Rep. at Ex. 3 (describing Stevens's qualifications); Ex. 3, Stevens Tr. 65:6-13.)  Nor did Stevens review 510(k) submissions while at FDA (*id.* 56:17-20), a gap in his experience that renders him unqualified to opine on 510(k) clearance under his own standard.[1]  To the extent Stevens on a few occasions while at FDA investigated whether a company operated without 510(k) clearance, this was as an "enforcement guy" and never as the decision-maker on whether 510(k) clearance was necessary, as that determination was made at FDA headquarters (where he never worked).  (*Id.*

---

[1] *See* Ex. 3, Stevens Tr. 17:4-14 ("Q. Do you consider [Ms. Rosecrans] to be an expert in 510(k) clearance? [A]. I'm not sure.  In other words, I don't know to what extent that she actually reviewed 510(k)s. I know she was an administrator over the 510(k) program, and that — I don't know what specific experience she had in reviewing actual 510(k)s.").

*(cont'd)*

57:17-58:10; 65:6-13.)  Stevens acknowledged that whatever limited knowledge he

had concerning 510(k)s did not come from his experience at the FDA, but rather

"came from my industry experience."[2]  (*Id.* 56:19-57:11.)

**Second**, Stevens's private sector experience with 510(k) clearance issues is

insufficient to qualify him as an expert.  During his 24-year career in the private

sector, Stevens has only drafted three 510(k) submissions, advised clients on three or

four occasions to seek 510(k) clearance and advised clients on two or three occasions

not to seek 510(k) clearance.  (*Id.* 70:21-74:21.)  Moreover, Stevens has no experience

with and has never advised a client on laparoscopic instruments (*id.* 70:17-20), and

the types of devices that Stevens advised on 510(k) issues (i.e. surgical gowns, laser

devices, ozone generating devices, massage devices and blood purification systems)

(*id.* 71:5-74:17), are very different from EndoWrists.  Because these devices, unlike

EndoWrists, are not designed to be used inside a patient during surgery, they

implicate very different performance and safety concerns.  Thus, Stevens's

experience is "too general" to permit him to opine on 510(k) clearance issues, and his

opinions should be excluded on this basis.[3]  *Companhia Energetica Potiguar*, 2016 WL

---

[2]  Although Stevens had some experience with the 510(k) clearance program while working at FDA between 1976 and 1982 as an advisor to small businesses, FDA had just instituted the pre-market notification process (including 510(k) review) at that time, and Stevens acknowledged that the 510(k) process had "evolved a lot since the original regulation was written."  (Ex. 3, Stevens Tr. 59:5-60:17.)  In any event, Stevens testified that his limited knowledge concerning 510(k)s has come from his private sector experience, rendering his early experience with the 510(k) program irrelevant.

[3]  Stevens only refers to his experience and not to his skill, training or education as the basis for his qualifications in his rebuttal report.  (Ex. 2, Rep. ¶¶ 3-20.)  In fact, on the critical issue of determining substantial equivalence, a finding FDA must make before providing 510(k) clearance to a device, 21 U.S.C. § 360c(f)(1), Stevens conceded he never received training on how to make this

*(cont'd)*

8

7507848, at *7 (excluding engineering expert who had general experience with diesel engines but lacked specific experience with their use in power plants).

*Third*, some of Stevens's opinions themselves demonstrate his lack of qualifications, as they reflect a fundamental misunderstanding of basic FDCA provisions. For example, a device is considered adulterated under Section 501(f)(1)(B) of the FDCA when a firm fails to obtain 510(k) clearance or PMA approval. 21 U.S.C. § 351(f)(1)(B). Under this statute, Rebotix would be marketing an adulterated device if it failed to obtain 510(k) clearance when it was otherwise required to. When asked about this statute, however, Stevens testified that he was unfamiliar with it and had not researched it. (Ex. 3, Stevens Tr. 192:9-193:4.) Moreover, his report reflects a complete lack of awareness of the statute as he refers to "misbranding" in the context of "'false or misleading' labeling" and "adulterated" in the context of "any filthy, putrid, or decomposed substance." (Ex. 2, Rep. ¶¶ 71-73.) Stevens's unfamiliarity with basic statutory provisions that an expert on 510(k)s should be well-versed in serves as a further ground to find him unqualified.[4] *See Cadwell v. Gen. Motors Corp.,* No. 5:04–CV–72 (WDO), 2005 WL 2811755, at *2

determination. (Ex. 3, Stevens Tr. 69:22-70:3.) To the extent that Stevens purports to rely on training he received on the 510(k) program when FDA had just instituted the pre-market notification process, such training is irrelevant as the 510(k) process has "evolved a lot since the original regulation was written." (*Id.* 60:4-10.)

