# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC, <br><br> Plaintiff, <br><br> vs. <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. | Case No.: 8:20-cv-02274 |

**Rebotix's opposition to Intuitive's motion to exclude the expert opinions of Dr. Larry Chiagouris**

Plaintiff Rebotix Repair, LLC responds in opposition to Defendant Intuitive Surgical, Inc.'s motion to exclude certain opinions of Dr. Larry Chiagouris.

## I. Introduction.

Intuitive's expert, Dr. Sara Parikh, conducted a survey purporting to measure how prospective customers of Rebotix's services perceive Rebotix's advertising. Dr. Chiagouris is a marketing and survey research expert retained by Rebotix to rebut Dr. Parikh's survey and testimony. Dr. Chiagouris analyzed Dr. Parikh's report and the factual record, and offered his opinions about flaws in Dr. Parikh's survey and methodology.

Intuitive seeks to exclude three opinions from Dr. Chiagouris' report: (1) that Dr. Parikh's survey "likely used the wrong survey population" by focusing on surgical staff rather than hospital administrators who would make the decision to purchase Rebotix's services (Ex. 1 Chiagouris Report ¶¶25-43); (2) that the advertising flyer that Dr. Parikh tested in her survey does not reflect Rebotix's actual advertising (Ex. 1 ¶¶64, 74-79, 80-85); and (3) that due to flaws Dr. Chiagouris identified in Dr. Parikh's survey, the survey does not "provid[e] insight as to the matter that is being litigated" (*Id.* ¶¶66, 87-88). Mot. at 5. Intuitive argues that these opinions should be excluded because they are not confined to critiquing the design of Dr. Parikh's survey and thus exceed Dr. Chiagouris' expertise.

Intuitive's arguments fail. These three opinions of Dr. Chiagouris fall squarely within his expertise in analyzing and critiquing surveys.

First, using the correct survey population is a crucial part of survey design. Answers from irrelevant respondents may provide misleading results and fail to provide insight on the market tested. Dr. Parikh's survey is intended to measure how prospective customers of Rebotix's services think. But Dr. Chiagouris found that Dr. Parikh's survey population did not focus on prospective Rebotix customers, the hospital administrators who make purchasing decisions. Instead, Dr. Parikh's population was mostly made of healthcare professionals—doctors and nurses—who play a less important role in purchasing decisions.

Second, testing a stimulus that represents market conditions is another important part of survey design. To evaluate a survey, experts must determine whether that stimulus is representative of marketplace conditions. Dr. Parikh's survey only tested one stimulus, a Rebotix flyer. Dr. Chiagouris' opinion that this stimulus does not reflect marketplace conditions—because it does not reflect how Rebotix actually markets to customers—critiques an important aspect of Dr. Parikh's survey design. And courts routinely hold that market research experts like Dr. Chiagouris may evaluate surveys without also being an expert in the underlying product market.

Third, Dr. Chiagouris did not offer improper legal conclusions. Dr. Chiagouris' opinion is that due to critical flaws, Dr. Parikh's survey does not "provid[e] insight as to the matter being litigated." Ex. 1 ¶88. Intuitive has cherry-picked quotes containing the words "legal" and "litigated." But Dr. Chiagouris' opinions simply mean, as he summarized, that Dr. Parikh's survey "does not provide

2

valid insight as to the matters for which the Dr. Parikh Report survey was designed." Ex. 1 ¶23.  And it is within his expertise to find that a survey that fails to reflect marketplace conditions does not provide insight into that market.

## II. Argument

"[E]xpert testimony may be admitted if three requirements are met.  First, the expert must be qualified to testify competently regarding the matter he or she intends to address.  Second, the methodology used must be reliable as determined by a *Daubert* inquiry.  Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).  The three requirements are referred to as "qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  Rebuttal expert testimony must also be "intended solely to contradict or rebut on the same subject matter identified by another party."  Fed R. Civ. P. 26(a)(2)(D)(ii).

### A. Dr. Chiagouris is qualified to offer the challenged opinions.

An expert may be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Consumer surveys are a form of marketing research. As such, a survey expert may be qualified "by knowledge, skill, experience, training, or education" in the field of marketing research. *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing Fed. R. Evid. 702).

