# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

REBOTIX REPAIR LLC,

                Plaintiff,

vs.

                                                 Case No.:  8:20-cv-02274

INTUITIVE SURGICAL, INC.,

                Defendant.

## Rebotix's reply in support of its motion for summary judgment

I.   **Intuitive's counterclaims and affirmative defense based on Rebotix's purported non-compliance with the FDCA cannot proceed in this Court.**[1]

A.   **Intuitive's "other categories of deceptive statements" argument fails.**

Intuitive asserts that, out of the "categories of [allegedly] deceptive statements identified in Intuitive's counterclaims, only one refers to 510(k) clearance." Opp. 21-22. Intuitive then argues that these other theories (i.e., those based on statements unrelated to FDA clearance) survive summary judgment. *Id.* But Rebotix's motion does not seek to dispose of these other theories. Instead, Rebotix seeks summary judgment only "to the extent [Intuitive's counterclaims and defenses] are based on Intuitive's allegations that Rebotix does not comply with FDA regulations." Mot. 1.[2]

B.   **Claims that require an original determination of non-compliance with the FDCA are precluded.**

The Eleventh Circuit has repeatedly "recognize[d] that Lanham Act claims may be barred" when, like here, their "resolution requires" determining whether a device or service "can be lawfully marketed under the FDCA" because that "original determination … is committed to the FDA." *Belcher Pharm., LLC v. Hospira, Inc.*, 1 F.4th 1374, 1380-81 (11th Cir. 2021); *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1198 (11th Cir. 2018). Intuitive argues that this "may no longer be good law"

---

[1] Intuitive's Statement of Facts includes several inaccuracies and mischaracterizations that we do not address in this Reply. We only address facts that are directly relevant to resolution of this Motion.

[2] A party "may move for summary judgment" on any "part of each claim or defense." Fed. R. Civ. Proc. 56(a) (emphasis added). For example, in *Decamp*, the plaintiffs argued that State Farm "acted in bad faith by (1) failing to advise and communicate . . . sufficiently and (2) refusing to pay for the costs of establishing . . . [a] trust." *Decamp v. State Farm Fire & Cas. Co.*, No. 8:20-cv-1747-VMC-TGW, 2021 U.S. Dist. LEXIS 217616, *25 (M.D. Fla. Nov. 10, 2021). This Court found that the first theory failed as a matter of law, but the second did not, and thus granted partial summary judgment only "to the extent" the claims were based on the first theory. *Id.* at *27.

following the Supreme Court's decision in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014).  Opp. 19, 27, n.11.

Intuitive is wrong.  The Eleventh Circuit has twice considered *POM Wonderful* and twice concluded that it has no impact on the controlling principle here.  First, in *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018), the court explained that *POM Wonderful*, "made clear" that "the [FDCA] does not generally bar claims of false advertising of food under the Lanham Act;" however, "[t]he rule in *Hodges Consulting* [continues to preclude] claims that would circumvent the FDA's exclusive enforcement authority" by "seeking to prove that [d]efendants violated the FDCA, when the FDA did not reach that conclusion."  *Id*. at 1198 (internal quotations omitted).  Second, in *Belcher Pharm., LLC v. Hospira*, Inc., 1 F.4th 1374, 1381 (11th Cir. 2021), the court reiterated that "*POM Wonderful*'s rule" is "that the FDCA does not categorically preclude Lanham Act claims" but that there is an "exception[]" to that rule when a claim would require the court to "make an original determination on an issue committed to the FDA's discretion."  *Id*. at 1380-81.[3]

Rebotix demonstrated how the facts before this Court mirror the facts in *PhotoMedex*.  Mot. 13-14, 16-18.  Intuitive now argues that Rebotix's "reliance on *PhotoMedex*" is "misplaced" because a California district court suggested that *POM*

---

[3] *POM Wonderful* did not address this exception because the claim at issue did not require a determination that Defendant violated FDA regulations.  Rather, Plaintiff alleged that a competitor misrepresented its juice as "pomegranate-blueberry" when it was actually a "blend of five juices" with only "0.3% pomegranate juice and 0.2% blueberry juice."  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 105 (2014).  Because a court could decide whether this was misleading without deciding whether Defendant violated the FDCA, the "Lanham Act" claim in *POM Wonderful* could "coexist[]" with "the FDCA" without "undermining an agency judgment."  *Id*. at 120.

