IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REBOTIX REPAIR LLC,
        Plaintiff,

vs.

INTUITIVE SURGICAL, INC.,

        Defendant.

Case No.: 8:20-cv-02274

**Rebotix's opposition to Intuitive's motion to exclude
the expert opinions of Dr. T. Kim Parnell**

Plaintiff Rebotix Repair, LLC responds in opposition to Defendant Intuitive Surgical, Inc.'s motion to exclude the expert opinions of Dr. T. Kim Parnell.

## I.  Introduction.

Dr. T. Kim Parnell is a mechanical engineer retained by Rebotix who has offered expert opinions about the safety of new EndoWrists and Rebotix-repaired EndoWrists in response to the opinions offered by Intuitive's expert, Dr. Robert Howe. Ex. 1 (Parnell Report) ¶¶18-21.  Dr. Parnell's opinions include responses and rebuttals to Dr. Howe's opinions.  *Id.* ¶17.

"[E]xpert testimony may be admitted if three requirements are met.  First, the expert must be qualified to testify competently regarding the matter he or she intends to address.  Second, the methodology used must be reliable as determined by a *Daubert* inquiry.  Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).

Dr. Parnell's opinions meet all three requirements.

It is undisputed that Dr. Parnell is qualified to render opinions about the safety of medical instruments.  Dr. Parnell has over thirty years of experience in mechanical engineering, which includes work in failure analysis, reverse engineering, and the design and development of medical instruments. Ex. 1 ¶¶3-9. He has also taught mechanical engineering courses at Santa Clara University and Stanford University, and lectured on Mechanical Design for Reliability and Medical Device Technology. *Id.* ¶11.

Dr. Parnell's opinions are also reliable. For example, to form an opinion on whether EndoWrists can be repaired similarly to laparoscopic instruments, Dr. Parnell applied the methodology of analyzing the respective failure modes of both types of instruments. Engineers analyze failure modes to evaluate mechanical components, and Intuitive's expert, Dr. Howe, who is also a mechanical engineer, agrees that "a standard approach for assessing safety includes a failure modes and effects analysis." Ex. 2 (Howe Depo) 123:6-12. And to form an opinion on the safety of Rebotix's repair of EndoWrists, Dr. Parnell evaluated Rebotix's reverse engineering process, drawing from engineers' common practice that "reverse engineering the original specifications of an instrument" should involve two steps: testing the instrument to establish the specifications, and then testing to ensure it "functions in the same manner as a new instrument." Ex. 1 ¶36. For both these opinions, Dr. Parnell applied the engineering principles to the facts, identified his sources, and documented each step of his analysis. This process ensures that his analysis can be objectively evaluated for reliability.

Intuitive pointed to other methods that Dr. Parnell could have used, such as seeing "an EndoWrist perform in an operating room." Mot. at 1. But experts do not have to use all possible methods, or use any particular method, to be reliable. Arguments that the expert could have used other methods go to the weight of the testimony, rather than its admissibility.

Intuitive also contends that Dr. Parnell's opinions are not helpful because he simply repeated the assertions of others. That contention is false. Dr. Parnell

3

considered information he learned in interviews with Rebotix engineers, along with the documents, deposition testimony, and his own hands-on inspection of the repair process. Dr. Parnell's opinions are reliable and helpful.

The Court should deny Intuitive's motion to exclude Dr. Parnell's opinions.

**II.    Dr. Parnell is qualified to testify on the safety of EndoWrists.**

An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Civ. Evid. 702. "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Day v. Sarasota Doctors Hosp.*, No. 8:19-cv-1522-T-33TGW, 2020 U.S. Dist. LEXIS 233154, at *6-7 (M.D. Fla. Dec. 11, 2020) (internal citations omitted).

It is undisputed that Dr. Parnell is qualified to testify competently on the safety of new EndoWrists and EndoWrists repaired by Rebotix.

