UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>    Defendant/Counterclaim Plaintiff. | Civil Case No. 8:20-cv-2274-VMC-TGW |

**INTUITIVE SURGICAL, INC.'S OPPOSITION TO REBOTIX REPAIR LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. JOHN BOMALASKI**

Intuitive Surgical, Inc. ("Intuitive") respectfully submits this memorandum of law in opposition to the motion of Rebotix Repair LLC ("Rebotix") to exclude certain opinions of Intuitive's expert witness, Dr. John Bomalaski.

**PRELIMINARY STATEMENT**

Dr. Bomalaski is a gynecologic oncology surgeon with training and experience in both traditional and robotic-assisted surgery, and his opinions are fully supported by that training and experience. He has performed more than 2,600 robotic-assisted surgeries using the Intuitive da Vinci Surgical System. (Bomalaski Rep.[1] ¶3.) In this

---

[1] ECF No. 109-2, Expert Report of Dr. John Bomalaski ("Bomalaski Rep.").

case, he compares traditional open and laparoscopic surgery with robotic-assisted surgery, and opines about the advantages of robotic-assisted surgery over traditional open and laparoscopic surgery.  (*Id.* ¶¶12, 16-43.)  Dr. Bomalaski opines that "[a]lmost all surgeries present risks to the patient" (*id.* ¶13), and surgeons—who are generally not mechanical engineers—depend on a relationship of trust and coordination among themselves, their hospitals, surgical instrument manufacturers and federal regulators to minimize those risks and to maximize the safety and efficiency of the surgical instruments they use.  (*Id.* ¶¶13-14, 46-53; Bomalaski Tr.[2] 163:9-164:1.)  According to Dr. Bomalaski, that relationship of trust and coordination is particularly important in connection with robotic-assisted surgeries, where the instruments are more complex and their inner workings are invisible to the surgeon in the operating room.  (Bomalaski Rep. ¶55; Bomalaski Tr. 112:10-22, 124:14-125:25, 174:18-175:4.)

     Dr. Bomalaski further opines, based on his many years of training and experience, that many surgeons would likely be concerned about an increased risk to patient safety if they learned that, without having obtained federal regulatory approval, the surgical instruments they use had been modified to extend their useful life beyond the useful life recommended by the manufacturer and approved by federal regulators.  (Bomalaski Rep. ¶55.)  And, based on his years of experience in the care of thousands of surgery patients, Dr. Bomalaski opines that most patients,

---

[2] ECF No. 109-3, Transcript of the Deposition of Dr. John Bomalaski ("Bomalaski Tr.").

too, would likely have safety concerns if they learned that the surgical instruments used in their surgery had been so modified. (*Id.* ¶54; Bomalaski Tr. 160:5-8.) Finally, Dr. Bomalaski offers his view that none of the materials he has reviewed, including a video purporting to show Rebotix's "repair" process, would likely alleviate those concerns. (Bomalaski Rep. ¶¶54-55; Bomalaski Tr. 159:1-12.)

Rebotix seeks to exclude only certain of Dr. Bomalaski's opinions. It acknowledges Dr. Bomalaski's extensive surgical training and experience, and concedes that he is fully qualified to compare various surgery techniques and to offer expert testimony about the advantages of robotic-assisted surgery over traditional open and laparoscopic surgery. (Mot.[3] at 3.) Rebotix asserts, however, that Dr. Bomalaski is unqualified to testify about either (i) the safety of EndoWrist instruments ("EndoWrists") that Rebotix has modified, or (ii) the safety concerns of other surgeons and patients. Rebotix moves to exclude the portion of Dr. Bomalaski's opinions relating to those subjects. (*Id.* at 3-4.)

Rebotix's motion should be denied for two reasons. First, Dr. Bomalaski has not offered an opinion about the technical safety of modified EndoWrists; indeed, he admits that he is not an engineer and has no technical expertise or data from which to offer such an opinion. (Bomalaski Rep. ¶53.) Rather, he opines that the modification of EndoWrists to extend their useful life beyond the useful life that

---

[3] ECF No. 109, Rebotix Motion to Exclude Opinions of Defendant's Expert, Dr. John Bomalaski and Incorporated Supporting Memorandum of Law ("Mot.").

