# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC,<br><br>  Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>  Defendant/Counterclaim Plaintiff. | Civil Case No. 8:20-cv-2274-VMC-TGW |

**INTUITIVE SURGICAL, INC.'S OPPOSITION TO REBOTIX REPAIR LLC'S MOTION TO EXCLUDE OPINIONS OF HEATHER S. ROSECRANS**

Intuitive Surgical, Inc. ("Intuitive") respectfully submits this opposition to Rebotix Repair LLC's ("Rebotix") motion to exclude opinions of Heather S. Rosecrans.

## PRELIMINARY STATEMENT

Heather Rosecrans is a U.S. Food and Drug Administration ("FDA") regulatory affairs consultant with expertise in matters concerning premarket regulation of medical devices, including 510(k) clearance. (Mot.[1] Ex. 1 ¶1.) Between 1978 and 2010, Ms. Rosecrans worked at FDA's headquarters in the office

---

[1] "Mot." Refers to Rebotix Repair LLC's Motion to Exclude Opinions of Heather S. Rosecrans (ECF No. 110).

responsible for 510(k) submissions. (*Id.* ¶¶3-12.) Notably, between 1992 and 2010, Ms. Rosecrans served as the head of FDA's 510(k) program and was the "primary contact [at FDA] on issues related to the implementation of the 510(k) requirements under [the Federal Food, Drug, and Cosmetic Act ("FDCA"] to ensure the uniform interpretation of the law." (*Id.* ¶8.) During this time period, Ms. Rosecrans held a number of leadership functions, including supervising FDA's programmatic review of 510(k)s, drafting regulations and guidance, providing trainings to FDA staff and serving as a liaison in connection with government reviews of the 510(k) program. (*Id.* ¶¶8-13.) Since leaving FDA, Ms. Rosecrans has consulted with clients on issues relating to 510(k) submissions and stayed abreast of developments at FDA concerning the 510(k) program. (*Id.* ¶¶14-16.)

Intuitive retained Ms. Rosecrans to opine on issues concerning 510(k) clearance and related regulatory requirements. Ms. Rosecrans opines that by selling Interceptor boards to customers as part of "repaired" EndoWrist instruments ("EndoWrists"),[2] Rebotix placed finished medical device components into commerce, and was thus a "manufacturer" requiring 510(k) clearance. (*Id.* ¶¶88-106.) In addition, Ms. Rosecrans opines that by overriding EndoWrist use limits with the Interceptor, Rebotix significantly changed an EndoWrist's intended use,

---

[2] Rebotix offers a service—which it deceptively calls EndoWrist "repair"—that involves the insertion into S or Si EndoWrists of the "Interceptor," a printed circuit board ("PCB"), that overrides Intuitive's use counter, allowing the EndoWrists to be used beyond their prescribed use limits. Rebotix has never obtained 510(k) clearance even though FDA officials have stated on multiple occasions that Rebotix's "repair" process requires such clearance. (ECF No. 117 at 9-15.)

and was thus a "remanufacturer" requiring 510(k) clearance. (*Id.* ¶¶107-121.) Ms. Rosecrans offers additional opinions that relate to EndoWrist use limits and the reasonableness of Intuitive's statements to customers concerning 510(k) clearance:

- EndoWrists received 510(k) clearance from FDA as limited use devices subject to use limits, and any attempt to remove such limits is not permitted (*id.* ¶¶ 73-76);

- FDA's finding of substantial equivalence between EndoWrists (subject to use limits) and predicate devices (reusable laparoscopic instruments not subject to use limits) does not mean that the two types of instruments are identical or that EndoWrist's 510(k) clearance does not encompass use limits (*id.* ¶¶77-80);

- Intuitive's marketing and sale of EndoWrists with use limits was consistent with FDA's 510(k) clearance and labeling requirements (*id.* ¶¶81-87);

- Intuitive's customer communications conveying that Rebotix required 510(k) clearance for EndoWrist "repairs" were appropriate and based on a reasonable interpretation of FDA law (*id.* ¶¶88-134); and

- Rebotix failed to adequately investigate whether 510(k) clearance was needed prior to representing to customers that its "repair" business did not require 510(k) clearance (*id.* ¶¶135-138).

