UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| REBOTIX REPAIR LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>    Defendant/Counterclaim Plaintiff. | Civil Case No. 8:20-cv-2274-VMC-TGW |

### INTUITIVE SURGICAL, INC.'S MOTION TO FILE UNDER SEAL

Pursuant to Local Rule 1.11 and this Court's Endorsed Order regarding the Parties' Joint Motion to Seal (ECF No. 120 "Endorsed Order"), Defendant Intuitive Surgical, Inc. ("Intuitive") moves for leave to file under seal portions of oppositions to the summary judgment and *Daubert* motions identified in the Parties' Notices of Motion Filing ("Summary Judgment and *Daubert* Oppositions"), as well as certain supporting Exhibits. (ECF Nos. 121 and 123.)

### BACKGROUND

On December 6, 2021, Intuitive and Rebotix Repair LLC ("Rebotix") filed a joint motion seeking to temporarily file under seal the Summary Judgment and *Daubert* Oppositions and supporting Exhibits. (ECF No. 119.) Most of the supporting Exhibits had been designated confidential or highly confidential pursuant

to the Confidentiality Agreement in this case. (ECF No. 54.) On December 8, this Court entered an endorsed order permitting the memoranda and Exhibits to be filed under seal temporarily and requiring that "[t]he parties must file final, redacted versions of all motions and supporting documents on the public docket 14 days" after the filing of the opposition and reply motions. (ECF No. 94.)

As done previously, following the filing of the Summary Judgment and *Daubert* Oppositions and Replies, the Parties met and conferred to discuss filing public versions of their memoranda and supporting Exhibits and to establish a procedure for maintaining under seal each Party's confidential information. The Parties exchanged proposed redactions of the opposing Party's memoranda and supporting Exhibits and agreed to file motions to seal their own confidential material.

## **LEGAL STANDARD**

While the public has a right of access to court proceedings, this right is not absolute and "may be overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *See Connectus LLC v. Ampush Media, Inc.*, No. 8:15-CV-2778-T-33JSS, 2016 WL 7492463, at *1 (M.D. Fla. Dec. 30, 2016) (Covington, J.) (citing *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007)). "Good cause is established by the moving party when disclosure will cause the party to suffer a clearly defined and serious injury." *Id.* (citations and quotations omitted). Such injury is established if disclosure would reveal "confidential and commercially

2

sensitive" information, *Stoneeagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 5735396, at *2 (M.D. Fla. Sept. 22, 2015) (Covington, J.) or confidential "business practices and strategies." *Malibu Media, LLC v. Weaver, No.*, No. 8:14-CV-1580-T-33TBM, 2016 WL 503071, at *1 (M.D. Fla. Feb. 9, 2016) (Covington, J.).

In the Middle District of Florida, Local Rule 1.1 requires the proponent of a motion to seal to include: (i) a description of the item proposed for sealing; (ii) the reason why filing each item is necessary; (iii) the reason why sealing each item is necessary; (iv) the reason why partial sealing, redaction, or means other than sealing are unavailable or unsatisfactory; (v) a statement of the proposed duration of the seal; and (vi) a memorandum of law.

## DISCUSSION

Consistent with the legal standard above, and as described further below, Intuitive seeks to seal the minimum amount of information necessary to protect its confidential and commercially sensitive information and business strategies. For information Intuitive moves to maintain under seal, good cause exists because disclosure will harm Intuitive for the reasons detailed below. Generally, the information Intuitive moves to maintain under seal includes highly sensitive device engineering and testing information and/or proprietary financial modeling information and hospital data. The disclosure of this information would harm Intuitive by revealing confidential business strategies and practices or other commercially sensitive information. Nearly all of the memoranda of law and the

3

vast majority of supporting Exhibits that reflect information about Intuitive will be filed on the public record, and for those Exhibits that do contain highly confidential information, redactions have been made wherever possible to limit the amount of information under seal.  As a result, for all of the Exhibits listed below, Intuitive requests that the documents be sealed indefinitely, as the harm that would result from disclosure will continue to be applicable into the foreseeable future.  Pursuant to Local Rule 1.11, a more detailed discussion of the information to be sealed follows below:

