UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REBOTIX REPAIR, LLC,

    Plaintiff /
    Counterclaim Defendant,

v.                           Case No. 8:20-cv-2274-VMC-TGW

INTUITIVE SURGICAL, INC.,

    Defendant /
    Counterclaim Plaintiff.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Rebotix Repair, LLC's Daubert Motion to Exclude the Opinions of Dr. Sarah Parikh (Doc. # 111) and Defendant Intuitive Surgical, Inc.'s Daubert Motion to Exclude the Opinions of Dr. Larry Chiagouris. (Doc. # 112). Both parties have responded. (Doc. ## 122, 149). For the reasons that follow, Rebotix's Motion to exclude Dr. Parikh's opinions is denied, and Intuitive's Motion to exclude Dr. Chiagouris's opinions is granted in part and denied in part.

**I.    Background**

The Court and the parties are well familiar with the background facts and claims in this case, and the Court will not belabor them here. Suffice it to say that this is an

1

antitrust suit initiated by Rebotix, a company that offers a service whereby it "repairs" the EndoWrist surgical implement originally manufactured by Intuitive.

Intuitive seeks to offer Dr. Sara Parikh's testimony in support of its false-advertising based counterclaims[1], and Rebotix has offered Dr. Larry Chiagouris's opinion in rebuttal thereof. Thus, the Court will address them together.

1. Dr. Parikh's Report

Dr. Parikh is the president of a marketing research and consulting firm. (Doc. # 111-3 at 4). She has an M.A. and Ph.D. in Sociology and over 30 years' experience designing and conducting research studies. (Id.). To support its claim that Rebotix willfully deceived customers, Intuitive retained Dr. Parikh to design and conduct a survey to measure how "prospective customers of Rebotix's services perceive Rebotix's advertising" with respect to information that Intuitive claims is willfully deceptive. Specifically, Dr. Parikh conducted an online survey with a national sample of 200 members of the healthcare industry, including surgeons, nurses, and hospital administration, all of whom are somehow

---

[1] Intuitive has asserted counterclaims against Rebotix for violations of the Lanham Act, common law unfair competition, and the Florida Deceptive and Unfair Trade Practices Act.

2

involved with robotic-assisted surgical procedures. (Id. at 7). The survey exposed respondents to a one-page flyer advertising Rebotix's services and then asked a series of questions "concerning their takeaway from the ad." (Id.).

To summarize the survey's findings, two-thirds of the survey participants took away a "repair" message from the ad, although approximately one-third of participants did not expect the "repair" to include the physical modifications that Rebotix performs on the EndoWrists. (Id.). In addition, the survey found that cost savings was a central message of the ad and that "a significant proportion" of respondents believed that Rebotix was "authorized, approved or endorsed by Intuitive." (Id. at 8). Dr. Parikh also found that few participants identified potential drawbacks or disadvantages to using Rebotix's services, such as the voiding of their warranty or service contracts with Intuitive (12%) or risk to patient safety (5%).

   2. Dr. Chiagouris's Report

Dr. Chiagouris is also the president of a marketing and advertising research and consulting firm. (Doc. # 112-3 at 5). He was retained to review the report prepared by Dr. Parikh described above (the Parikh Report) and provide his opinions thereon. According to Dr. Chiagouris, the Parikh

3

Report suffers from several fatal flaws: (1) the conclusions in the Parikh Report are based on an "unspecified and likely wrong survey population and a wrong sample"; (2) Dr. Parikh failed to document and disclose other relevant information that decreased the representativeness of her sample; (3) Dr. Parikh failed to pretest her survey, leading to the "potential use" of biased and misleading questions; (4) the Parikh Report failed to use appropriate quality controls, leading to invalid answers from some respondents; and (5) the Report's design was flawed because it is not representative of the marketplace and is inconsistent with "widely accepted understanding of relevant consumer behavior." (Id. at 8-27). As a result of these alleged flaws, "the Parikh Report does not provide any valid or reliable data that indicates that customers were misled by Rebotix's marketing materials." (Id. at 27).

Being fully briefed, both Motions are now ripe for review.