[4] Stevens's unfamiliarity with fundamental FDCA requirements manifests itself in other opinions. For example, the FDCA permits the filing of a complete 510(k) statement in lieu of a 510(k) summary. 21 U.S.C. § 360c(i)(3); *see also* 21 C.F.R. § 807.93 (specifying the required elements of a 510(k) statement). Yet, in clear contravention of this statute, Stevens opines that 510(k) summaries *are required* as part of a 510(k) submission. (Ex. 3, Stevens Tr. 195:25-196:1.) Stevens also incorrectly opines that components of medical devices are not regulated as devices (*id.* 158:16-159:4) when the definition of device clearly encompasses "components." *See* 21 U.S.C. § 321(h)(1).

9

(M.D. Ga. Oct. 27, 2005) (an expert lacking familiarity with certain knowledge and information that an expert in his field should be proficient in is unqualified).

### B.    Stevens Is Not Qualified to Opine on Technical Issues Concerning the Interceptor or EndoWrists

Although Stevens has no engineering background (Ex. 3, Stevens Tr. 69:18-20, 118:11-18), he opines about numerous technical issues concerning EndoWrists and the Interceptor that require an engineering background, including that: (i) Rebotix's service procedure—including insertion of the Interceptor—does not change EndoWrists' performance or safety specifications (Ex. 2, Rep. ¶¶ 31, 79, 114, 117, 142); (ii) Intuitive's use limits are not driven by product safety considerations and Intuitive's testing demonstrates that EndoWrists could be safely used beyond their use limits (*id.* ¶¶ 118-120); (iii) Rebotix's life testing data sufficiently shows that its EndoWrist "repairs" would not affect the performance and reliability of the EndoWrists (*id.* ¶ 178); (iv) Rebotix performed "extensive reverse engineering and testing of EndoWrists" to "verify [their] component parts and materials" (*id.* ¶ 163); and (v) FDA did not require and did not approve EndoWrists with use limits (*id.* ¶¶ 118, 121-122, 126, 127).[5]  These opinions should be excluded for three reasons.

---

[5] Stevens concedes these opinions involve technical areas requiring an engineering background.  For example, when asked about the validation data required to determine the safety and effectiveness of EndoWrists, Stevens testified, "I'm not a mechanical engineer, I'm not a metallurgist, I'm not a catheter engineer, I'm not a surgical instrument engineer.  Those are engineering questions regarding reliability that go beyond my expertise, so I couldn't tell you what FDA would require." (Ex. 3, Stevens Tr. 228:25-229:16.)  Further, when questioned above FDA's review of use limits, Stevens acknowledged that FDA would require test data as part of 510(k) clearance to determine an EndoWrist's durability, and that he lacked the expertise to analyze such data to determine the number of times an EndoWrist could reliably be used.  (*Id.* 273:3- 274:25.)

*First*, as he concedes, Stevens is wholly unqualified to opine regarding technical issues requiring an engineering background.  Because Stevens lacks the "experience or training" needed "to competently testify," his opinions on these technical issues are inadmissible.  *Simon*, 2021 WL 268496, at *4; *see also Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV, 2006 WL 5100536, at *12, 15 (S.D. Fla. Jan. 6, 2006) (finding expert was unqualified to opine on a "wide array" of topics because the requisite "expertise" was "not discernible" from expert's "resume and relevant work history").