3

Courts routinely find that survey experts are qualified to conduct and evaluate surveys, even though they do not have expertise in the underlying product market that is being surveyed. *See e.g. Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at *32 (M.D. Fla. Aug. 31, 2017) (the expert is qualified to conduct a survey on consumer reactions to models' likenesses on a resort's advertisement, without any expertise in hospitality); *Herman Miller v. Belnick Llc*, No. 1:18-cv-05012-WMR, 2021 U.S. Dist. LEXIS 119298, at *7 (N.D. Ga. Jan. 11, 2021) (rejecting arguments that a survey expert who opined on the likelihood of confusion between two brands of chairs is "not qualified to opine on the furniture market or the marketplace conditions"). Survey experts only have to be qualified in "the market research that is necessary to conduct such surveys." *Herman Miller v. Belnick Llc*, No. 1:18-cv-05012-WMR, 2021 U.S. Dist. LEXIS 119298, at *8 (N.D. Ga. Jan. 11, 2021).

Dr. Chiagouris is highly qualified in marketing and survey research. Dr. Chiagouris' academic career in marketing research extends more than 25 years, and he is currently a full-time tenured professor at Lubin School of Business, Pace University. Ex. 1 ¶6, 13. He lectures on marketing, branding, advertising, and survey research methods. *Id.* ¶13. He also has work experience in market research at Fortune 500 companies and was appointed as a representative for the American Marketing Association to the United States Census Bureau on its plans for conducting the census. *Id.* ¶12.

4

Intuitive does not dispute Dr. Chiagouris' qualifications in market and survey research. Instead, Intuitive claims that Dr. Chiagouris is not qualified to evaluate whether Dr. Parikh surveyed the right population because he is not also "an expert in hospital instrument procurement." Mot. at 8. And Intuitive argues that Dr. Chiagouris is not qualified to evaluate whether Dr. Parikh's survey tested the right stimulus because he "has no expertise in marketing, selling, or advising about robotic surgical devices and instruments." Mot. at 8. Intuitive's arguments fail. Dr. Chiagouris critiqued key aspects of Dr. Parikh's survey design using methods that survey experts routinely use when evaluating survey designs. To render these opinions, Dr. Chiagouris need only be qualified in "the market research that is necessary to conduct such surveys." *Herman Miller v. Belnick Llc*, No. 1:18-cv-05012-WMR, 2021 U.S. Dist. LEXIS 119298, at *8 (N.D. Ga. Jan. 11, 2021). He does not also need to be an expert in the underlying product or service market.

None of the cases Intuitive cites hold otherwise. Intuitive relies on three inapposite cases, none of which deal with survey experts. In the first case, the court found that a physician's medical knowledge did not qualify him "to testify regarding whether conduct qualifies as fraud." *Simon v. HealthSouth of Sarasota Ltd. P'ship*, No. 8:12-cv-236-VMC-AEP, 2021 U.S. Dist. LEXIS 15175, at *9 (M.D. Fla. Jan. 27, 2021). In the second, the court held that "expertise in colorimetry does not establish . . . expertise as a statistician." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007). In the third, an expert was found unqualified because he "offer[ed] no defense of his own expertise" and the court could not

5

discern any expertise in any relevant field. *Martinez v. Rabbit Tanaka Corp.*, No. 04-61504-CIV, 2006 U.S. Dist. LEXIS 97084, at *35 (S.D. Fla. Jan. 5, 2006). None of these cases even relate to, much less support, Intuitive's argument that a survey expert qualified in marketing research must also be an expert in the underlying product market that is being surveyed.

### B. Dr. Chiagouris' opinions are reliable.

The focus of reliability is on "principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). The trial judge "must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999). *Daubert* set forth certain factors that may bear on the reliability of expert testimony, such as "whether a theory or technique… can be (and has been) tested" and the method's "degree of general acceptance" within the relevant discipline. *Daubert,* 509 U.S. at 593-94. The reliability inquiry is a flexible one, and depends on the "particular circumstances of the particular case at issue." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

#### 1. Dr. Chiagouris applied generally accepted survey research standards to critique Dr. Parikh's survey.

Dr. Chiagouris' opinions are reliable because they are based on the consistent application of generally accepted survey research standards. *Daubert,* 509 U.S. at 593-94. Throughout his report, Dr. Chiagouris used standards set forth in the Manual for Complex Litigation, 4th ed., 2004 and the "Reference Guide on Survey

6

Research" by Shari S. Diamond, J.D., Ph.D., in the Reference Manual on Scientific Evidence, 3d ed., Federal Judicial Center, 2011.  Courts regularly use the Manual for Complex Litigation, and the Reference Guide on Survey Research, to judge the reliability of survey-based testimony.  *See, e.g.*, *Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at *32 (M.D. Fla. Aug. 31, 2017); *Off Lease Only, Inc. v. Lakeland Motors, LLC*, No. 6:18-cv-1555-Orl-37DCI, 2019 U.S. Dist. LEXIS 218061, at *7 (M.D. Fla. Dec. 19, 2019); *Native Am. Arts, Inc. v. Bud K World Wide, Inc.*, No. 7:10-CV-124 (HL), 2012 U.S. Dist. LEXIS 69715, at *14 (M.D. Ga. May 18, 2012).