*Wonderful* had overruled *PhotoMedex*. Opp. 19. This district court opinion has no relevance here because the Eleventh Circuit has concluded the opposite. Even after *POM Wonderful*, "our own Court [the Eleventh Circuit] has approvingly cited … *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 928 (9th Cir. 2010)," for its holding that "Lanham Act claims may be barred if their resolution requires an original determination" on "whether [a device] can be lawfully marketed under the FDCA." *Belcher Pharm., LLC v. Hospira*, Inc., 1 F.4th 1374, 1380-81 (11th Cir. 2021); *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018).

As detailed throughout the summary judgment and *Daubert* briefing, Intuitive seeks an original determination—as part of its false advertising claims, its unclean hands defense, and its antitrust standing argument—that Rebotix violated the FDCA by marketing its service without 510(k) clearance. Dkt. 60, ¶47, p.24; Dkt. 117 at 19-23; Dkt. 110.[4] But as Judge Wetherell correctly held in *Restore* when applying Eleventh Circuit law, whether "FDA approval—510(k) clearance in particular—is [] required" is an issue that only the "FDA may decide" and "the Court will not do so." *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19cv55-TKW-MJF, 2019 U.S. Dist. LEXIS 228086, at *6-7 (N.D. Fla. Nov. 14, 2019).

---

[4] The two preemption cases cited by Intuitive (Opp. 18) have no relevance here because neither required the court to make an original determination about whether the product violated FDA regulations. In *Lefaivre*, the FDA had already entered a "Consent Decree of Permanent Injunction" that the product at issue was "in violation of [FDA] requirements." *Lefaivre v. KV Pharm. Co.,* 636 F.3d 935, 937, 943-44 (8th Cir. 2011). In *Georgia*, the issue was whether a preemption defense was "sufficient to furnish federal jurisdiction." *Ga. ex rel. Carr v. Elite Integrated Med., LLC*, No. 1:20-cv-4946-AT, 2021 U.S. Dist. LEXIS 69776, at *32 (N.D. Ga. Apr. 12, 2021).

**C.   Intuitive fails to identify any false or misleading statements concerning Rebotix's investigation of 510(k) clearance.**

To avoid preclusion, Intuitive alternatively argues that its counterclaims "do[]
not challenge the falsity of the statement that Rebotix's services 'do not require
clearance by the FDA.'"  Opp. 22.  Instead, Intuitive contends that the purported
"false and misleading statements" (Dkt. 60, ¶78) concern Rebotix's process for
arriving at this conclusion, i.e., the "sufficiency of the steps Rebotix did (or did not)
take" to investigate whether 510(k) clearance was required."  Opp. 22.

This argument fails because Rebotix made no representations about the steps
it took to investigate FDA issues, and Intuitive fails to present any evidence of such
representations.  "To raise a genuine issue of material fact, [Intuitive] needed to offer
at least some evidence not only that customers erroneously believed that" Rebotix
had taken certain steps to investigate, but also "that a specific representation or
statement by [Rebotix] created that misconception."  *Belcher Pharm., LLC v. Hospira,
Inc.*, 1 F.4th at 1381 (11th Cir. 2021).  Intuitive has not identified any such evidence.
For example, Intuitive asserts that "Rebotix did not consult with either the FDA or
outside consultants to determine whether its services required clearance."  Opp.  24.
But Intuitive points to no "specific representation or statement" by Rebotix that it
had such consultations, or any evidence that its "customers erroneously believed
that" it had.  *Belcher Pharm., LLC v. Hospira, Inc.*, 1 F.4th at 1381 (11th Cir. 2021).