Dr. Parnell has training and experience in mechanical engineering, including work on the design and development of medical devices. He earned an M.S. and a Ph.D. in Mechanical Engineering from Stanford University. Ex. 1 ¶1. He has "over 30 years of professional experience… understanding and solving engineering problems" in different industries. *Id.* ¶3. This includes experience as a Senior Engineer at Failure Analysis Associates, Inc., where his work involved consulting on "product failures, product design, and medical device development." *Id.* ¶9. He focused on the medical device field at Rubicor Medical, Inc. as its Director of Research & Development. *Id.* He has also taught graduate courses in Mechanical

4

Engineering at Stanford, and has delivered "numerous invited presentations, short-courses and seminars" on technical topics, including "Mechanical Design for Reliability (MDfR) courses tailored to specific types of products and industries, and Medical Device Technology." *Id.* ¶11.

This extensive experience easily clears the "minimally qualified" bar for qualification and establishes that Dr. Parnell has the required expertise to offer his opinions.

### III. Dr. Parnell's opinions on the safety of EndoWrists are reliable.

The focus of reliability is on "principles and methodology, not on the conclusion that they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). *Daubert* set forth certain factors that may bear on the reliability of expert testimony, such as "whether a theory or technique… can be (and has been) tested." *Daubert,* 509 U.S. at 593-94. Testability means that an expert's method can be "challenged in some objective sense and… not simply a subjective, conclusory approach that cannot reasonably be tested for reliability." *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18-WSD, 2012 U.S. Dist. LEXIS 20685, at *14 (N.D. Ga. Feb. 17, 2012) (citing *Daubert*, 509 U.S. at 593-94). Another factor that may be considered is the degree of "general acceptance" within the discipline. *Daubert,* 509 U.S. at 593-94. For testimony based on an "engineering expert's experience-based methodology," for example, the judge may ask "whether… a method is generally accepted in the relevant engineering community." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).

The *Daubert* factors are non-exhaustive, and courts emphasize that the reliability inquiry is a "flexible one." *Daubert,* 509 U.S. at 2797. The inquiry depends on the "particular circumstances of the particular case at issue." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Ultimately the trial judge "must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

### A. Dr. Parnell's methodology is reliable.

Dr. Parnell's opinions are reliably based on his knowledge and experience of mechanical engineering. In forming opinions on the reparability of EndoWrists, and the safety of Rebotix's repair process, he draws from his experience with methods "generally accepted in the relevant engineering community," such as the analysis of failure modes and reverse engineering. *Kumho Tire,* 526 U.S. at 151. He then applied the relevant engineering principles to the data, identified his sources, and detailed each step of his analysis. His methods can thus be "challenged in some objective sense" and "assessed for reliability." *United States v. Loaiza-Clavijo*, No. 1:08-cr-356-18-WSD, 2012 U.S. Dist. LEXIS 20685, at *14 (N.D. Ga. Feb. 17, 2012) (citing *Daubert*, 509 U.S. at 593-94).

To support his opinion that "EndoWrists can be routinely repaired in the same manner as traditional laparoscopic instruments," Dr. Parnell used the methodology of comparing the instruments' respective failure modes. Ex. 1 (Parnell Report) ¶31-32. This methodology of examining failure modes is generally accepted in the field.

6

Ex. 1 ¶133, n.85.  For example, Dr. Parnell cited the engineering company Stress Engineering Services, Inc. and the engineering lab at DNV Labs, to show that they both use failure testing to establish the failure modes of mechanical components.  *Id.* Ex. 3 (Engineering Failure Analysis); Ex. 4 (Failure Analysis Testing).  Intuitive's expert Dr. Howe, who also has an engineering background, agreed that "a standard approach for assessing safety includes a failure modes and effects analysis."  Ex. 2 123:6-12.  Dr. Parnell then applied this methodology to the facts, identifying his sources and detailing each step of his analysis.  Ex. 1 ¶¶32-35, 42, 50-54.  In laying out each step of his analysis, for example, Dr. Parnell included photographs of the EndoWrist failures modes that he examined under an optical microscope and explained how each observation factored into his analysis.  *Id.* ¶¶50-54.  This documentation ensures that his methods can be objectively evaluated for reliability.