Intuitive specifies as safe—and that federal regulators have approved as safe—increases the potential surgical risks to patient safety.  Second, Dr. Bomalaski did not need to conduct a survey to opine about the patient safety concerns he shares with other surgeons and with his patients.  His years of training and decades of experience as a surgeon caring for gynecologic cancer patients amply support his opinion that modification of surgical instruments in a way that does not comport with the manufacturer's specifications and federal regulators' approved safety standard would cause patient safety concerns among many surgeons and their patients.

## ARGUMENT

Federal Rule of Evidence 702 expressly contemplates the admissibility of expert opinion based on the expert's "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Where, as here, the expert opinion is nonscientific, "[a] district court may decide that nonscientific expert testimony is reliable based 'upon [the expert's] personal knowledge or experience.'"  *American Gen. Life Ins. Co. v. Schoenthal Family*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citation omitted).

This court routinely admits expert testimony based solely on the expert's training and experience.  *See, e.g.*, *Brinkman v. ARS Acct. Resol. Servs.*, No. 8:20-cv-2453-VMC-AAS, 2021 WL 4340413, at *3 (M.D. Fla. Sept. 23, 2021) (Covington, J.) (holding expert testimony sufficiently reliable because of the expert's "extensive experience in the [credit reporting industry]" as well as "'the nature of [] testimony, which [wa]s based on his observations of issues with [credit reporting] procedures over several decades'") (first and fourth alterations in originals) (citation omitted);

4

*Decamp v. State Farm Fire & Cas. Co.*, No. 8:20-cv-1747-VMC-TGW, 2021 WL 4061010, at *3-4 (M.D. Fla. Sept. 7, 2021) (Covington, J.) (admitting expert opinions on "the customs and practices of the insurance industry and whether [defendant] complied with those practices," and holding opinions sufficiently reliable because the expert's "reliance on his experience qualifies as a sufficiently reliable methodology"); *Superior Consulting Servs. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2018 WL 3059995, at *5 (M.D. Fla. May 31, 2018) (admitting expert opinion regarding unlicensed practice of medicine where expert's findings were "based on his education, training, and experience"); *Carlsen v. State Farm Mut. Auto Ins. Co.*, No. 6:16-cv-738-Orl-40TBS, 2018 WL 2773369, at *5 (M.D. Fla. May 14, 2018) (admitting expert opinion as "sufficiently reliable" where expert "possesse[d] the requisite training and experience, combined with his reference to medical studies, to offer opinions concerning the likelihood of future surgical intervention"); *see also Washington v. City of Waldo, Fla.*, No. 1:15-cv-73-MW/GRJ, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016) (admitting expert opinion regarding police hiring practices where expert "used his law enforcement experience, knowledge, and training in police practices, including his review of court cases, and evaluated the facts of the instant case to form his opinions").

### I.   DR. BOMALASKI'S OPINIONS ARE FULLY SUPPORTED BY HIS EXTENSIVE TRAINING AND EXPERIENCE

Dr. Bomalaski's extensive training and nearly thirty years of experience as a surgeon, during the last ten years of which he has performed more than 2,600

robotic-assisted minimally invasive surgeries using the da Vinci Surgical System, provide him with an unassailable basis to render his opinions in this case.  Since May 2010, he has worked at Health First Physician Group, in Melbourne, Florida, as a practicing surgeon, as well as Chief of Gynecologic Oncology Services, as Chair of the Women's Cancer Tumor Board, and as a member of Health First's Joint Operations Committee, Oncology Strategic Committee, Operating Room Committee, Robotic/Minimally Invasive Committee, and the Holmes Hospital Credentialing Committee.  (Bomalaski Rep. App. A 1-2.)  For five years prior to that, he served as President of Gynecologic Oncology of Brevard in Melbourne.  (*Id.*)  In his gynecologic oncology practice, Dr. Bomalaski has conferred with scores of other surgeons and cared for thousands of surgical patients.  (*Id.* ¶54.)