Rebotix does not challenge Ms. Rosecrans's qualifications or the reliability of her methodology, and thereby concedes that Intuitive has met its burden as the proponent of Ms. Rosecrans's expert testimony as to both factors. Rather, Rebotix

3

only argues that her opinions are inadmissible because they are irrelevant and thus unhelpful to the jury because the factfinder cannot determine whether Rebotix violated FDA regulations. (Mot. at 2-3.) Rebotix's motion should be denied for three reasons.

As an initial matter, Rebotix incorrectly argues that Intuitive is only offering Ms. Rosecrans's expert opinion to support its "FDA based-claims," specifically "Intuitive's Lanham Act claim, corresponding unfair competition and FDUTPA claims, and unclean hands affirmative defenses." (Mot. at 5.) In fact, Intuitive is also proffering Ms. Rosecrans to opine on FDA issues to be determined in connection with Rebotix's *affirmative* claims under the Sherman Act, including whether Rebotix's "repair" process required 510(k) clearance. These determinations are relevant to: (i) whether Rebotix can establish antitrust injury when its "repair" business required, but did not have, 510(k) clearance; (ii) Intuitive's procompetitive reasons for representing in customer communications that use of Rebotix "repaired" instruments lacking 510(k) clearance was unsafe and "constituted the entry of adulterated and misbranded products to the marketplace" (Ex. 1 at Intuitive-00569246); and (iii) the regulatory justification for EndoWrist use limits and the scope of EndoWrist 510(k) clearance. To the extent Rebotix's claims move beyond summary judgment, Ms. Rosecrans's opinions will assist the jury in determining fact issues relevant to these topics.

*Second*, Rebotix's assertion that "whether Rebotix violated FDA regulations is not an issue that a judge or jury can decide" mischaracterizes the law. (Mot. at 1, 5.)

None of the cases cited by Rebotix stand for the proposition that a court is precluded from interpreting and applying FDA regulations in resolving elements of an antitrust claim. To the contrary, the case law demonstrates that the Court can and should engage with the relevant regulations in resolving Rebotix's antitrust claims.

*Third*, although none of Intuitive's counterclaims require the Court to interpret or apply the FDCA,[3] Ms. Rosecrans's opinions are admissible because they will assist the trier of fact with regard to one category of counterclaims involving 510(k) clearance—whether Rebotix deceived customers into believing that it had actually and properly analyzed whether 510(k) clearance is needed. Specifically, Ms. Rosecrans's opinions will assist the trier of fact to understand the regulatory framework and the reasonableness of the process Rebotix used to analyze 510(k) clearance.

## BACKGROUND

In connection with its Sherman Act claims, Rebotix has asserted a number of allegations concerning EndoWrist use limits, including that:

(i) Intuitive's reliance on traditional laparoscopic instruments (which do not have use limits) to establish substantial equivalence for the purposes of obtaining 510(k) clearance of EndoWrists means the two types of devices are essentially the

---

[3] As explained in Intuitive's opposition to Rebotix's motion for summary judgment, which is being filed concurrently with this opposition, Intuitive's counterclaims assert a host of different deceptive practices employed by Rebotix with regard to the EndoWrist "repair" business, the vast majority of which have nothing to do with the requirement for a 510(k). *See* Intuitive Surgical, Inc.'s Opposition to Rebotix's Motion for Summary Judgment ("MSJ Opp. Br.") at 21.

same, and therefore use limits are not part of the EndoWrist 510(k) (ECF No. 1 ("Compl.") ¶¶37-39);

    (ii)    Intuitive's setting of use limits is arbitrary, not based on safety and effectiveness, and instead a decision made by marketing to increase revenues (*id.* ¶¶42-44); and

    (iii)    Intuitive's use limits are not based on any regulatory requirement from FDA (*id.* ¶ 45).