**Exhibit 10 to Rebotix's Opposition to Intuitive's Motion to Exclude The Expert Opinions of D. Russell Lamb and Exhibit 35 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.**  These Exhibits are two different versions of an internal Intuitive presentation titled "Instrument eX: I&A Refurbishment Feasibility Update – 30 January 2017."  These Exhibits concern Intuitive's preliminary business plan regarding whether Intuitive could refurbish EndoWrists.  Rebotix cites to these Exhibits in support of its argument regarding regulatory clearance of EndoWrists.  These Exhibits contain proprietary information regarding Intuitive's strategic planning and Intuitive's research and development efforts concerning a potential business plan.  Maintaining these Exhibits under seal in their entirety is necessary because, if disclosed, the information would cause Intuitive competitive harm.

**Exhibit 36 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment and Exhibit 18 to Rebotix's Opposition to Intuitive's Motion to Exclude The Expert Opinions of D. Russell Lamb.** Exhibits 36 and 18 are an internal Intuitive White Paper entitled "Managing the Long Tail of da Vinci Si." Rebotix cites to these Exhibits in support of its arguments that: (1) Intuitive itself recognizes that there is a market for robotic surgery; and (2) Intuitive investigated entering the refurbishment business and concluded that clearance was not required. Intuitive previously moved to file this same document under seal when it was filed as Exhibit 7 to Rebotix's Motion to Exclude Opinions of Dr. John Bomalaski. Intuitive maintains that sealing these Exhibits is necessary because the Exhibits comprise market analysis and proprietary financial projections for how Intuitive will manage the future of da Vinci Si systems, which, if disclosed, would give competitors critical insight into Intuitive's strategic positioning that would cause competitive disadvantage. Anything short of sealing the entirety of these Exhibits would be insufficient because the entirety of the Exhibits comprise competitively sensitive and confidential information described above.

**Exhibit 8 to Rebotix's Opposition to Intuitive's Motion to Exclude The Expert Opinions of D. Russell Lamb and Exhibit 62 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibits 8 and 62 are an internal Intuitive spreadsheet containing financial information including sales margins and the prices and discounts offered for various Intuitive products. Rebotix cites to these

Exhibits in support of its arguments regarding Intuitive's pricing. Sealing these Exhibits is necessary because the Exhibits contain proprietary financial and pricing information which is competitively sensitive and which, if disclosed, would give competitors critical insight into Intuitive's pricing and strategic positioning and would cause competitive disadvantage.

**Exhibit 9 to Rebotix's Opposition to Intuitive's Motion to Exclude The Expert Opinions of D. Russell Lamb and Exhibit 63 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** These Exhibits are an internal Intuitive Presentation titled "Systems & Vision – Strategic Offsite 2017." These Exhibits concern Intuitive's strategic planning for future da Vinci system offerings. Rebotix cites to these Exhibits in support of its arguments regarding Intuitive's pricing. Sealing these Exhibits is necessary because the Exhibits contain proprietary strategic plans and financial information which is competitively sensitive and which, if disclosed, would give competitors critical insight into Intuitive's strategic planning that would cause competitive disadvantage.

**Exhibit 45 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 45 contains internal Intuitive emails discussing Intuitive's life testing of EndoWrist instruments. Rebotix cites to this Exhibit in support of its arguments regarding Intuitive's life testing. Sealing this Exhibit is necessary because it contains proprietary testing information and results which are competitively

sensitive and which, if disclosed, would give competitors critical insight into Intuitive's design, development and testing of EndoWrist instruments.

**Exhibit 44 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 44 is an internal Intuitive Life Test Report for a specific model of EndoWrist instrument. Rebotix cites to this Exhibit in support of the proposition that Intuitive evaluates the safety of EndoWrist instruments separately from the safety of da Vinci robots. Sealing this Exhibit is necessary because the Exhibit contains proprietary testing information and results which are competitively sensitive and which, if disclosed, would give competitors critical insight into Intuitive's design, development and testing of EndoWrist instruments.

**Exhibit 7 to Rebotix's Opposition to Intuitive's Motion to Exclude The Expert Opinions of D. Russell Lamb and Exhibit 61 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibits 7 and 61 are an internal Intuitive spreadsheet concerning Intuitive's contribution margins. Rebotix cites to these Exhibits in support of its arguments regarding Intuitive's pricing. Sealing these Exhibits is necessary because they contain proprietary financial information which is competitively sensitive and which, if disclosed, would cause competitive harm to Intuitive.