II.  **Discussion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help

4

>the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

>(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through

5

> the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

### 1. **Dr. Parikh**

Rebotix does not contest Dr. Parikh's qualifications but instead concentrates on arguments attacking the relevance of the survey, along with her methodology and its reliability.

#### a. Helpfulness to the trier of fact

Under Daubert, courts must "ensure that the proposed expert testimony is 'relevant to the task at hand,' . . . i.e., that it logically advances a material aspect of the proposing party's case." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999).

Rebotix's primary argument is that the advertisement at the center of Dr. Parikh's survey, a one-page flyer for Rebotix's services, is irrelevant because it is "immaterial." In other words, to succeed on its counterclaims, Intuitive must demonstrate that Rebotix's allegedly false advertising had a "material effect" on purchasing decisions, and Intuitive has not developed any evidence that the one-page flyer had any effect on any customer's purchasing decision.

6

Rebotix points out that any hospital representative would have relied on a larger universe of data when making important equipment purchasing decisions, that Dr. Parikh's study concededly did not test purchasing decisions or materiality, and the one-page flyer used is not representative of Rebotix's advertising. Intuitive responds that Dr. Parikh's survey was meant to evaluate the false-advertising element of *deception*, not materiality, with respect to certain messages present in the flyer.[2]

The Court is mindful that expert testimony is helpful to the trier of fact when it "logically advances a material aspect of the proposing party's case" and it must "offer[] [something] more than what lawyers for the parties can argue in closing arguments." Delta T, LLC v. Dan's Fan City, Inc., No. 8:19-cv-1731-VMC-SPF, 2021 WL 2103074, at *5 (M.D. Fla. May 25, 2021). The Court is persuaded that Dr. Parikh's survey logically advances the "deception" prong of Intuitive's false

---

[2] A claim for false advertising under the Lanham Act requires a plaintiff to demonstrate: (1) a false or misleading advertisement (2) that deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been, or is likely to be, injured by the false advertising. J-B Weld Co., LLC v. Gorilla Glue Co., 978 F.3d 778, 796 (11th Cir. 2020).

advertising claims. See Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1261 (11th Cir. 2004) (explaining that where allegedly actionable statements are not "literally false" but still misleading, plaintiffs must present evidence of deception, such as "consumer surveys, market research, [or] expert testimony"). And Rebotix does not point this Court to any legal authority in which a survey that addresses some, but not all, of the false-advertising factors was deemed inadmissible. See Taylor v. Trapeze Mgmt., LLC, No. 0:17-CV-62262-KMM, 2019 WL 1977514, at *4 (S.D. Fla. Feb. 28, 2019) (finding expert's opinion about a marketing research survey that explored possible consumer confusion to go "to the heart of the Lanham Act issues in this case" would accordingly be helpful to the trier of fact); Edmondson v. Caliente Resorts, LLC, No. 8:15-cv-2672-SDM-TBM, 2017 WL 10591833, at *8-10, *12 (M.D. Fla. Aug. 31, 2017) (denying motion to exclude expert's "testimony regarding consumer confusion and deception" pertaining to survey about what consumers "understood" from advertising because it was "helpful to the fact-finder in this case on an issue presented in this action").

The Court now turns to Rebotix's argument that the one-page flyer is not a proper stimulus because it was not

representative of its advertising. Dr. Parikh stated in her report that she understood the flyer was actually used by Rebotix in its marketing efforts. (Doc. # 111-3 at 9); see also (Doc. # 149-2 at 178-79 (Rule 30(b)(6) deposition of Rebotix corporate representative, in which he acknowledges that Rebotix used this flyer with "potential customers"). Rebotix does not dispute that it produced and disseminated this flyer for marketing purposes, but it argues that hospitals left this flyer sitting on the table in favor of reading more detailed advertising provided by Rebotix, and it pointed to several ways in which its more substantive advertising paints a clearer picture for customers.