*Second*, Stevens offers no analysis to support his conclusions, but instead merely narrates selective facts in the record.  For example, despite contrary record testimony, Stevens uses snippets of an Intuitive deposition (taken out of context) to opine that Intuitive's use limits are not driven by product safety considerations and Intuitive's testing demonstrates that EndoWrists could be safely used beyond their use limits.  (Ex. 2, Stevens Rep. ¶ 120.)  Lacking any engineering background, Stevens is simply acting as a narrator of this testimony, not offering an opinion based on his knowledge and expertise.  Stevens's narration of the record in lieu of an opinion based on his expertise is inadmissible.  *See Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-cv-8645 (KBF), 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *aff'd sub nom. ScentSational Techs. LLC v. PepsiCo, Inc.*, 773 F. App'x 607 (Fed. Cir. 2019); *see also Bowe v. Pub. Storage*, No. 1:14-cv-21559-UU, 2015 WL 10857339, at *8 (S.D. Fla. June 2, 2015) (excluding opinions that were "not based on [] expertise" but, rather, "an improper presentation of hearsay evidence" under "the guise of an expert

11

opinion"); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d at 1337 (excluding expert's opinions where "the majority of the opinions fall outside the proper scope of expert testimony because they consist of a narrative of selected regulatory events and a summary of [defendant's] internal documents").

***Third***, because many of Stevens's opinions concerning these technical areas were adopted from Dr. Sharlin without any independent analysis, they should be excluded for that independent reason.  (*See infra* Section II.)

## II.   STEVENS'S ADOPTION OF DR. SHARLIN'S OPINIONS WITHOUT INDEPENDENT ANALYSIS RENDERS THEM UNRELIABLE

Reliability is determined based on four non-exhaustive factors, including: (i) whether the expert's "methodology" has been, or is capable of, "being tested"; (ii) whether the expert's technique has been subject to "peer review and publication"; (iii) the "known and potential error rate of the methodology"; and (iv) "whether the technique has been generally accepted in the proper scientific community."  *Simon*, 2021 WL 268496, at *4 (citations omitted).  This analysis "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'"  *Id.* (alteration in original) (citation omitted).  If "***any*** step" in the analysis is unreliable, the methodology suffers a "fatal defect" that precludes admission of the entire opinion.  *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005) (emphasis in original).

"An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence."  *Delta T, LLC*,

2021 WL 2103074, at *4 (citation omitted); *see also Sabal Trail Transmission, LLC v. 0.589 Acres of Land in Hamilton Cnty., Fla.*, No. 16-cv-277-J-34JBT, 2018 WL 3655556, at *7-8 (M.D. Fla. Aug. 2, 2018) (inappropriate parroting occurs when an expert "simply repeat[s] or adopt[s] the findings of another expert without attempting to assess the validity of the opinions relied upon" (citation omitted)).

Here, Stevens does just that by incorporating ***every single opinion*** in Dr. Sharlin's now-withdrawn report. (*See, e.g.*, Ex. 2, Stevens Rep. ¶ 30.) Dr. Sharlin's report is 73-pages long and relies on nine deposition transcripts (and accompanying exhibits), regulations and guidance documents and over two-thousand pages of documents produced in discovery. (*Id.* at Ex. 1 (Sharlin Report).) Nevertheless, Stevens was prepared to adopt the entirety of Dr. Sharlin's report after merely spending a few hours reviewing it, and before he had reviewed any other documents or information concerning the claims involved in this case, including those cited in the report. (Ex. 3, Stevens Tr. 22:1-23:15.) He then conducted a minimal review of "perhaps two dozen" documents underlying Dr. Sharlin's opinions and only consulted the documents if he had any questions, "[which] did not happen very often." (*Id.* 24:4-25:25.) Stevens adopted Dr. Sharlin's opinions despite being unaware of his experience at FDA or whether he had an engineering background (*id.* 101:11-20; 118:19-25), and despite never discussing Dr. Sharlin's report with him (*id.* 11:1-10).

Stevens's wholesale adoption of Dr. Sharlin's opinions, despite any independent evaluation, is improper parroting that warrants exclusion. *Riverside*

13

*Apartments of Cocoa v. Landmark Am. Ins. Co.*, No. 6:18-cv-1639-Orl-40DCL, 2020 WL 8184710 at *3 (M.D. Fla. Dec. 4, 2020) (excluding expert witness where "the foundation of his entire report" was a separate report and where witness "made no effort to independently verify its findings"); *Sabal*, 2018 WL 3655556, at *7 (excluding expert who merely "repeated the opinion of another expert [in an area outside of his expertise] without rendering any analysis of his own"); *Davis ex rel. J.D.D. v. Carroll*, 329 F.R.D. 435, 442 (M.D. Fla. 2018); *Malletier*, 525 F. Supp. 2d at 664; *cf. United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987) (affirming exclusion of expert testimony that was "nothing more than a personal vouching of one expert for another expert") (citation omitted).