In the opinions that Intuitive challenges, Dr. Chiagouris addresses key factors that experts must consider in evaluating a survey, according to standards of survey design.  And Dr. Chiagouris compares the approach used by Dr. Parikh to those generally accepted standards and sets out why the approach fails to meet them.

In the first opinion that Intuitive seeks to exclude, Dr. Chiagouris opined that Dr. Parikh's survey "likely used the wrong survey population," addressing a key aspect of survey design.  Ex. 1 ¶¶25-43.  Dr. Chiagouris drew from the widely-accepted principle that the "relevant population chosen for a survey is crucial because there may be systematic differences in the response of members of the population and non-members." Ex. 1 ¶25, n. 4.  And Dr. Chiagouris evaluated Dr. Parikh's report against the standard that a "valid sample" should consist of respondents among "the target population universe."  *Id.* ¶29, n. 6; *see Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at

7

\*33 (M.D. Fla. Aug. 31, 2017) (quoting Manual for Complex Litigation, § 11.493 Sampling/Opinion Surveys (4th ed. 2004)) (A survey expert must ensure that "the population was properly chosen and defined" and "the sample chosen was representative of that population."). This analysis requires the expert to determine whether "the relevant group of prospective customers" was surveyed. *Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at \*33 (M.D. Fla. Aug. 31, 2017).

Dr. Chiagouris examined Dr. Parikh's survey to determine whether Dr. Parikh surveyed the relevant group of prospective customers. Dr. Chiagouris found that Dr. Parikh's sample "included primarily healthcare providers." Ex. 1 ¶¶30-31. But the evidence indicated that business and finance professionals at hospitals are more important to purchasing decisions than healthcare providers (surgeons and nurses). *Id.* ¶¶30, 32, 35-36. Thus, Dr. Chiagouris opined that Dr. Parikh's survey had failed to comply with the requirement of surveying the relevant group. *Id.* ¶¶39-42. That opinion does not go beyond evaluating Dr. Parikh's survey design. It is impossible to properly evaluate a consumer survey without first identifying the right population universe. *Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at \*33 (M.D. Fla. Aug. 31, 2017) (quoting Manual for Complex Litigation, § 11.493 Sampling/Opinion Surveys (4th ed. 2004)). And this requires the expert critiquing a survey to determine whether respondents were representative of likely customers, which Dr. Chiagouris did.

In the second opinion that Intuitive challenges, Dr. Chiagouris addressed another critical part of survey design. He drew from the widely-accepted principle in survey research that a survey must reflect characteristics of a market to provide insight into that market. *Native Am. Arts, Inc. v. Bud K World Wide, Inc.,* No. 7:10-CV-124 (HL), 2012 U.S. Dist. LEXIS 69715, at *15 (M.D. Ga. May 18, 2012) ("[A] survey must resemble the way consumers would view the products in the marketplace."); *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV-LENARD/GOODMAN, 2016 U.S. Dist. LEXIS 192613, at *37 (S.D. Fla. Jan. 7, 2016) ("a survey must use a stimulus that, at a minimum, tests for confusion by roughly simulating the market"); "Guidelines for Market Research," The Advertising Research Foundation, August 2003, at 15 ("[B]ehavior is ideally measured under 'real-life' conditions . . . similar to that in which the consumer normally interacts with the marketing product or activity under study.") Thus, to evaluate a survey, an expert must determine whether the stimulus chosen for the survey was representative of marketplace conditions.

Dr. Chiagouris opined that the stimulus chosen by Dr. Parikh was not representative of marketplace conditions. Ex. 1 ¶¶64, 74-85. Specifically, Dr. Chiagouris found that Dr. Parikh tested a single, outdated flyer from Rebotix's marketing materials. *Id.* ¶¶74-75. But in its actual marketing, Rebotix used other, more detailed materials and verbal communications. *Id.* ¶¶77-78. Thus, Dr. Chiagouris opined that Dr. Parikh's survey failed to reflect marketplace conditions. This opinion does not exceed the scope of evaluating Dr. Parikh's survey. To the

9

contrary, to properly evaluate a survey, an expert must consider whether the survey is reflective of marketplace conditions. *Native Am. Arts, Inc. v. Bud K World Wide, Inc.*, No. 7:10-CV-124 (HL), 2012 U.S. Dist. LEXIS 69715, at *15 (M.D. Ga. May 18, 2012); *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV-LENARD/GOODMAN, 2016 U.S. Dist. LEXIS 192613, at *37 (S.D. Fla. Jan. 7, 2016).