The same is true for each of the "steps" identified by Intuitive.[5]

The only representations that Intuitive *does* identify are statements of opinion about whether Rebotix's service modifies the "intended use" of EndoWrists as defined by the FDA.  Opp. 14.  Such "[s]tatements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact," and therefore are not actionable.  *Ameritox, Ltd. v. Millennium Labs., Inc.,* 889 F. Supp. 2d 1304, 1317 (M.D. Fla. 2012).

## D.   Intuitive's "unclean hands" defense is precluded for the same reasons.

Intuitive argues that "the authorities relied upon by Rebotix and cited in *Inmuno Vital*" are "dubious" after *POM Wonderful*.  Opp. 27, n. 11.  First, as discussed above, the Eleventh Circuit has already rejected this argument twice.  Second, on remand, the district court in *POM Wonderful* specifically considered *Inmuno Vital* and found that it was "readily distinguishable" from *POM Wonderful*.  *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1099 n.7 (C.D. Cal. 2016).  The court explained that, unlike in *POM Wonderful,* the defendant in *Inmuno Vital* was "seeking to affirmatively prove as part of its unclean hands defense that the plaintiff's conduct violated the [FDCA] in the absence of a finding by the [FDA] or Department of Justice that such a violation occurred."  *Id.*  Here too, Intuitive is seeking to prove as part of its "unclean hands" defense that Rebotix "has acted

---

[5] Intuitive asserts that a similar counterclaim "was not dismissed in *Restore*" at the motion to dismiss stage.  Opp. 25.  But that counterclaim has not been challenged in *Restore*, much less at summary judgment where supporting evidence is required.

contrary to applicable FDA regulations," Dkt 60 (Intuitive Defenses) at p. 24, in the absence of such a determination by the FDA.

Intuitive also argues that "the record establishes" that the FDA has determined that Rebotix's services require a 510(k).  Opp. 27, n. 11.  This is wrong for the reasons identified in Rebotix's Response to Intuitive's MSJ at SOF, ¶¶46-51, p. 17.  Moreover, the FDA expressly confirmed to Rebotix's counsel as recently as December 10, 2021, that it has <u>not</u> yet determined one way or the other whether Rebotix's services require 510(k) clearance.  Ex. 21 (Lyon Decl.), ¶¶4-5.

## II.  The Court should grant summary judgment on the FDUTPA counterclaim.

### A.  Intuitive lacks evidence of actual damages.

It is undisputed that actual damages (not consequential damages) are a required element of a FDUTPA claim.  But Intuitive has only alleged damages in the form of (1) disgorgement, and (2) lost profits—neither of which constitute actual damages.  First, it is undisputed that disgorgement is not a measure of actual damages.  Second, as this Court has stated, "it remains well settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA."  *Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*, No. 8:09-cv-445-T-33TBM, 2014 U.S. Dist. LEXIS 95418, at *33 (M.D. Fla. July 14, 2014) (internal quotations omitted) (listing cases).  Because Intuitive fails to present evidence of actual damages, summary judgment is required.  Mot. 27 (listing cases).

Intuitive attempts to draw a distinction between future and past lost profits, arguing that the latter are actual damages.  Opp. 31.  However, as explained in a

well-reasoned opinion discussed in Rebotix's motion and ignored in Intuitive's response, "there is no substantive distinction between past lost profits and future lost profits for purposes of determining whether past lost profits are actual damages." *Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, No. 19-24857, 2020 U.S. Dist. LEXIS 85321, at \*19 (S.D. Fla. May 13, 2020).  "The mere fact that a lost profit is a past lost profit because it already occurred does not somehow and automatically change the <u>nature</u> of the damage from consequential to actual.  Instead, a past lost profit is simply a consequential damage which has happened."  *Id.* at \*20.