Dr. Parnell's opinion that "Rebotix's service procedure ensures that EndoWrists can be repaired and used safely" is also drawn from methods and principles that are generally accepted in mechanical engineering.  Ex. ¶¶36-64.  A common practice in mechanical engineering is reverse engineering an instrument to "return an instrument to its original specifications."  *Id.* ¶36.  As generally accepted in the field, a thorough reverse engineering process involves two steps: "testing a new instrument to understand and establish its specifications, and then testing a repaired or serviced instrument to ensure that it functions in the same manner as a new instrument."  *Id.*  Dr. Parnell examined Rebotix's repair process to see if it complied with this principle.  *Id.* ¶¶36-40.  In doing so, Dr. Parnell identified his sources and

7

laid out each step of his analysis. *Id.* Rebotix's documented test protocols and test results showed that it had complied with the generally-accepted steps in a reverse engineering process. *Id.* ¶38. Dr. Parnell also examined whether Rebotix's process had been reviewed by any third party testing laboratories, and determined that it had. *Id.* ¶39. Another common method in mechanical engineering that Dr. Parnell drew from in analysis is the use of a "Hipot Test," a "test sequence [that] indicates whether there is any damage or breakdown in the electrical insulation and isolation of the device or another issue that prevents the electrosurgical components from functioning safely in terms of their electric behavior." *Id.* ¶48. Dr. Parnell examined Rebotix's repair process to see if it employed the Hipot Test to ensure that the insulation and electrical isolation of EndoWrists are functioning as expected, and determined that it did. *Id.* ¶48. Dr. Parnell inspected Rebotix's facility and documented the Dielectric Withstand Tester that Rebotix uses to run the Hipot Test in his report. *Id.* And Dr. Parnell examined Rebotix's underlying service procedure documents, which includes detailed instructions for performing the Hipot Test, and included extracts of these documents in his report. *Id.* ¶196.

Dr. Parnell's opinion on the safety of Rebotix's repair process draws from generally accepted methods and principles in mechanical engineering and applies these principles to the facts, identifying his sources and detailing each step of his analysis. Courts have repeatedly found that the application of generally-accepted methods and principles in the relevant discipline to the factual record, informed by the expert's experience, is a reliable method. *See Alvarez v. Gen. Wire Spring Co.*, No.

8:07-cv-1319-T-33TGW, 2009 U.S. Dist. LEXIS 6878, at *16-17 (M.D. Fla. Feb. 1, 2009) (finding expert testimony is reliable because the expert was an "experienced engineer" and "relied on his own experience, his observation of the machine, and his review of the American National Standard for Machine Tools"); *Johnson v. Stein Mart, Inc.*, No. 3:06-cv-341-J-33TEM, 2007 U.S. Dist. LEXIS 104341, at *8 (M.D. Fla. June 6, 2007) (finding that an expert report is sufficiently reliable because the expert "reviewed several documents from Stein Mart and these proceedings, as well as having discussions with two Stein Mart employees… combined with [his] extensive experience in the retail industry").

      **B.    Intuitive's arguments on reliability fail.**

Intuitive asserts that Dr. Parnell has "no methodology whatsoever either to [1] compare the reparability of EndoWrists to traditional laparoscopic instruments or [2] to determine the performance and safety of EndoWrists" repaired by Rebotix. Mot. at 10. But Dr. Parnell's opinions on both matters are based on reliable methods, as shown above.

Intuitive criticizes Dr. Parnell for not using certain methods, such as learning "what happens to those EndoWrists when they leave the Rebotix facility after modification" and looking at "data or records… [that] measures the performance and safety of the EndoWrists." Mot. at 10. But contrary to Intuitive's claim, Dr. Parnell has looked at "data and records… [that] measures the performance and safety of the EndoWrists." *Id*. Dr. Parnell studied the results of third-party laboratories' testing to "verify that [Rebotix's] repaired EndoWrists complied with all

9

applicable safety standards," including an evaluation of Rebotix's entire service process. Ex. 1 ¶39. And Intuitive is also wrong that Dr. Parnell "has no idea what happens to those EndoWrists when they leave the Rebotix facility." Mot. at 5. For example, Dr. Parnell has reviewed and considered testimony from hospital personnel who used Rebotix-repaired instruments, and determined that "[t]here was no difference than the non-reprocessed instruments" and that they "didn't have any issues" with Rebotix-repaired instruments. *Id.* ¶63.