      Dr. Bomalaski's training and experience permit him to compare traditional open and laparoscopic surgery with robotic-assisted surgery and to opine about the advantages and disadvantages of each.  That training and experience also permit Dr. Bomalaski to explain the relationship of trust that develops among surgeons, their hospitals, surgical instrument manufacturers, and federal regulators in their coordinated effort to ensure the safe and efficient use of robotic-assisted surgical techniques and the instruments used in that surgery.  Dr. Bomalaski's training and experience—predicated on the principal tenet of the Hippocratic Oath, "first do no harm"—permit him to explain that surgeons are concerned primarily with patient safety and the minimization of surgical risks to that patient safety.  (*See* Bomalaski Tr. 169:25-170:10 ("most surgeons would – would investigate if there was a concern

6

or worry that some process or step in the treatment of those instruments or repair, were done in a way that could potentially affect their patients").) Moreover, Dr. Bomalaski is qualified to testify that many surgeons would be concerned that modification of surgical instruments to extend their useful life beyond the useful life recommended by the manufacturer and approved by federal regulators would increase the risks to patient safety. And his experience in caring for thousands of cancer patients, who are "often anxious and vulnerable" (Bomalaski Rep. ¶54), permits Dr. Bomalaski to understand and to testify about their safety concerns as well.

## II. REBOTIX'S CHALLENGES TO DR. BOMALASKI'S OPINIONS SHOULD BE REJECTED

Rebotix acknowledges Dr. Bomalaski's extensive training and experience, and does not challenge his qualifications to testify as an expert about laparoscopic and robotic-assisted surgery. (Mot. at 3.) Rather, Rebotix limits its objection to Dr. Bomalaski's opinions to two narrow challenges. First, Rebotix moves to prevent Dr. Bomalaski from opining about the safety of EndoWrists that Rebotix has modified on the ground that he lacks mechanical engineering expertise to render such an opinion. (*Id.* at 4-11.) Second, Rebotix moves to prevent Dr. Bomalaski from offering the opinion that many surgeons and their patients would likely be concerned if they learned that Rebotix had modified EndoWrists to override their use limits to extend the useful life of those instruments beyond that recommended by Intuitive and approved by federal regulators on the ground that Dr. Bomalaski did not

7

conduct a survey of other surgeons or patients. (*Id.* at 11-13.) Both challenges should be rejected.

### A. Dr. Bomalaski Does Not Opine About the Safety of Modified EndoWrists

Dr. Bomalaski's opinions about patient safety are straightforward and fully supported. He opines that almost all surgeries involve risks to patient safety, and that surgeons try to minimize those risks and maximize successful patient outcomes by, among other things, adhering to instrument manufacturers' recommended specifications and federal regulators' approved safety standards. (Bomalaski Rep. ¶¶13-15.) Rebotix cannot credibly contest that opinion. Dr. Bomalaski concedes that he does not have an engineering background and cannot evaluate the safety of an EndoWrist simply by examining it (*id.* ¶53), but explains that surgeons depend on their trusted relationships with hospitals, instrument manufacturers and federal regulators to inform their decisions about the safety of the instruments they use. (*Id.* ¶48.) Further, Dr. Bomalaski expresses his view that a modification to a surgical instrument that causes the instrument to fail to conform to the manufacturer's specified use limits or federal regulators' approved use limits increases the risks to patient safety. (Bomalaski Tr. 133:15-25, 176:25-177:12, 179:7-11.) And, finally, he opines that nothing he has reviewed, including the video purportedly showing Rebotix's "repair" process, allays his concern that Rebotix's insertion of its Interceptor chip to override the EndoWrist use limit increases the risks to patient safety. (Bomalaski Rep. ¶¶54-55; Bomalaski Tr. 159:1-12.)