On July 26, 2021, Intuitive served Ms. Rosecrans's proffering expert report. In addition to providing opinions relevant to 510(k) clearance and related regulatory issues, which are summarized above, Ms. Rosecrans opines on the regulatory background concerning 510(k) clearance and FDA's approach to "remanufacturing," "refurbishing," and "servicing." (Mot. Ex. 1 ¶¶17-69.) On August 30, 2021, Rebotix served Larry Stevens's rebuttal expert report in response to Ms. Rosecrans's affirmative report.[4] The accuracy and reliability of Mr. Stevens's opinions have been debunked by Ms. Rosecrans, and these opinions are subject to a pending *Daubert* motion.[5] (*See* ECF No. 116.)

---

[4] Intuitive served Rebotix with a second expert report for Ms. Rosecrans (Mot. Ex. 2), but this was a rebuttal report to an FDA expert that Rebotix initially proffered, but has since withdrawn. The fact that Rebotix *proffered* an FDA expert belies their position now that issues concerning Rebotix's compliance with FDA regulations are not relevant to the claims and defenses in this litigation.

[5] Rebotix's assertion that Ms. Rosecrans's opinions are contrary to "consensus opinions" drawn from a *Deutsche Bank* financial analyst report is incorrect. (Mot. at 4 n.2.) As noted in Intuitive's opposition to Rebotix's motion for summary judgment, multiple FDA experts, including those at FDA, have concluded that Rebotix's "repair" process requires FDA clearance. (MSJ Opp. Br. at 26-27.) In addition, the Deutsche Bank financial analyst report is unreliable and biased. As revealed in Deutsche Bank's production in response to Rebotix's subpoena, the unnamed experts who provided

## ARGUMENT

Expert testimony is admissible when the proponent establishes that (1) the expert "is qualified to testify competently regarding the matters [s]he intends to address," (2) "the methodology by which [she] reaches [her] conclusions is sufficiently reliable, and (3) "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Delta T, LLC v. Dan's Fan City, Inc.*, No. 8:19-cv-1731-VMC-SPF, 2021 WL 458022, at *2 (M.D. Fla. Feb. 9, 2021) (Covington, J.) (citation omitted). Each of these requirements—referred to as "qualification, reliability, and helpfulness"—must be satisfied to admit expert testimony. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Rebotix does not challenge Ms. Rosecrans's qualifications[6] or the reliability of her expert opinion—only that her opinion should be excluded as irrelevant and unhelpful to the trier of fact. (Mot. at 3.) For the reasons explained below, Ms. Rosecrans's opinions are relevant to issues to be decided before the Court and are thus admissible.

---

information included Restore, Restore's legal counsel, and Mr. Stevens himself. (*See* Ex. 2; *see also* ECF No. 116 at 20-21.)

[6] While Rebotix does not challenge Ms. Rosecrans's qualifications, it does claim that her opinion is contrary to the "consensus opinion" of FDA experts. (Mot. at 4 n.2.) As highlighted in Intuitive's Motion to Exclude the Expert Opinions of J. Lawrence Stevens (ECF No. 116 at 20-21), Rebotix's reliance on an inadmissible financial analyst report is dubious as it is rife with hearsay comments and fails to cite any individual having the opinions expressed therein.

### I. MS. ROSECRANS'S OPINIONS ARE RELEVANT TO ISSUES TO BE DECIDED IN RESOLVING REBOTIX'S SHERMAN ACT CLAIMS

Rebotix incorrectly argues that Ms. Rosecrans's opinions are being offered only to support Intuitive's counterclaims and unclean hands affirmative defense. (Mot. at 5.) To the contrary, Ms. Rosecrans's opinions are offered for and relevant to numerous issues to be decided in resolving Rebotix's Sherman Act claims.