**Exhibit 13 to Intuitive's Opposition to Rebotix's Motion for Summary Judgment.** Exhibit 13 is Intuitive's Return Material Authorization ("RMA") data. Intuitive cites to this Exhibit in support of the proposition that instruments serviced

by Rebotix failed when used beyond their prescribed limits. Sealing this Exhibit is necessary because it contains proprietary information regarding Intuitive's evaluation of EndoWrist instruments returned to Intuitive via the RMA process which, if disclosed, would cause competitive harm to Intuitive.

**Exhibit 69 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 69 is the Expert Antitrust Merits Report of Loren K. Smith, PH.D. Rebotix cites to this Exhibit in support its argument that Intuitive's competitors offer surgical robots and instruments on different contractual terms from those offered by Intuitive. Intuitive has proposed redactions to Exhibit 69 only to the extent necessary to protect customer-specific data and third party information that is subject to the Protective Order (ECF No. 54.)

**Exhibit 21 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 21 is the is the Deposition Transcript of Mark Johnson, Intuitive's Senior Vice President for Regulatory, Quality and Business Architecture. Rebotix cites to portions of Mr. Johnson's deposition transcript in support of arguments that it makes regarding the intended use of EndoWrist instruments. While the portions of Mr. Johnson's deposition testimony that are cited by Rebotix will be excerpted and filed publicly, Intuitive moves to maintain the remainder of Mr. Johnson's deposition testimony under seal as Mr. Johnson's deposition transcript includes details of Intuitive's product design, engineering, and testing of the da Vinci system and EndoWrists. This information is competitively sensitive and

proprietary, and if disclosed, would give competitors insight into the operation, design, and testing of Intuitive's da Vinci system—very little of which is relevant to Rebotix's Motion.

**Exhibit 22 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 22 is the complete deposition transcript of Glenn Vavoso, Intuitive's Senior Vice President and General Manager for Asia and Indirect Global Markets. Rebotix cites to this Exhibit in support of various arguments that it makes about EndoWrist instruments and Intuitive's sales practices regarding EndoWrist instruments. Mr. Vavoso's deposition transcript was filed publicly as an exhibit (Exhibit 13) to Rebotix's Motion for Summary Judgment with minimal redactions covering only a discussion of terms and conditions of employment agreements and a discussion related to a privileged document that had been inadvertently produced. Intuitive maintains that these redactions are necessary to protect attorney-client privilege and competitively sensitive terms in Intuitive's employment agreements that could place Intuitive at a competitive disadvantage if made public and has applied those same redactions to Exhibit 22 rather than maintain the Exhibit as filed under seal.

**Exhibit 23 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 23 is the is the Deposition Transcript of Bob DeSantis, Intuitive's Executive Vice President and Chief Product Officer. Rebotix cites to portions of Mr. Desantis's deposition transcript in support of arguments that it makes regarding

Intuitive's sales practices. While the portions of Mr. Desantis's deposition testimony that are cited by Rebotix will be excerpted and filed publicly, Intuitive moves to maintain the remainder of Mr. Desantis's deposition testimony under seal as Mr. DeSantis's deposition transcript includes details of Intuitive's product design, engineering, and testing of the da Vinci system and EndoWrists. This information is competitively sensitive and proprietary, and if disclosed, would give competitors insight into the operation, design, and testing of Intuitive's da Vinci system—very little of which is relevant to Rebotix's Motion.

**Exhibit 24 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 24 is the is the Deposition Transcript of Katie Scoville, Intuitive's Director of New Product Verification, Packaging and Product Labeling. Rebotix cites to portions of Ms. Scoville's deposition transcript in support of arguments that it makes regarding (1) Intuitive's response to customers' use of third-party refurbished EndoWrists; and (2) the regulatory requirements imposed on remanufacturers. While the portions of Ms. Scoville's deposition testimony that are cited by Rebotix will be excerpted and filed publicly, Intuitive moves to maintain the remainder of Ms. Scoville's deposition testimony under seal as Ms. Scoville's deposition transcript includes details of Intuitive's product design, engineering, and testing of the da Vinci system and EndoWrists. This information is competitively sensitive and proprietary, and if disclosed, would give competitors insight into the operation, design, and testing of Intuitive's da Vinci system—very little of which is relevant to Rebotix's Motion.