But Intuitive points out that it is not attempting to show that customers relied on this one flyer to purchase Rebotix services. Rather, they believe that the flyer is an "exemplar" of the sorts of misleading representations Rebotix made to its customers, misrepresentations that (it claims) were prevalent throughout Rebotix's marketing materials. (Doc. # 149 at 11-12). The parties' dueling versions of fact on this point are questions for the factfinder. It is enough for now that Dr. Parikh testified to her conclusion that the flyer was representative, a conclusion which is not entirely speculative. See Edmondson, 2017 WL 10591833, at *11

(allowing expert opinion to proceed where witness chose three "representative" advertisements to show the survey group and explaining that questions about why and how the expert "extrapolate[d] his survey results to all of the ads").

    b.   <u>Reliability</u>

Rebotix also argues that Dr. Parikh's opinions are inadmissible as unreliable because her survey fails to reflect "real world conditions" because it does not reflect the way that Rebotix customers would actually encounter its marketing materials.

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." <u>United States v. Frazier</u>, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

10

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

When evaluating surveys, "[t]he general rule is that methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." FCOA, LLC v. Foremost Title & Escrow Servs., LLC, No. 17-23917-CIV, 2019 WL 416817, at *5 (S.D. Fla. Feb. 1, 2019). Thus, while there may be some occasions in which a proffered survey is so flawed "to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." Edmondson, 2017 WL 10591833, at *10.

The Court understands Rebotix's concern that Dr. Parikh failed to accurately replicate the complex real-world decision-making in which hospitals engage. But so long as scientifically valid methods are used, an expert need not precisely replicate real-world conditions and any failure to do so goes to weight, not admissibility. See Mizrahi v. Yamaha Motor Corp., USA, No. 17-24484-CIV-SCOLA/TORRES, 2019 WL 3318527, at *5-6 (S.D. Fla. July 19, 2019) (failure to replicate real-world conditions went to weight, not admissibility). Rebotix has not demonstrated any fatal flaw

11

in Dr. Parikh's survey. Any methodological flaws go more to the weight of the evidence than its admissibility and any shortcomings in the methodology of Dr. Parikh's survey are more properly left for cross-examination. See Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence."); Cardenas v. Toyota Motor Corp., 2021 WL 5811741, at *5 (S.D. Fla. Dec. 6, 2021) ("[A]rguments about a consumer survey's methodology generally go to weight, not admissibility.").

Finally, Rebotix claims that Dr. Parikh's opinions present a danger of confusing and misleading the jury. See Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 307 (S.D.N.Y. 2001) ("Survey evidence must be excluded under Federal Rule of Evidence 403 where it is so flawed in methodology that its probative value is substantially outweighed by its prejudicial effect."). But Rebotix will get the opportunity to cross-examine Dr. Parikh to flesh out any alleged arguments as to why the survey she conducted was flawed. See Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc., No. 1:04-cv-2112-CAP, 2007 WL 4563973, at *10 (N.D. Ga. July 17, 2007)

(rejecting motion to exclude survey under Rule 403 because to the extent technical flaws in the survey exist, they were not likely to confuse the jury).

Accordingly, Rebotix's Motion to Exclude the Opinions of Dr. Parikh is denied.

### 2. Dr. Chiagouris

Intuitive takes issue with three of Dr. Chiagouris's opinions. First, Intuitive argues that Dr. Chiagouris's opinion that certain respondents in Dr. Parikh's survey "likely" were not responsible for purchasing Rebotix's services (because she included surgical staff in the survey instead of limiting it to high-level hospital administrators) is outside of his expertise and without a sufficient basis. Second, he believes Dr. Parikh's survey does not "reflect the manner in which Rebotix sells its services to hospitals" because the flyer she used would not be considered alone and would not be relied upon in the actual purchase decision. But Intuitive argues that Dr. Chiagouris has no independent basis to make this claim about whether the flyer was representative and simply "parrots Rebotix's assertions as his own." Finally, Dr. Chiagouris opines that Dr. Parikh's survey is not "relevant to the current legal matter" or "fail[s] to generate probative evidence relevant to the legal controversy

13

in this case," which Intuitive points out goes to an ultimate legal conclusion.

The first question under Daubert is whether the proposed expert witness is qualified to testify competently regarding the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz, 253 F.3d at 666 (quoting Allison, 184 F.3d at 1311).

14

Because Dr. Chiagouris's qualifications (or lack thereof) are tied to the other arguments Intuitive makes about the reliability of his methodology, the Court will move on to those arguments.