Stevens's parroting of Dr. Sharlin is particularly improper where, as here, Rebotix withdrew Dr. Sharlin as its expert before Intuitive could depose him.  It is also improper because Stevens has no engineering background, but nevertheless draws extensively from Dr. Sharlin's technical opinions—which themselves are improper because Dr. Sharlin is not an engineer[6]—to opine on performance specifications, instrument failures and testing.  (*See* Ex. 2, Stevens Rep. ¶¶ 30, 142 (adopting Section 2.4.2 of Dr. Sharlin's report, which itself is 42-pages of technical analysis); *id.* ¶¶ 31, 79, 114, 117, 178, 163 (citing to Dr. Sharlin to conclude Rebotix's repair activities do no yield a significant change in safety and performance specifications).)

---

[6]  *See* Ex. 2, Rep. Exhibit 1 (Sharlin Report) ¶¶ 3-20.

Stevens also adopts Dr. Sharlin's opinions on whether Rebotix is engaged in commercial distribution without having the requisite qualifications or expertise to independently verify Dr. Sharlin's conclusion.  (Ex. 2, Rep. ¶¶ 31, 52 & n.3, 60, 78, 141, 168.)  Stevens concedes he would not be the person to determine whether a potential device was in commercial distribution and that was something for an FDA lawyer to determine.  (Ex. 3, Stevens Tr. 190:10-191:5.)  This opinion also should be excluded as improper parroting without independent evaluation.

## III.  STEVENS'S METHODOLOGY IS FURTHER UNRELIABLE BECAUSE IT RELIES ON ARGUMENTS PARROTED FROM REBOTIX AND USES *IPSE DIXIT* REASONING

Similar to his parroting of Dr. Sharlin, Stevens adopts arguments from Greg Fiegel based on a single discussion and without any independent verification or consideration of contrary facts in the record.  (Ex. 3, Stevens Tr. 40:23-43:18; 46:16-19.)  These arguments form the basis of Stevens's opinions concerning the Interceptor "repair" process and whether Rebotix needed 510(k) clearance.  Stevens's failure to consider any facts in the record while adopting Fiegel's biased arguments is *ipse dixit* reasoning that is inadmissible.  *See Morrow v. Brenntag Mid-South, Inc.,* 505 F. Supp. 3d 1287, 1290-93 (M.D. Fla. 2020) (excluding expert who "took [plaintiff] at his word" and admitted he did not "verify anything"); *Delta T, LLC,* 2021 WL 2103074, at *4; *Cano v. 245 C & C, LLC,* No. 19-cv-21826, 2021 WL 684188, at *7 (S.D. Fla. Feb. 19, 2021) (excluding expert who "simply parrot[ed] back what she was told by Plaintiffs without any attempt to test the validity or veracity of their claims"); *Martinez,* 2006 WL 5100536, at *14 (finding expert's methodology to be

15

"unreliable" when it rests on "unsupported and unverified assumptions," because such opinions "amount[] to nothing more than [the expert's] own *ipse dixit*").

*First*, Stevens opines that Rebotix did not "hold or offer for sale" the Interceptor (Ex. 2, Rep. ¶¶ 52 & n.3, 65, 173), which is a gating issue for parties considering 510(k) clearance. The sole basis for Stevens's understanding that "Rebotix's business is not selling interceptor boards or any other component parts to end users as part of Rebotix's services"[7] is Steven's conversation with Fiegel. (*Id.* ¶ 65; Ex. 3, Stevens Tr. 171:25-172:21.) Stevens had "no information on," "didn't explore" or "never evaluated" other key information, such as whether: (1) Rebotix conducted any "repairs" where no Interceptor was installed; (2) Rebotix charged a different price for a "repair" if an Interceptor was installed; (3) Rebotix specifically marketed the Interceptor as part of its "repair" service; or (4) Rebotix factored the Interceptor into its "repair" costs. (Ex. 3, Stevens Tr. 171:25-174:13; 178:19-179:12.) Due to this lack of investigation, Stevens was completely unaware of any contradictory evidence demonstrating that Rebotix offered for sale the Interceptor to end users. (*See, e.g.*, *id.* 174:17-178:18.)

*Second*, Stevens singularly relies on his conversation with Fiegel as support for his belief that the Interceptor does not increase the use count in EndoWrists beyond what it was originally set for, thus returning the EndoWrist to its original

---

[7] Based on his conclusion that that the Interceptor is not "held or offered for sale," Stevens opines repeatedly that Rebotix is not in the business of selling or offering for sale products, but instead merely servicing instruments. (*See, e.g.*, Ex. 2, Rep. ¶¶ 62, 70, 141.)

16

specifications.  (Ex. 2, Stevens Report ¶ 114; Ex. 3, Stevens Tr. 144:22-146:12.)

Based on this belief, Stevens opines that Rebotix's use of the Interceptor does not

change the intended use of EndoWrists.  Stevens performed no independent analysis

to verify this opinion.  (Ex. 3, Stevens Tr. 121:8-123:3.)  Nor did he acquire a basic

understanding on how the use counter and the Interceptor function.  (*Id.* 126:7-12.)

Here, too, Stevens is merely acting as a mouthpiece for Rebotix on what its "repair"

process purportedly does to EndoWrists without consideration of facts and data in

the record, rendering his opinions inadmissible *ipse dixit*.

    ***Third***, in his attempt to distinguish Rebotix, LLC's decision to seek 510(k)

clearance, Stevens relies on his conversation with Figiel and the self-serving

deposition testimony of two Rebotix employees to assert that Rebotix, LLC only

sought 510(k) clearance "in an abundance of caution" and that it withdrew its 510(k)

after a change in Rebotix's business model from selling remanufactured EndoWrist

instruments to servicing them.  (Ex. 2, Rep. ¶¶ 78, 142-43.)  Stevens did not review

any contemporaneous documents to verify these "facts," instead taking Fiegel at his

word.  (Ex. 3, Stevens Tr. 229:17-232:4.)

    The record contradicts Fiegel's one-sided views, showing: (i) FDA believed

Rebotix, LLC needed 510(k) clearance and told Rebotix multiple times it could not

market remanufactured EndoWrists until FDA permitted it; (ii) Rebotix, LLC

withdrew its 510(k) based on the "apparent magnitude" of the deficiency letter it

received from FDA that "threatened the feasibility" of them moving forward; and

(iii) Rebotix, LLC told FDA that it was planning to resubmit its 510(k) after it had

conducted the additional testing requested by FDA.  (*See* Ex. 3, Stevens Tr. Ex. 15 at

REBOTIX128997; Ex. 3, Stevens Tr. Ex. 14 at REBOTIX077730-31; Ex. 4 at

REBOTIX171076.)  When confronted with some of these documents, Stevens

walked back his opinion, admitting he was "not sure of all of the reasons why

[Rebotix, LLC] decided to withdraw the 510(k)."  (Ex. 3, Stevens Tr. 249:10-17.)

Stevens's parroting of Rebotix's representations without considering first-hand

evidence leads to critical analytical gaps that render his opinions unreliable.  For

example, Stevens opines that Rebotix is not a manufacturer because the Interceptor

is not a "device," and thus not subject to 510(k) clearance.  (Ex. 2, Rep. ¶¶ 34-56.)

To come to this conclusion, Stevens opines that the Interceptor does not "affect the

structure or any function of the body of a man or other animals," because "the

intended use of a usage counter is to count the number of times an object has been

connected to another object."  (*Id.* ¶ 43, Ex. 3, Stevens Tr. 141:7-18.)  Stevens based

this understanding on a conversation he had with someone at Rebotix (or its

counsel), or something he surmised on his own.  (Ex. 3, Stevens Tr. 121:10-122:13.)

But as Rebotix recognizes, the use counter does far more than just count uses;

critically, it causes the EndoWrist to be nonoperational when used the specified,

maximum number of times.  (ECF No. 1, Compl. ¶ 43.)  Thus, Rebotix's use of the

Interceptor to override use limits causes the EndoWrist to continue to be used in

surgery when it would otherwise cease to function.  Stevens refused to consider this

possibility, acknowledging that it was not "something that [he] addressed in [his]

report" (Ex. 3, Stevens Tr. 139:5-144:15), and even admitted he did not have an

18

understanding of how both the usage counter and the Interceptor worked (*id.* 126:7-11).  Stevens's failure to consider the actual functionality of the use counter and Interceptor prior to concluding that the Interceptor is not a medical device is *ipse dixit*, thus rendering his manufacturing opinions unreliable and inadmissible. *Morrow,* 505 F. Supp. 3d at 1291.

Stevens's remanufacturing opinions are also rife with *ipse dixit* that ignores first-hand evidence.  Stevens opines that Rebotix is not a remanufacturer because the insertion of the Interceptor to override use limits does not change the EndoWrists' intended use.  In doing so, Stevens relies solely on the "intended use/indications for use" statement contained in two 510(k) summaries.  (Ex. 2, Rep. ¶ 89.)  Because those few statements did not explicitly call out use limits, Stevens opines that use limits were not part of the EndoWrist's intended use.  (*Id.* ¶¶ 89-93.)  Stevens completely ignores the labeling submitted with Intuitive's 510(k) for EndoWrists that clearly denotes the use limits for the instruments, as well as a trove of other evidence in the 510(k) submissions reflecting EndoWrists as limited reuse devices.  (*See e.g.,* Ex. 3, Stevens Tr. Ex. 10 at Intuitive-00691808-09; Ex. 3, Stevens Tr. Ex.  11 at Intuitive-00515508-09, -00515535, -00515540, -00515546, -00515550, -00515556, -00515562, -00515567, -00515571, -00515575, -00515579; Ex. 3, Stevens Tr. Ex.  13 at Intuitive-00694248-00694300.)  Stevens's failure to apply the controlling regulation as written (i.e., 21 C.F.R. § 801.40, calling for a review of the labeling in determining a devices "intended use") and his cherry-picking of evidence causes his remanufacturing opinion to be unreliable.

19

In sum, Stevens simply cannot parrot his client's opinions and arguments without making any independent effort to substantiate this information.  Nor can he rely on *ipse dixit* to bridge the gaps in his analysis that have resulted in his failure to verify Rebotix's arguments with first-hand evidence from the record.  His manufacturing and remanufacturing opinions are thus not based on a reliable methodology, and should be excluded.

## IV.  STEVENS IMPROPERLY INCORPORATES THE DEUTSCHE BANK ANALYST REPORT INTO HIS OPINION

As part of his opinions, Stevens relies on the opinions of unnamed "FDA experts" set forth in a Deutsche Bank report, who apparently believe that companies like Rebotix do not require 510(k) clearance to perform their "repair" service on EndoWrists.  (Ex. 3, Stevens Tr. Ex. 17.)

This is a blatant attempt to introduce hearsay to the jury "under the guise that the testifying expert used the hearsay as the basis of his testimony."  *Malletier*, 525 F. Supp. 2d at 666.  While "Rule 703 provides that an expert may base an opinion on inadmissible facts or data," including hearsay, it must be "of a type ***reasonably relied*** upon by experts in the particular field in forming opinions or inferences upon the subject."  *Riverside Apartments of Cocoa*, 2020 WL 8184710 at *3 (emphasis added) (citations omitted).  "Though courts have afforded experts a wide latitude in picking and choosing the sources on which to base opinions, Rule 703 nonetheless requires courts to examine the reliability of these sources."  *Id.* (citation omitted).

20

Stevens is not relying on the Deutsche Bank report itself for any facts or data in forming his own opinions. Rather, just as he did for statements made to him by Dr. Sharlin and Fiegel, Stevens incorporates wholesale the opinions expressed by the unnamed "FDA experts" cited therein. (Ex. 2, Rep. ¶¶ 61, 152.) The sole purpose of Stevens's reliance on this report is to be able to claim that his own views reflect a "consensus opinion" view amongst FDA experts. (*Id.*) But as Stevens's testimony reveals, he has no basis to claim that a few unnamed "FDA experts" cited in the report represent the consensus opinion among all FDA experts—or even that the unnamed "FDA experts" are actually experts at all. (Ex. 3, Stevens Tr. 257:8-260:12.) Stevens only found the information in the report to be "useful" simply because it "agreed with what [he] concluded." (*Id.* 53:23-54:3.)

Moreover, there is no evidence that the analyst reports like the one prepared by Deutsche Bank are relied on by FDA experts. To the contrary, Stevens testified that he could not recall whether he ever relied on an analyst report for his opinion on an FDA issue. (Ex. 3, Stevens Tr. 52:13-54:22.) He only received and used the Deutsche Bank report because Rebotix's counsel sent it to him—not because he requested those types of materials be provided. (*Id.* 28:7-29:8.)

Finally, the Deutsch Bank report is unreliable as there is no basis to determine the credibility of the report or the qualifications of the so-called "FDA experts" cited therein. Stevens testified he did not know who the referenced unnamed "FDA experts" were, how many experts were interviewed, what their relevant background

21

or experience was or what information they were given for the purposes of reaching their opinion.  (*Id*. 257:20- 260:12.)

## V.     STEVENS'S AFFIRMATIVE TESTIMONY SHOULD BE EXCLUDED

Rebuttal experts must limit their opinions to those which rebut the testimony offered by their counterparty and may not opine on matters outside of the scope of their counterparty's expert report.  *See Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1302 (N.D. Fla. 2017).  Accordingly, rebuttal experts may not introduce or advance any new arguments or new evidence that was not contained in the initial expert report that they purport to rebut.  *Kroll v. Carnival Corp.*, No. 19-23017-CIV-GOODMAN, 2020 WL 4793444, at *4 (S.D. Fla. Aug. 17, 2020).

Stevens was engaged by Rebotix to provide a rebuttal report to Rosecrans's expert report.  (Ex. 3, Stevens Tr. 20:11-12; Ex. 2, Rep. ¶ 1.)  However, Stevens includes numerous opinions which do not rebut the opinions expressed by Rosecrans and instead assert affirmative arguments on behalf of Rebotix.  Stevens himself testified that his rebuttal to Rosecrans's report begins in Section IV of his report (Ex. 3, Stevens Tr. 16:2-16), meaning ***Section III*** of his report constitutes affirmative testimony ***not offered in rebuttal to Rosecrans***.  Moreover, Rosecrans did not opine on whether the Interceptor significantly changes the safety or performance specifications of EndoWrists.  (Ex. 1, Rosecrans Rep. ¶ 108 n. 130.)  All portions of Stevens's report opining on these topics fall outside the scope of the rebuttal, and should be excluded.

22

## <u>CONCLUSION</u>

For the foregoing reasons, Intuitive respectfully requests that Rebotix

proffered expert J. Lawrence Stevens be excluded from testifying in this matter.

## <u>LOCAL RULE 3.01(G) CERTIFICATE OF COMPLIANCE</u><br><u>WITH GOOD FAITH CONFERENCE</u>

Consistent with the Court's Amended Case Management and Scheduling

Order, ECF No. 90, Intuitive certifies that its counsel conferred by telephone with

Rebotix's counsel regarding this motion on November 15, 2021.  The parties were

unable to agree on the resolution of the motion.

DATED: November 17, 2021                    Respectfully submitted,

                                            /s/ Karen Lent
                                            KAREN HOFFMAN LENT
                                            NY Reg. No. 3058021 (*Pro Hac Vice*)
                                            SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                            One Manhattan West
                                            New York, NY 10001
                                            Tel: (212) 735-3000
                                            karen.lent@skadden.com

                                            ALLEN RUBY
                                            CA Bar No. 47109 (*Pro Hac Vice*)
                                            ALLEN RUBY, ATTORNEY AT
                                            LAW
                                            15559 Union Ave. #138
                                            Los Gatos, CA 95032
                                            Tel: (408) 477-9690
                                            allen@allenruby.com

                                            LANCE A. ETCHEVERRY
                                            CA Bar No. 199916 (*Pro Hac Vice*)
                                            SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                            525 University Avenue
                                            Palo Alto, CA 94301
                                            Tel: (650) 470-4500
                                            lance.etcheverry@skadden.com

                                            DAVID L. McGEE
                                            Fla. Bar No. 220000
                                            BEGGS & LANE, RLLP
                                            501 Commendencia Street
                                            Pensacola, FL 32502
                                            Telephone: (850) 432-2451
                                            dlm@beggslane.com

                                            *Counsel for Intuitive Surgical, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, I caused **INTUITIVE SURGICAL, INC.'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF J. LAWRENCE STEVENS** to be served on the following counsel of record by email:

Gregory Dovel                          greg@dovel.com
Richard Lyon                          rick@dovellaw.com
Alexander Erwig                    alexander@dovel.com
David Luikart, III                   dave.luikart@hwhlaw.com

<u>/s/ Karen Lent</u>
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com