### 2. Intuitive's arguments on reliability fail.

Intuitive does not dispute that Dr. Chiagouris reliably drew from widely accepted standards in survey research. Instead, Intuitive criticizes Dr. Chiagouris' sources in determining which population is more important to hospitals' purchasing decisions. Mot. at 12-14.

Intuitive takes issue with the fact that Dr. Chiagouris cited deposition testimony and discussions with Glenn Papit, Rebotix's Vice Present of Marketing. Mot. at 14. Intuitive asserts that Papit is an "interested witness" in this litigation. Mot. at 12. But Papit is uniquely positioned to know which hospital employees decide to purchase Rebotix's services since he speaks to prospective buyers as Rebotix's marketing representative. Ex. 4 (Chiagouris Depo) 13:7-10 (Papit "initiated contacts with prospects for Rebotix.") Intuitive's survey expert, Dr. Parikh, also determined her population universe based on Papit's testimony. Ex. 2 (Parikh Report) ¶15, n. 5. In fact, Intuitive's counsel provided Dr. Parikh with Papit's deposition when she asked for "relevant excerpts around the target population or universe." Ex. 3 (Parikh Depo) 20:13-21:10. Both Intuitive's survey

10

expert and Intuitive's counsel consider Papit to be a reliable source on the population that purchases Rebotix's services.

Intuitive also takes issue with Dr. Chiagouris' use of Papit's weekly planner. Intuitive's argument is based on an incomplete and misleading account of what occurred at Dr. Chiagouris' deposition. Intuitive asserts that "Chiagouris had not seen Mr. Papit's weekly planner prior to the preparation of his report… and had no knowledge as to the original source, accuracy, or completeness of the document compiled by counsel." Mot. at 15. But these claims are based on a moment in Dr. Chiagouris' deposition when a key document had inadvertently not been identified. At that time, Dr. Chiagouris did not recognize the exhibit that Intuitive showed him and said that he did not "know where that material came from." Ex. 4 141:6-18. But when the correct exhibit was identified, Dr. Chiagouris recognized it and confirmed that he had used that document to prepare one of the exhibits to his report. *Id.* 129:2-21, 143:15-144:24, 142:19-143:20. Intuitive used Dr. Chiagouris' testimony out of context and ignored the subsequent correction.

Each of Intuitive's criticisms go to the weight of Dr. Chiagouris' conclusions, rather than the reliability of his methodology. Dr. Chiagouris "identified the foundations and reasoning behind his opinions," and Intuitive is "free to" cross-examine him and "challenge these foundations during trial." *Ramirez v. E.I. du Pont de Nemours & Co.*, 579 F. App'x 878, 882 (11th Cir. 2014); *McGarity v. FM Carriers, Inc.*, No. CV410-130, 2012 U.S. Dist. LEXIS 41356, at *21 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the

11

role of cross-examination and does not render expert testimony inadmissible under *Daubert*.")

### C. Dr. Chiagouris' opinions are helpful.

To be helpful, expert testimony must "assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993). Expert testimony is helpful if it "offer[s] insights beyond the understanding and experience of the average citizen." *Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at *22 (M.D. Fla. Aug. 31, 2017) (quoting *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)).

A survey expert's critique of another survey is beyond the experience of the average citizen, and helpful to the trier of fact. *See Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 U.S. Dist. LEXIS 220882, at *38 (M.D. Fla. Aug. 31, 2017); *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV-LENARD/GOODMAN, 2016 U.S. Dist. LEXIS 192613, at *45 (S.D. Fla. Jan. 7, 2016) (finding that an expert "explain[ing] why he believes the alleged flaws in [a survey expert's] survey are important and why the bias the results" is "appropriate rebuttal testimony" that "would be helpful to the jury").

Dr. Chiagouris' opinions are helpful because they concern matters in his expertise of marketing and survey research, which is generally beyond the understanding of the average layperson. His opinions assist the jury in understanding particular survey standards and how Dr. Parikh's failed application of those standards renders her survey unreliable or misleading. And as discussed, Dr.

12

Chiagouris' opinions rely on his experience and widely accepted standards in survey research. Courts have repeatedly found that such survey experts satisfy the helpfulness requirement.

Intuitive argues that Dr. Chiagouris' opinions are not helpful because he merely "repeated assertions… without any effort to verify [their] accuracy or completeness." Mot. at 11-12. This argument fails as a matter of law. Helpfulness to a jury does not require completeness or perfect accuracy. It merely requires that the opinions be "helpful to the jury." *Wreal*, No. 14-21385-CIV-LENARD/GOODMAN, 2016 U.S. Dist. LEXIS 192613, at *45.

Moreover, Dr. Chiagouris did not simply repeat assertions or engage in "blind reliance on Rebotix and its counsel." Mot. at 11. Instead, Dr. Chiagouris reviewed a range of sources to assess and critique Dr. Parikh's survey. For example, Dr. Chiagouris:

(1) spoke to Rebotix's marketing representative, Glenn Papit, about Rebotix's customer base. Mr. Papit indicated that the hospital personnel who decided whether to purchase Rebotix's services were almost always "business and finance purchasing professionals," not "surgeons or nurses." Ex. 1 ¶35.

(2) read Mr. Papit's deposition, in which Papit reiterated that business and finance professionals were primarily responsible for making hospital purchasing decisions. *Id.*

13

(3) reviewed Papit's weekly appointment book, which confirmed that the individuals Papit met with to discuss Rebotix's services were primarily business and finance professionals at hospitals, rather than surgeons or nurses. *Id.* ¶36.

(4) consulted relevant literature on hospital procurement, including articles from a sales consulting firm and a healthcare analytics company. *Id.* ¶¶30-31, n. 7, 8. Both articles emphasized "the greater importance of business and finance professionals related to hospital purchasing decisions." *Id.* ¶30.

Dr. Chiagouris used his expertise to evaluate each of these sources and generally accepted survey methodology. And he then critiqued Dr. Parikh's survey based on generally accepted survey standards and the factual record. He did not merely repeat information that he learned from each source. This type of critique of another expert's survey approach is helpful to the trier of fact. *See Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2019 U.S. Dist. LEXIS 230212, at *17 (S.D. Fla. Feb. 28, 2019) (due to the expert's "extended experience in survey methodology," his "critique of Buncher's survey will be helpful to the trier of fact").

> **D.  Dr. Chiagouris' opinion that Dr. Parikh's survey fails to provide insight into the matter surveyed is properly confined to critiquing Dr. Parikh's survey.**

Finally, Intuitive seeks to exclude Dr. Chiagouris' opinion that due to flaws in Dr. Parikh's survey, the survey is "not relevant to the current legal matter" and does not "provid[e] insight as to the matter that is being litigated" (Ex. 1 ¶¶87-88). Mot. at 19-20. Intuitive argues that these opinions are improper legal conclusions, which experts may not make, rather than critiques of Dr. Parikh's survey design. *Id.*

14

Intuitive has taken these quotes out of context. Intuitive cherry-picked phrases containing the words "legal" or "litigated." But in each instance, the quoted statements simply mean, as Dr. Chiagouris summarized, that Dr. Parikh's survey "does not provide valid insight *as to the matters for which the Parikh Report survey was designed*." Ex. 1 ¶23 (emphasis added).

Specifically, the quotes that Intuitive challenges are in the section of Dr. Chiagouris' report finding that Dr. Parikh's report "is based on a flawed design which is not representative of the characteristics of the marketplace." *Id.* ¶¶63-64. Here, Dr. Chiagouris opined that Dr. Parikh's survey "tested advertising in a manner wholly unreflective of real-world advertising by Rebotix." *Id.* ¶79. This led Dr. Chiagouris to the conclusion that the survey "does not provide information about how prospective Rebotix customers would respond to Rebotix's advertising"—which is the subject matter that Dr. Parikh's survey was designed to test. *Id.* In short, Dr. Chiagouris opined in the challenged quotes that, due to the design flaws, Dr. Parikh's survey fails to test what it intended to test. Thus Dr. Chiagouris' opinion is properly confined to critiquing Dr. Parikh's survey design, and not an improper legal conclusion.

### III.  Conclusion

For the foregoing reasons, Rebotix respectfully requests that the Court deny Intuitive's motion to exclude three of Dr. Chiagouris' opinions. Contrary to Intuitive's arguments, the opinions are properly confined to critiquing Dr. Parikh's survey. In these opinions, Dr. Chiagouris: (1) criticized Dr. Parikh's survey

15

population and sample, (2) criticized the tested stimulus in Dr. Parikh's survey, and (3) opined that due to design flaws, Dr. Parikh's surveys failed to provide insight into the matters for which the survey was designed. These opinions fall squarely within a critique of Dr. Parikh's survey design and Dr. Chiagouris' survey research expertise.

Date: December 8, 2021          Respectfully submitted,

*/s/ Richard Lyon*
Richard Lyon
California Bar No. 229288 (*pro hac vice*)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066

COUNSEL FOR PLAINTIFF
REBOTIX REPAIR LLC