As explained in *Midway*, "there are some nonbinding district court cases which have said that past lost profits are recoverable," but these cases are not "convincing" and contain "no analysis" of the issue.  *Id.* at \*19.  Indeed, three of the four cases cited by Intuitive include no analysis of this issue whatsoever.  Opp. 31. And the fourth, *Tymar Distribution Llc v. Mitchell Grp. United States*, No. 21-21976-CIV-ALTONAGA/Torres, 2021 U.S. Dist. LEXIS 169760 (S.D. Fla. Sep. 8, 2021), depends on reasoning that the Eleventh Circuit has rejected.

Intuitive relies on *Tymar*'s conclusion that "'past lost profits are recoverable under FDUTPA'" when the plaintiff is a "corporate-competitor" with "no contract" with the defendant.  Opp. 31 (quoting *Tymar* at \*12).  The court concluded that, because the Florida Supreme Court viewed the meaning of "actual damages" to be "interchangeabl[e]" with "compensatory damages" in unrelated contexts, "it is fair to assume that 'actual damages' mean 'compensatory damages'" for FDUTPA claims.  *Tymar* at \*16.  And because "lost profits are … compensatory damages," the

7

court concluded that they are also actual damages.  *Id*.

But the Eleventh Circuit also considered whether the Florida Supreme Court's views of "actual damages" can lead to the conclusion that they are the same as "compensatory damages" in the FDUTPA context.  *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 816 (11th Cir. 2017) (unpublished).  And it concluded the opposite.  After a plaintiff's FDUTPA claim was dismissed at summary judgment because it only identified lost profits, the plaintiff argued on appeal that "there are persuasive reasons to believe the Florida Supreme Court would adopt a broader interpretation of actual damages that is equivalent to compensatory damages."  *Id.* The Eleventh Circuit rejected this argument and held: "This Court has adopted the *Rollins* definition of actual damages"—which "limited damages under the Florida Act to direct damages, not consequential damages in the form of lost profits"—and "[w]e are bound to follow prior panel precedent even when addressing state-law issues."  *Id*.

"Florida [state] courts have not adopted the view" urged by Intuitive and adopted in *Tymar* "that lost profits should be recoverable … [for] business competitors … when a FDUTPA violation occurs."  *Diversified Mgmt. Sols. v. Control Sys. Research*, No. 15-81062-CIV-MIDDLEBROOKS, 2016 U.S. Dist. LEXIS 189771, at *14-15 (S.D. Fla. May 13, 2016).  Instead, "[t]he substantive law of Florida, as it currently stands, leads to the conclusion that lost profits are consequential damages, and, thus, not recoverable under FDUTPA."  *Id.*  Under Florida law, "FDUTPA 'actual damages' do not include lost profits even when

sought by a competitor rather than a consumer." *Apotex Corp. v. Hospira Healthcare India Private Ltd.*, No. 18-CV-4903 (JMF), 2019 U.S. Dist. LEXIS 136324, at *3 (S.D.N.Y. Aug. 13, 2019).

The expansion of FDUTPA damages that Intuitive seeks is "not logically compelled, and no Florida state court (much less Florida's highest court) has adopted it." *Id.* at *6-7. "Without a decisive ruling by the Florida Supreme Court or at least some persuasive authority from the state appellate courts," courts should not "stray from the well-settled standard that consequential damages in the form of lost profits [for competitors] are not recoverable under FDUTPA." *Xiamen Baby Pretty Prods. Co. v. Talbot's Pharm. Family Prods.*, No. 3:21-CV-00409, 2021 U.S. Dist. LEXIS 236344, *20-21 (W.D. La. Nov. 23, 2021) (internal quotations omitted).

**B.    Intuitive lacks evidence of consumer injury.**

"Without a consumer who was actually aggrieved by [Rebotix's] alleged misconduct, [Intuitive] fails to establish a deceptive act or unfair practice" required for a FDUTPA claim. *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017). It is undisputed that Rebotix sold its repair services to 17 hospitals (Dkt. 117, SOF, ¶41), and yet despite seeking expansive discovery from the hospitals, Intuitive elicited no evidence that *any* were dissatisfied with, much less aggrieved or injured by, Rebotix's services. Intuitive nevertheless alleges three consumer injuries in its opposition. We address each in turn.

(1) less valuable product: Intuitive alleges that Rebotix provided an "inferior product" that was "less valuable" than what consumers believed they were

purchasing.  Opp. 27-28.  To support this theory, Intuitive would need to present evidence comparing the value that Rebotix's customers actually received with the price customers contracted and paid for.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).[6]  But Intuitive does not do this.  Instead, it identifies evidence comparing Rebotix's services to new EndoWrists from Intuitive.  *Id.* at 28.  This would only be relevant for if Rebotix led customers to believe they were purchasing new EndoWrists, but instead gave them Rebotix-serviced EndoWrists (which are priced 40-50% less than new EndoWrists).[7]  But no evidence suggests hospitals thought they were receiving new EndoWrists from Rebotix, or that the service they received was less valuable than the amount they contracted and paid for.  Rather, hospitals were aware they were purchasing a service from Rebotix, with a 40-50% discount over new EndoWrists.  Ex. 4, 179:10-180:5; Ex. 11, 88:17-89:14.

(2) Instrument failures:  Intuitive alleges that consumers have been harmed because Rebotix-serviced EndoWrists have "suffered failures."  Opp. 29.  Intuitive's evidence of EndoWrist failures is not evidence of consumer harm.  It is undisputed that new EndoWrists from Intuitive regularly experience the same sort of failures, and when this happens, are simply replaced.  D.Ex. 13, Tab 1; Ex.6, ¶110-115 of

---

[6] The cases cited by Intuitive (Opp. 28) confirm that there must be diminished value between the service or product delivered and the service or product contracted and paid for.  *See Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 U.S. Dist. LEXIS 51457, at *17 (S.D. Fla. May 13, 2011).

[7] For example, in the *N.C.W.C* case relied upon by Intuitive (Opp. at 28), the defendant misled "customers who purchased products from the[ir] Website" into "thinking they were purchasing Plaintiffs' products."  *N.C.W.C., Inc. v. Land & Sky Invs.*, No. 6:20-cv-397-Orl-37EJK, 2020 U.S. Dist. LEXIS 192209, at *3 (M.D. Fla. May 22, 2020).

attached Ex. 1.  There is no evidence that Rebotix-serviced EndoWrists fail at a higher rate than new EndoWrists or that any failure identified by Intuitive was caused by Rebotix's services.  Indeed, the table that Intuitive cites shows over 144,000 similar failures from EndoWrists that were not serviced by Rebotix.  D.Ex. 13, Tab 1.  Intuitive also presents no evidence (because there is none) that these failures harmed consumers, financially or otherwise.  Indeed, Rebotix warranties its repairs and re-evaluates any failed EndoWrist, free of charge.  Ex. 4, 91:9-23.

(3) <u>insufficient savings</u>:  Intuitive asserts that Rebotix "overstated cost savings" because customers received "9 additional uses" from a Rebotix-serviced EndoWrist instead of the "10 uses" from a new EndoWrist.  Opp. 8, 29.  But Intuitive cites no evidence that consumers were unaware of this difference.  And there is none.  This information was expressly communicated to customers.  *See* Mot. 8 (citing Dkt 60-3 at 1) ("the instrument must arrive with one use left"); Ex. 4 101:17-102:7; Ex. 11, 66:18-25; Ex. 20 (Rebotix spreadsheet shared with customers calculating cost "savings" with "Total Instrument uses" as "9" for Rebotix and "10" for Intuitive).

Date: December 22, 2021          Respectfully submitted,

*/s/ Richard Lyon*
Richard Lyon
California Bar No. 229288 (*pro hac vice*)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
COUNSEL FOR PLAINTIFF
REBOTIX REPAIR LLC