Moreover, Intuitive's criticism of Dr. Parnell's expert opinion "go[es] to its weight rather than its admissibility." *Jones v. Otis Elevator Co.,* 861 F.2d 655, 662-663 (11th Cir. 1988). Intuitive pointed to other methods that Dr. Parnell did not use—but courts do not require an expert to use all possible approaches, or any particular approach. Rather, a court's inquiry is on the "reasonableness of using [the expert's] approach." *Kumho Tire,* 526 U.S. at 154. And Intuitive has not, and cannot, challenge the methodology that Dr. Parnell actually used. The right forum for Intuitive's criticisms is "vigorous cross-examination." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

Intuitive's cited cases only further illustrate the stark difference between Dr. Parnell's opinions and the types of opinions excluded under *Daubert*. For example, in *Ocasio*, the expert had not seen the device and had not performed "*any* independent verification of the data or testing of the device." *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2015 U.S. Dist. LEXIS 58163, at *7 (M.D. Fla. May 4, 2015). Similarly, in *Morrow* (Mot. at 9), the expert did not "verify anything" and

10

merely "took [the patient] at his word" in forming the opinion that the patient's injuries were caused by a car accident. *Morrow v. Brenntag Mid-South, Inc.*, 505 F. Supp. 3d 1287, 1290 (M.D. Fla. 2020). As a result, the expert in *Morrow* did not know that the patient was involved in another, prior car accident. *Id.* In contrast to the experts in *Ocasio* and *Morrow*, Dr. Parnell conducted his own inspection of Rebotix's facility where he saw and physically examined EndoWrists in different states, and also verified Rebotix's test results on its repair process with the test results of independent laboratories. Ex. 1 ¶39, 41, 56.

In *McCorvey*, the expert opined that a defectively designed catheter "proximately caused" an injury to the plaintiff during prostate surgery. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1255-57 (11th Cir. 2002). But the expert's "causation opinion" "did not consider or test possibilities for failure that could have come from sources outside the product" and "was based wholly on speculation." *Id.* 1256-57. That bears no resemblance to Dr. Parnell's opinion.

## IV. Dr. Parnell's opinions on the safety of EndoWrists are helpful.

To be admissible, expert testimony must "assist the trier of fact." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). This requirement is also referred to as "helpfulness." *Id.* at 1260. Expert testimony is helpful "if it concerns matters that are beyond the understanding of the average layperson." *Id.* at 1260.

### A. Dr. Parnell's opinions are helpful.

Dr. Parnell's experience in mechanical engineering, and his application of that experience to the facts of this case, are helpful to a trier of fact. Matters in

11

mechanical engineering, including the design and safety of medical devices, are generally "beyond the understanding of the average layperson." *Frazier*, 387 F.3d at 1262 (11th Cir. 2004). And Dr. Parnell's analysis requires experience with methods and principles of mechanical engineering. For example, Dr. Parnell draws from the common practice in mechanical engineering of reverse engineering "to return an instrument to its original specifications." Ex. 1 ¶36. He also draws from the common method in engineering of using a "Hipot Test," a "test sequence [that] indicates whether there is any damage or breakdown in the electrical insulation and isolation of the device or another issue that prevents the electrosurgical components from functioning safely in terms of their electric behavior." *Id.* ¶48. Dr. Parnell's application of his "professional experience as an engineer to develop his opinions regarding [the] case" is helpful to a trier of fact. *Bostick v. State Farm Mut. Auto. Ins. Co.*, 321 F.R.D. 414, 417-18 (M.D. Fla. 2017).

### B. Intuitive's arguments on helpfulness fail.

Intuitive argues that Dr. Parnell's opinions are not helpful because he only "repeated the assertions of others." Mot. at 12. This argument fails on the law and the facts.

There is no rule against considering facts provided by an interested party or an outside source. On the contrary, "experts may base an opinion on facts or data in the case that the expert has been made aware of." Fed. R. Evid. 703; *see V.C. v. Evenflo Co.*, No. 6:20-cv-2-PGB-GJK, 2021 U.S. Dist. LEXIS 207772, at *8 (M.D. Fla. July 12, 2021) ("Plaintiff correctly argues that an expert may rely on facts or

data in the case that the expert has been made aware of."); *James v. Robert Bosch Tool Corp.*, No. 6:13-cv-1534-Orl-37KRS, 2015 U.S. Dist. LEXIS 13245, at *3 (M.D. Fla. Feb. 4, 2015) (quoting Fed. R. Evid. 702). Dr. Parnell examined all of the material in the factual record. And Dr. Parnell further inspected Rebotix's repair facility, interviewed Rebotix employees, and personally observed and examined the repair process. The appropriate place to resolve criticisms of any of those sources is "within the crucible of cross examination, rather than by a judge at the *Daubert* stage." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 857 (11th Cir. 2021).

Moreover, Dr. Parnell did not simply repeat information that he learned. Dr. Parnell interviewed Greg Fiegel, Rebotix's Director of Operations, to obtain certain information on Rebotix's repair process. Ex. 1 ¶41. But Dr. Parnell did not simply repeat Fiegel's assertion that Rebotix's reverse engineering process included an assessment of the "cable tension, wheel torque values, scissor sharpness, grasper alignment, insulation strength, and motion handling by the instrument." *Id.* ¶37. This parallels Intuitive's own expert's conversations with an employee of Intuitive in forming his opinions. Ex. 2, 52:2-53:5; 128:7-13. Dr. Parnell also reviewed Rebotix's documented test protocols and test results to verify this information. *Id.* ¶37 n.18. Dr. Parnell evaluated this information against his experience with what a reverse engineering process should include. *Id.* ¶36. Similarly, Dr. Parnell did not blindly adopt Dr. Sharlin's descriptions of the Rebotix repair and testing process. *Id.* ¶¶16, 43. He reviewed and analyzed the underlying support relied upon by Dr. Sharlin (e.g., Rebotix's life-testing data, engineering specifications, etc.) and

13

confirmed he agreed with Dr. Sharlin. *Id.* ¶37 n.18. Dr. Parnell also reviewed test results of a third-party laboratory's evaluation of Rebotix's entire service process for compliance with safety standards. *Id.* ¶39. And Dr. Parnell personally inspected Rebotix's facility, "reviewed each step of the Rebotix Repair service process," and "documented additional process details" beyond Dr. Sharlin's description. *Id.* ¶41, 43. This presentation of all of this evidence from an experienced engineer will be helpful to the trier of fact.

## V.     Conclusion

Dr. Parnell's opinions draw from widely accepted methods and principles in mechanical engineering, such as the analysis of failure modes and common practices in reverse engineering. Dr. Parnell applied these engineering principles to the facts, identifying his sources and detailing each step of his analysis—ensuring that his analysis can be objectively evaluated for reliability. Dr. Parnell's opinions are also helpful because they concern technical matters in mechanical engineering, which is generally beyond the understanding of the average layperson. Intuitive's arguments on reliability and helpfulness fail. The Court should not grant Intuitive's motion to exclude Dr. Parnell's opinions.

Date: December 8, 2021                     Respectfully submitted,


                                           */s/ Richard Lyon*
                                           Richard Lyon
                                           California Bar No. 229288 (*pro hac vice*)
                                           rick@dovel.com
                                           201 Santa Monica Blvd., Suite 600
                                           Santa Monica, California 90401
                                           Telephone: (310) 656-7066


                                           ATTORNEY FOR PLAINTIFF
                                           REBOTIX REPAIR LLC