8

Dr. Bomalaski's opinions require no engineering background or technological data. His extensive medical training and decades of surgical experience amply support his opinions that overriding the use limit in EndoWrists without manufacturer or federal regulator approval increases the risks to patient safety. *See, e.g.*, *Allmond v. Akal Sec. Inc.*, No. 4:05-cv-96-HL, 2007 WL 988757, *5 (M.D. Ga. Mar. 29, 2007) (admitting expert opinion regarding hearing aids as reliable where expert drew "on his considerable clinical experience in the field of audiology"). Rebotix's motion to exclude these opinions should be denied.

### B. Dr. Bomalaski Did Not Need To Conduct a Survey To Opine About The Concerns of Surgeons and Patients Relating to Patient Safety

Dr. Bomalaski has enough training and experience as a gynecologic oncology surgeon to know, without conducting a formal survey, that surgeons and patients are concerned about the risks to patient safety. And he does not need a formal survey to know that surgeons and patients would be concerned about an increase in those risks if they learned that the surgical instruments used in their surgeries had been modified in such a way that they no longer comported with the manufacturer's specifications or the federal regulators' approved safety standards. Simply put, having conferred with scores of surgeons and cared for thousands of patients over decades of practice, Dr. Bomalaski knows the medical industry customs and practices as they relate to patient safety concerns, and does not need a formal survey to render his opinion on that subject. *See, e.g.*, *Brinkman*, 2021 WL 4340413, at *3 (holding expert testimony sufficiently reliable because of the expert's "extensive experience [in the credit

reporting industry]" as well as "'the nature of [] testimony, which [wa]s based on his observations of issues with [credit reporting] procedures over several decades'") (first and fourth alterations in original) (citation omitted); *Decamp*, 2021 WL 4061010, at *3-4 (admitting expert opinions on "the customs and practices of the insurance industry and whether [defendant] complied with those practices," and holding opinions sufficiently reliable because the expert's "reliance on his experience qualifies as a sufficiently reliable methodology"). Rebotix's motion to exclude this opinion should be denied.

## **CONCLUSION**

For the foregoing reasons, Rebotix's motion to exclude certain of Dr. Bomalaski's opinions should be denied in its entirety.

| | |
|---|---|
| DATED: December 8, 2021 | Respectfully submitted, |
| | /s/ Karen Lent |

| | |
|---|---|
| KAREN HOFFMAN LENT (*Pro Hac Vice*)<br>MICHAEL H. MENITOVE (*Pro Hac Vice*)<br>JORDAN A. FEIRMAN (*Pro Hac Vice*)<br>SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, NY 10001<br>Tel: (212) 735-3000<br>karen.lent@skadden.com<br>michael.menitove@skadden.com<br>jordan.feirman@skadden.com | DAVID L. McGEE<br>Fla. Bar No. 220000<br>BEGGS & LANE, RLLP<br>501 Commendencia Street<br>Pensacola, FL 32502<br>Telephone: (850) 432-2451<br>dlm@beggslane.com |
| MICHAEL S. BAILEY (*Pro Hac Vice*)<br>DOUGLAS J. DEBAUGH (*Pro Hac Vice*)<br>1440 New York Avenue, N.W.<br>Washington, DC 20005<br>Tel: (202) 371-7000<br>michael.bailey@skadden.com<br>douglas.debaugh@skadden.com | ALLEN RUBY (*Pro Hac Vice*)<br>Attorney at Law<br>15559 Union Ave. #138<br>Los Gatos, CA 95032<br>Tel: (408) 477-9690<br>allen@allenruby.com |

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, I caused **INTUITIVE SURGICAL, INC.'S OPPOSITION TO REBOTIX REPAIR LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. JOHN BOMALASKI** to be served on the following counsel of record by email:

| | |
|---|---|
| Gregory Dovel | greg@dovel.com |
| Richard Lyon | rick@dovellaw.com |
| Alexander Erwig | alexander@dovel.com |
| David Luikart, III | dave.luikart@hwhlaw.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000