*First*, as established in Intuitive's Motion for Summary Judgement (ECF No. 117), Rebotix bears the burden to establish that its harm is directly attributable to Intuitive's alleged misconduct. (*Id.* at 18.) Rebotix cannot meet this burden because a superseding regulatory scheme—the requirement that Rebotix obtains 510(k) clearance to lawfully market its "repair" service—breaks the chain of causation. (*Id.* at 18-20 (citing *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 163-165 (3d Cir. 2017); *RSA Media, Inc., v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001)).) The undisputed record demonstrates that FDA has repeatedly and unambiguously stated that Rebotix may not market or distribute "repaired" EndoWrists without 510(k) clearance, which it has not received. (*Id.* at 20-21.) Further, the Court is well suited to make legal determinations relating to Rebotix's claims, and there is no categorical bar to the Court doing so. *See infra* Section II.

To the extent the Court determines any fact issues exist concerning the ability of Rebotix to establish the legality of its business, Ms. Rosecrans's opinions would assist the trier of fact by providing a road map to the 510(k) regulatory framework (Mot. Ex. 1 ¶¶17-31), the requirements for a 510(k) and the review process (*id.* ¶¶32-

65), FDA's approach to remanufacturing, refurbishing and servicing (*id.* ¶¶66-71) and Rebotix's compliance with these regulations and rules (*id.* ¶¶88-121).[7] Her opinion on the import of FDA's interactions with Rebotix concerning 510(k) clearance would also assist the trier of fact.  (*Id.* ¶¶122-130.)

Courts permit FDA expert testimony when compliance with FDA regulations is relevant to resolution of antitrust injury or an element of plaintiff's claims.  *See e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mkt., Sales Prac. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2021 WL 2577490 at *34-36 (D. Kan. June 23, 2021) (finding FDA expert's testimony helpful to the trier of fact when offered to rebut defendants' argument that FDA's delayed approval "'br[oke] the chain of causation' and preclude[ed] defendants from incurring liability" (citation omitted)); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, MDL No. 2445, et al., 2020 WL 6887885, at *45-48 (E.D. Pa. Nov. 24, 2020) (rejecting argument that expert's opinions concerning violations of FDA regulations were irrelevant because "those violations are relevant to Plaintiffs' proof of an overarching scheme that had an anticompetitive effect").[8]  Ms. Rosecrans's opinions are thus relevant and admissible

---

[7] Rebotix itself acknowledges in its motion for summary judgment that any facts concerning the issue of 510(k) clearance are material to the dispute "whether the Federal Food, Drug, and Cosmetic Act (FDCA) and FDA regulations required Rebotix to seek premarket FDA clearance for its services."  (ECF No. 108 at 4.)

[8] Courts have also permitted FDA experts in the context of product liability cases to opine on whether defendants have the complied with applicable FDA regulations, including regulations governing the 510(k) process, so long as the compliance or noncompliance with FDA regulations is not the ultimate legal issue presented before the jury.  *See, e.g.*, *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1329 (M.D. Fla. 2015); *Cason v. C.R. Bard, Inc.*, No. 1:12-CV-1288-MHS, 2015 WL 9913809, at *12 (N.D. Ga. Feb. 9, 2015).

should any material fact issue exist—which it does not—with respect to Rebotix's requirement to prove antitrust injury.

*Second*, Rebotix alleges that Intuitive's patient safety letters to hospitals (or what Rebotix refers to as "cease and desist letters") were anticompetitive in that Intuitive was using its position to discourage hospitals from utilizing Rebotix's services. (Compl. ¶¶3, 56, 69.) In relevant part, these letters inform customers of the risks of using Rebotix-repaired EndoWrists that lack 510(k) clearance. (*See, e.g.*, Ex. 1 at Intuitive-00569246.) The record is replete with evidence of Intuitive providing similar warnings to customers and customers expressing concerns about the lack of 510(k) clearance for the EndoWrist "repair" business (*see, e.g.*, Ex. 3 at Intuitive-00110468-69; Ex. 4 at Intuitive-00048814-17; Ex. 5 at Restore-00005218-19), raising a fact issue whether it was Rebotix's lack of 510(k) clearance, not Intuitive's alleged anticompetitive contractual terms, that caused customers to end their business dealings with Rebotix. Ms. Rosecrans's opinions on whether Rebotix's "repair" service required 510(k) clearance will assist the jury in determining whether Intuitive had reasonable (and procompetitive) grounds to warn customers that Rebotix's remanufactured EndoWrists lacked 510(k) clearance. Courts have found such testimony by FDA experts on the reasonableness of defendants conduct to be permissible and helpful to the jury. *See Jones v. Novartis Pharms. Corp.*, 235 F. Supp. 3d 1244, 1262-63 (N.D. Ala. 2017).

*Third*, in alleging that Intuitive engaged in anticompetitive conduct, Rebotix argues that use limits are: (i) not required as part of FDA's 510(k) clearance of

Intuitive-manufactured EndoWrists; (ii) arbitrary; (iii) part of a marketing scheme to increase revenues; and (iv) aimed at limiting third parties such as Rebotix. (*See supra* at 5-6.) The Court has already ruled that Intuitive's incorporation of a use counter in EndoWrists is not, by itself, anticompetitive, *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274-VMC-TGW, 2021 WL 1227593, at *8 (M.D. Fla. Mar. 8, 2021), but to the extent Rebotix is permitted to argue any of the foregoing to a jury, the accuracy of Rebotix's positions and reasonableness Intuitive's actions in response will be at issue. Ms. Rosecrans offers a number of opinions that will assist the trier of fact in determining these issues, including that FDA cleared EndoWrists as limited use devices subject to use limits, any attempt to remove use limits is not permitted and Intuitive's position that 510(k) clearance included use limits was reasonable. (*See supra* at 2-3.)

In sum, Ms. Rosecrans's opinions are relevant to antitrust injury and the jury's determination of whether Intuitive's actions were procompetitive. To the extent the jury will need to determine any fact issues with respect to these elements, Ms. Rosecrans's opinions will be helpful to the jury, and are thus admissible.

II. **THE COURT IS PERMITTED TO MAKE DETERMINATIONS CONCERNING REBOTIX'S COMPLIANCE WITH FDA REGULATIONS**

In seeking to exclude Ms. Rosecrans's opinions, Rebotix asserts that "whether Rebotix violated FDA regulations is not an issue that a judge or jury can decide." (Mot. at 5.) Such a broad preclusion standard has no legal support. In fact, there is no categorical bar to the Court's evaluation of Rebotix's compliance with FDA

11

regulations for purposes of determining an element of Rebotix's claims. *See, e.g.*, ECF No. 117 at 18-20 (citing line of cases permitting courts to evaluate the legality of conduct under a regulatory scheme to determine antitrust standing); *In re Suboxone*, 2020 WL 6887885 at *47 (finding that expert testimony concerning compliance with FDA regulations is relevant in determining whether defendants engaged in an anticompetitive scheme). As explained in Intuitive's Opposition to Rebotix's Motion for Summary Judgment, the cases cited by Rebotix are inapposite because they pertain to narrow legal exceptions barring a *plaintiff* from bringing Lanham Act or state law civil claims when there is an issue of circumventing FDA's exclusive authority. (MSJ Opp. Br. at 17-20.) Indeed, as Judge Chhabria recently held in the related *SIS* litigation, "[c]ourts regularly evaluate the lawfulness of a party's behavior under federal regulations. That the regulations here come from the FDA make no difference." *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.* ("*SIS*"), No. 21-CV-03496-VC, 2021 WL 5474898, at *7 n.8 (N.D. Cal. Nov. 23, 2021).

### III. MS. ROSECRANS'S OPINIONS ARE RELEVANT TO ONE CATEGORY OF DECEPTIVE ADVERTISEMENTS AT ISSUE

Although nine of ten categories of Rebotix's deceptive advertisements that Intuitive has identified in its counterclaims do not involve regulatory issues or 510(k) clearance, one such category does reference 510(k) clearance.[9] Specifically, Intuitive

---

[9] The other nine categories of deceptive statements Intuitive challenges make no reference to the FDA or FDCA, and determining the falsity of those statements does not require any interpretation of the FDCA or FDA regulations. (*See* MSJ Opp. Br. at 21.)

12

will prove at trial that Rebotix deceived customers into believing that it reasonably analyzed whether 510(k) clearance was needed for its EndoWrist "repair" business.[10] Determination of the falsity of that claim is a fact issue that the jury can resolve based on its evaluation of what steps Rebotix did (not) take when communicating to customers that it did not require 510(k) clearance.[11] (MSJ Opp. Br. at 22.) Ms. Rosecrans's opinions concerning the relevant regulatory framework, FDA's distinction between "servicing" and "remanufacturing," the import of FDA's statements to Rebotix that the Interceptor technology required 510(k) clearance and Rebotix's deficient investigation into whether 510(k) clearance was required will assist the fact finder in determining the reasonableness of the process Rebotix used to analyze 510(k) clearance. (Mot. Ex. 1 ¶¶66-67, 122-30, 135-38.) (*See supra* Section II.)

The Ninth's Circuit's decision in *PhotoMedex* does not support Rebotix's argument that the Court cannot adjudicate Intuitive's claim regarding whether

---

[10] Contrary to Rebotix's argument, Intuitive's counterclaims do not specifically challenge the falsity of the statement that Rebotix's services "do not require 'clearance by the FDA.'" (MSJ Opp. Br. at 22.)

[11] Intuitive alleges that Rebotix made this claim to customers without conducting a ***reasonable analysis*** of whether 510(k) clearance is required—not whether the conclusion was actually correct under the FDCA. For this reason, the authorities cited by Rebotix are inapposite (*see supra* Section II), including the line of law holding that statements of opinion are not actionable. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1317-18 (M.D. Fla. 2012) (concerning whether defendant's conduct was illegal or not). *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 232 (3d Cir. 1990) (concerning whether an ingredient was labeled as "active" or "inactive" in accordance with FDA standards); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (concerning representations that drugs had been "properly approved by the FDA"); *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 305-06 (C.D. Cal. 1996) (following *Mylan* to hold a Lanham Act claim alleging the defendant had failed to disclose FDA non-approval could not stand).

13

Rebotix conducted a reasonable analysis of whether its services required 510(k) clearance. (MSJ Opp. Br. at 23.) Nor do the prior decisions in the *Restore* and *SIS* litigations. (*Id.* at 24-25.) To the contrary, both cases *reinforce* Intuitive's arguments that the Court is not precluded from analyzing and interpretation FDA regulations to resolve any applicable claims or defenses (*id.*), and thus Ms. Rosecrans opinions are relevant to Intuitive's counterclaims.

## CONCLUSION

For the foregoing reasons, Intuitive respectfully requests that Rebotix's Motion to Exclude the Expert Opinions of Heather Rosecrans be denied.

DATED: December 8, 2021                    Respectfully submitted,

                                           /s/ Karen Lent

KAREN HOFFMAN LENT (*Pro Hac Vice*)
MICHAEL H. MENITOVE (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com
michael.menitove@skadden.com

MICHAEL S. BAILEY (*Pro Hac Vice*)
1440 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 371-7000
michael.bailey@skadden.com
*Counsel for Intuitive Surgical, Inc.*

DAVID L. McGEE
Fla. Bar No. 220000
BEGGS & LANE, RLLP
501 Commendencia Street
Pensacola, FL 32502
Telephone: (850) 432-2451
dlm@beggslane.com

ALLEN RUBY (*Pro Hac Vice*)
Attorney at Law
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690
allen@allenruby.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, I caused **INTUITIVE SURGICAL, INC.'S OPPOSITION TO REBOTIX REPAIR LLC'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF HEATHER ROSECRANS** to be served on the following counsel of record by email:

| | |
|---|---|
| Gregory Dovel | greg@dovel.com |
| Richard Lyon | rick@dovellaw.com |
| Alexander Erwig | alexander@dovel.com |
| David Luikart, III | dave.luikart@hwhlaw.com |

/s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com