**Exhibit 25 to Rebotix's Opposition to Intuitive's Motion for Summary Judgment.** Exhibit 25 is the is the Deposition Transcript of Anthony McGrogan, Intuitive's Vice President of Design Engineering. Rebotix cites to portions of Mr. McGrogan's deposition transcript in support of arguments that it makes regarding Intuitive's life testing of EndoWrist instruments. While the portions of Mr. McGrogan's deposition testimony that are cited by Rebotix will be excerpted and filed publicly, Intuitive moves to maintain the remainder of Mr. McGrogan's deposition testimony under seal as Mr. McGrogan's deposition transcript includes details of Intuitive's product design, engineering, and testing of the da Vinci system and EndoWrists. This information is competitively sensitive and proprietary, and if disclosed, would give competitors insight into the operation, design, and testing of Intuitive's da Vinci system—very little of which is relevant to Rebotix's Motion.

**Exhibit 2 to Intuitive's Opposition to Rebotix's Motion to Exclude The Expert Opinions of Heather Rosecrans and Exhibit 2 Intuitive's Opposition to Rebotix's Motion for Summary Judgment.** These Exhibits are internal notes prepared by a Deutsche Bank analyst regarding Intuitive Surgical and potential competition from companies offering third-party refurbished EndoWrist instruments. Intuitive cites to these Exhibits in support of its argument that the Deutsche Bank report was prepared in reliance on interviews with third-party companies offering refurbished EndoWrists and a purported FDA expert who has been retained by Rebotix to offer expert opinions in this litigation. These Exhibits were produced by

11

third parties and designated as either confidential or highly confidential under the Confidentiality Agreement. Intuitive has consulted with Deutsche Bank's counsel and understands that these Exhibits should remain under seal as they reflect proprietary due diligence and market analysis which Deutsche Bank wishes to remain confidential.

**Exhibit 5 to Intuitive's Opposition to Rebotix's Motion to Exclude The Expert Opinions of Heather Rosecrans.** This Exhibit is an email from Restore Robotics LLC's ("Restore") Clif Parker to Rebotix's David Mixner discussing the business relationship between Restore and Rebotix. Intuitive cites to this exhibit in support of its argument that Rebotix's customers expressed concerns regarding Rebotix's lack of 510(k) clearance for its EndoWrist "repair" business. This Exhibit was produced by Restore, a third party to this litigation, and was designated as confidential under the Confidentiality Agreement. Intuitive moves to maintain this Exhibit under seal in accordance with the confidentiality designation applied to the Exhibit by Restore.

DATED: January 5, 2022                            Respectfully submitted,

                                                                                /s/ Karen Lent

| | |
|---|---|
| KAREN HOFFMAN LENT (*Pro Hac Vice*) | DAVID L. McGEE |
| MICHAEL H. MENITOVE (*Pro Hac Vice*) | Fla. Bar No. 220000 |
| SKADDEN, ARPS, SLATE, | BEGGS & LANE, RLLP |
|   MEAGHER & FLOM LLP | 501 Commendencia Street |
| One Manhattan West | Pensacola, FL 32502 |
| New York, NY 10001 | Telephone: (850) 432-2451 |
| Tel: (212) 735-3000 | dlm@beggslane.com |
| karen.lent@skadden.com | |
| michael.menitove@skadden.com | ALLEN RUBY (*Pro Hac Vice*) |
| | Attorney at Law |
| MICHAEL S. BAILEY (*Pro Hac Vice*) | 15559 Union Ave. #138 |
| 1440 New York Avenue, N.W. | Los Gatos, CA 95032 |
| Washington, DC 20005 | Tel: (408) 477-9690 |
| Tel: (202) 371-7000 | allen@allenruby.com |
| michael.bailey@skadden.com | |

*Counsel for Intuitive Surgical, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 5, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I caused the foregoing document to be served on the following counsel of record by email:

| | |
|---|---|
| Gregory Dovel | greg@dovel.com |
| Richard Lyon | rick@dovellaw.com |
| Alexander Erwig | alexander@dovel.com |
| David Luikart, III | dave.luikart@hwhlaw.com |

      /s/ Karen Lent
KAREN HOFFMAN LENT (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com