The Court turns first to Dr. Chiagouris's opinion that Dr. Parikh's survey sample was incorrect because she failed to limit respondents to high-level hospital administrative personnel. Intuitive argues that because Dr. Chiagouris is not qualified in these areas, he had to rely on three flimsy pieces of evidence to support his opinions: (1) a 25-minute telephone conversation with Glen Papit, Rebotix's vice president, in which Papit told Dr. Chiagouris that doctors and nurses were not involved in the hospitals' purchasing decision but "might" be asked to observe a Rebotix demonstration; (2) a document (seemingly compiled by Rebotix's counsel) that was purportedly an excerpt from Papit's 2019 weekly planner showing certain sales meetings he had during a six-week time frame; and (3) two "unverified" blog posts about hospital marketing. Intuitive argues that this is improper because Dr. Chiagouris is simply offering his own *ipse dixit*, which rests on unverified and unsupported assumptions, and limited information fed to him by an

15

interested party (Papit), such that the opinion does not rest on any expert analysis or testable methodology.

Intuitive's Motion is denied on this point. Dr. Chiagouris is an expert in marketing and consumer research surveys being offered to critique the alleged design flaws in the Parikh Report. Correctly identifying the right survey population is an important part of survey design. Dr. Chiagouris may testify generally about how a relevant survey population should be chosen and why he believes the Parikh Report has a flawed survey population. To the extent Intuitive wishes to question Dr. Chiagouris on his lack of expertise in hospital procurement matters, it may do so on cross-examination.

Next, the Court turns to whether Dr. Chiagouris may opine about whether the flyer used in Dr. Parikh's survey would be relied upon in the actual purchase decisions made by hospitals. In his report, Dr. Chiagouris wrote that: "[T]he Parikh Report relied upon a stimulus that did not and does not reflect the manner in which Rebotix sells its services to hospitals. . . . [T]he Parikh Report only exposed respondents to a single Rebotix flyer. . . . This is not reflective of the sales process used by Rebotix to engage prospective customers. Rebotix provided a number of materials to

16

customers, engaged in follow up conversations, and answered any questions that a prospective customer could have. Because Dr. Parikh's survey failed to accurately capture the manner in which Rebotix advertised to customers, her survey does not provide relevant data on how potential customers would respond to Rebotix's advertising practices." (Doc. # 112-3 at 26).

The Court will permit Dr. Chiagouris to offer this opinion. Dr. Chiagouris's testimony is being offered to demonstrate the alleged flaws in the Parikh Report and whether or not she chose the correct stimulus is a matter within his experience and expertise.

Finally, Intuitive points out that Dr. Chiagouris states at certain points in his report that Dr. Parikh's survey is "not relevant to the current legal matter" or that it "fails to generate probative evidence relevant to the legal controversy in this case." Rebotix counters that these sentences only reflected Dr. Chiagouris' finding that Dr. Parikh's survey was based on a flawed design that was not representative of the characteristics of the marketplace.

It is black letter law that testifying experts may not offer legal conclusions. SEC v. Spartan Secs. Grp., Ltd., No. 8:19-cv-448, 2020 WL 7024885, at *5 (M.D. Fla. Nov. 30, 2020);

17

see also Clarke v. HealthSouth Corp., No. 8:14-cv-778, 2021 WL 129821, at *5 (M.D. Fla. Jan. 14, 2021) (explaining that only the court may instruct the jury on relevant legal standards and that "expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments"). The Court will not allow Dr. Chiagouris to offer any opinions about legal conclusions, including the legal relevance, import, or weight of Dr. Parikh's survey. He may offer opinions bearing on design flaws within the survey within the confines of the Federal Rules of Evidence and this Order.

Accordingly, Intuitive's Motion to Exclude the Opinions of Dr. Chiagouris is granted in part and denied in part.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Rebotix Repair, LLC's Daubert Motion to Exclude the Opinions of Dr. Sarah Parikh (Doc. # 111) is **DENIED.**

(2) Defendant Intuitive Surgical, Inc.'s Daubert Motion to Exclude the Opinions of Dr. Larry Chiagouris (Doc. # 112) is **GRANTED in part and DENIED in part**. The Motion is granted to the extent set forth in this Order and is otherwise denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of August, 2022.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE